**JAN M. BENNETTS**
ADA COUNTY PROSECUTING ATTORNEY

**DAYTON P. REED**
Deputy Prosecuting Attorney
Civil Division
200 W. Front Street, Room 3191
Boise, ID  83702
Telephone:  (208) 287-7700
Facsimile:  (208) 287-7719
Idaho State Bar No. 10775
Email: civilpafiles@adacounty.id.gov

*Attorney for Ada County Prosecuting Attorney Jan M. Bennetts*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAM POE, et al.,<br><br>                        Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, et al.,<br><br>                        Defendants. | **Case No. 1:23-cv-269-BLW**<br><br>**MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS** |

Jan M. Bennetts, Ada County Prosecuting Attorney, should not be a defendant in a lawsuit challenging a state law when the Plaintiffs make no allegation that she has enforced or threatened to enforce that law—which isn't effective until 2024—and when it was the State Legislature that passed the law, not Ada County. Suing Prosecutor Bennetts here violates the legal principles of standing, ripeness, causation, and redressability. It also violates the important considerations of fairness and judicial economy. Ada County taxpayers should not have to bear a double burden in this lawsuit—once via the Attorney General's Office, and again via the Ada County Prosecutor's Office—when Plaintiffs' requested relief is available without Prosecutor Bennetts as a defendant.

MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS– PAGE 1

## I.  BACKGROUND

This past legislative session, the Vulnerable Child Protection Act—printed as House Bill 71, or HB 71 for short—was introduced in the Idaho House of Representatives and worked its way through the House State Affairs and Judiciary, Rules, and Administration Committees, to ultimately be sent to the House floor, debated, and voted upon. Upon passing the House, HB 71 was then sent to the Idaho Senate, where it worked its way through the Senate Judiciary and Rules Committee and the Committee of the Whole where it was deliberated, amended, and ultimately sent to the Senate floor, debated, and voted upon. Upon passing the Senate, HB 71 was then sent back to the House of Representatives, which concurred with the amendments and ultimately voted to pass HB 71 as amended. It was then sent it to the Governor of Idaho, who signed it into law.[1]

The Idaho Legislature is vested with power to promulgate statewide legislation and has membership elected from across the state. Idaho Const. art. III. Ada County—a constitutionally and statutorily created governmental subdivision with officers elected by citizens only within its own boundaries, Idaho Const. art. XVIII; Idaho Code § 31–103—has no power to introduce, debate, amend, and vote upon statewide legislation like HB 71.

HB 71 regulates medical providers, and no one else. The operative provision states,

> (3) A medical provider shall not engage in any of the following practices upon a child for the purpose of attempting to alter the appearance of or affirm the child's perception of the child's sex if that perception is inconsistent with the child's biological sex:
>
> (a) Performing surgeries that sterilize or mutilate, or artificially construct tissue with the appearance of genitalia that differs from the child's biological sex, including castration, vasectomy, hysterectomy, oophorectomy, metoidioplasty, orchiectomy, penectomy, phalloplasty, clitoroplasty, vaginoplasty, vulvoplasty, ovariectomy, or reconstruction of

---

[1] The bill's history is available on the Idaho Legislature's official website, at https://legislature.idaho.gov/sessioninfo/2023/legislation/H0071/ (last visited Aug. 23, 2023).

MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS– PAGE 2

> the fixed part of the urethra with or without metoidioplasty, phalloplasty, scrotoplasty, or the implantation of erection or testicular prostheses;
>
> (b) Performing a mastectomy;
>
> (c) Administering or supplying the following medications that induce profound morphologic changes in the genitals of a child or induce transient or permanent infertility:
>
>> (i) Puberty-blocking medication to stop or delay normal puberty;
>> (ii) Supraphysiological doses of testosterone to a female; or
>> (iii) Supraphysiological doses of estrogen to a male; or
>
> (d) Removing any otherwise healthy or nondiseased body part or tissue.

(Dkt. 1, p. 34.) HB 71 makes a violation of this prohibition a felony. (Dkt. 1, 35).

HB 71 does not make it a crime to for a minor to seek or obtain any procedure or medication, and it does not make it a crime for a minor's parent to seek or procure a procedure or medication for a minor. HB 71 does not regulate the Plaintiffs or subject them to prosecution.

HB 71 is unenforceable as of the date the complaint was filed, and as of the date this motion is filed. HB 71 contains a specific, future effective date of January 1, 2024. (Dkt. 1, p. 37.) Until that date is reached, neither Prosecutor Bennetts nor any other prosecutor or can initiate proceedings under it. Even if Plaintiffs were subject to HB 71's regulation, no prosecutor—including Prosecutor Bennetts—could charge them with a crime under HB 71.

Despite all this, Plaintiffs named Prosecutor Bennetts as a defendant in her official capacity in their lawsuit under § 1983—along with the Idaho Attorney General and the members of the Idaho Code Commission, each in their official capacities. (Dkt. 1, p.1.) Throughout the complaint, Plaintiffs allege that HB 71 is unconstitutional, that its existence harms them, and that the Idaho Legislature and certain individual members acted wrongfully in deliberating, debating, and passing it.

But Plaintiffs make no such allegations against Prosecutor Bennetts or Ada County, and they make no allegation that Prosecutor Bennetts or anyone in her office has threatened to initiate proceedings under HB 71. In fact, Plaintiffs' complaint is devoid of any allegation that Prosecutor Bennetts did anything at all. The *only factual allegation* about Prosecutor Bennetts is, "Defendant Jan M. Bennetts is the Prosecuting Attorney for Ada County, Idaho, where Plaintiffs reside." (Dkt. 1, ¶ 9.)

Plaintiffs make no factual allegation at all about Ada County.

## II. STANDARD

### A. 12(b)(1)

Standing and ripeness are both challenged through Federal Rule of Civil Procedure 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). This motion is brought as a facial attack, and as this Court has succinctly explained,

> A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge jurisdiction either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. Where, as here, an attack is facial, the court confines its inquiry to allegations in the complaint.
>
> When ruling on a facial jurisdictional attack, courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. However, the plaintiff bears the burden of alleging facts that are legally sufficient to invoke the court's jurisdiction.

*Health Freedom Def. Fund, Inc. v. City of Hailey, Idaho*, 590 F. Supp. 3d 1253, 1261–62 (D. Idaho 2022) (cleaned up).

### B. 12(b)(6)

This Court has also succinctly explained the standard under Federal Rule of Civil Procedure 12(b)(6):

> Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has failed to state a claim upon which relief can be granted. A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. A court is not, however, required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.

*Fitzpatrick v. Little*, No. 1:22-CV-00162-DCN, 2023 WL 129815, at *2 (D. Idaho Jan. 9, 2023) (cleaned up).

### III.  ARGUMENT

**A. Plaintiffs lack standing to bring an unripe, pre-enforcement challenge to a state statute by suing Prosecutor Bennetts—against whom they've made no allegations.**

Plaintiffs lack standing to sue Prosecutor Bennetts because they do not allege that they will suffer any actual, imminent injury in fact through prosecution under HB 71 by Prosecutor Bennetts; they do not trace any threatened injury to Prosecutor Bennetts' actions; and they do not allege that there is any action of Prosecutor Bennetts to enjoin to redress any injury.

Federal courts have the constitutional power to adjudicate only genuine "Cases" and "Controversies" under Article III, § 2; exercising that power requires that litigants have standing. *California v. Texas*, 141 S. Ct. 2104, 2113 (2021). To have standing to sue Prosecutor Bennetts, Plaintiffs must satisfy four elements: (1) Plaintiff is under threat of suffering "injury in fact" that is concrete and particularized; (2) the threat must be actual and imminent, not conjectural or hypothetical; (3) it must be fairly traceable to the challenged action of Prosecutor Bennetts; and (4) it must be likely that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Plaintiffs are required to clearly allege facts demonstrating each element of standing to avoid dismissal. *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1175 (9th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Standing and ripeness will be discussed together to show that the Court lacks jurisdiction over a claim against Prosecutor Bennetts. Ripeness is a question of timing that merges almost completely with standing. *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022).

The fact that HB 71 is not effective until January 1, 2024 is important to the question of the Court's jurisdiction. Standing and ripeness are determined by "the facts as they exist when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4 (1992); *Yamada v. Snipes*, 786 F.3d 1182, 1203–04 (9th Cir. 2015).

1. **Plaintiff is not under actual, imminent threat of suffering a concrete and particularized "injury in fact" through prosecution under HB 71 by Prosecutor Bennetts. (*Summers* elements (1) and (2).)**

Because Plaintiffs seek judicial intervention before HB 71 has ever been enforced, they bear the burden of alleging a genuine, credible threat of imminent prosecution by the Ada County Prosecutor's Office, analyzed through four factors: (a) whether the plaintiffs have articulated a concrete plan to violate the law in question, (b) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, (c) the history of past prosecution or enforcement under the challenged statute, and (d) whether the challenged law is inapplicable to the plaintiffs, either by its terms or as interpreted by the government. *Unified Data Servs.*, 39 F.4th at 1210 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014); *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010)). No factor weighs in Plaintiffs' favor.

> **a. Plaintiffs have not articulated a concrete plan to violate a law that does not prohibit their conduct and is not yet in effect. (*Unified Data Servs.* factors (a) and (d).)**

Plaintiffs have not articulated a concrete plan to violate HB 71. The reason why is straightforward: the law does not prohibit receiving or procuring treatment for a minor, and the law is not yet in effect and thus cannot prohibit *any* conduct.

Where the challenged law neither requires nor forbids action on the part of the Plaintiffs, standing is "substantially more difficult" to establish. *Summers*, 555 U.S. at 493–94. HB 71 prohibits acts by "a medical provider" only, not acts by minors or parents. (Dkt. 1, ¶¶ 45–47; p. 34, lines 20–21 ("A medical provider shall not engage in any of the following practices upon a child . . .").) The law does not prohibit any of the acts that the Plaintiffs may intend to do, such as receiving treatment *as* a minor (dkt. 1, ¶¶ 6, 7, 80, 94) or seeking and procuring treatment *for* a minor (dkt. 1, ¶¶ 79, 89, 91, 115). By its terms, the law cannot be applied to the Plaintiffs, and "[s]uch inapplicability weighs against both the plaintiffs' claims that they intend to violate the law, and also their claims that the government intends to enforce the law against them." *Lopez*, 630 F.3d at 786. Plaintiffs make no allegation that they have any concrete plan to violate HB 71 or that they fear imminent prosecution under it.[2]

And even if Plaintiffs had alleged that they planned to violate HB 71, any claim based on that plan would not be ripe because HB 71 does not become effective until January 1, 2024. (Dkt. 1, p. 37, lines 6–7.) Plaintiffs filed their complaint on May 31, 2023—more than seven months before HB 71 will prohibit any conduct at all. And even at the time of filing this motion to dismiss, HB 71 is months away from becoming law. As of the date the complaint was filed, *Lujan*, 504 U.S. at 569 n. 4, Plaintiffs are simply unable to allege a concrete plan to violate a law that is not

---

[2] Nor do they allege that any non-Plaintiff has a concrete plan to violate HB 71— notwithstanding their errant reference to "Doctor Plaintiffs" (dkt. 1, ¶ 106).

capable of being violated, and these two factors must weigh against finding a concrete and particularized injury in fact.

### b. Plaintiffs have not alleged that Ada County has communicated a specific warning or threat to initiate proceedings. (Unified Data Servs. factor (b).)

"[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Plaintiffs must allege a genuine, credible threat of imminent prosecution by the Ada County Prosecutor's Office. *Unified Data Servs*, 39 F.4th at 1210. But they have not alleged that Prosecutor Bennetts or anyone in her Office has ever threatened anyone with enforcement under HB 71, let alone the Plaintiffs themselves.[3]

To have standing, Plaintiffs need to assert an injury that is the result of HB 71's actual or threatened *enforcement*, not its mere existence. *California*, 141 S. Ct. at 2114. Plaintiffs have no standing when they allege against Prosecutor Bennetts "no action—actual or threatened—whatsoever." *Id.* at 2115.

Plaintiffs allege that their fears arise from the mere existence of a law that has not yet gone into effect, HB 71, *not* from any threat or warning from Prosecutor Bennetts or Ada County. (Dkt. 1, ¶¶ 80–81, 93–94.) This is insufficient. *Thomas*, 220 F.3d at 1139. Without a genuine, imminent warning or threat directed to the Plaintiffs from Ada County to initiate proceedings under HB 71, this factor must weigh against the finding of a concrete and particularized injury in fact.

---

[3] Plaintiffs' allegation that "Defendant Labrador has publicly announced that he intends to enforce the Healthcare Ban," (dkt. 1, ¶ 8), does not confer standing to sue Prosecutor Bennetts. In Idaho, County Prosecutors are elected by their County constituents and are independent of the Attorney General. *Newman v. Lance*, 129 Idaho 98, 922 P.2d 395 (1996); 1998 Idaho Laws Ch. 245 (amending Idaho Code § 67–1401 post-*Newman v. Lance*). *See also* Idaho Const. art. V, § 18.

MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS– PAGE 8

    **c. HB 71 has no history of past prosecution because it is not in effect until January 1, 2024. (Unified Data Servs. factor (c).)**

This factor does not weigh in favor of finding a genuine, credible threat of imminent prosecution by the Ada County Prosecutor's Office because HB 71 is not in effect as of the date the complaint was filed, and there is no history of past prosecution or enforcement under HB 71.

    **d. The factors weigh against Plaintiffs and there is no "injury in fact" or standing to sue Prosecutor Bennetts.**

Plaintiffs have not alleged facts to show an "injury in fact". They have articulated no concrete plan to violate HB 71; they do not allege that HB 71 prohibits any of their actions; and they have alleged no threat from Ada County to initiate proceedings. Plaintiffs' complaint fails to allege sufficient facts to meet standing elements (1) and (2) under *Summers*, and therefore fails to allege standing to bring an action against Prosecutor Bennetts.[4]

**2. To the extent Plaintiffs allege any threat of any harm, they trace this to the existence of HB 71, not to any challenged action of Prosecutor Bennetts. (Summers element (3).)**

Plaintiffs do not have standing to sue Prosecutor Bennetts when their "injury is not 'fairly traceable' to any 'allegedly unlawful conduct'" of hers. Plaintiffs "have not pointed to any way in which the defendant[], [Prosecutor Bennetts], will act to enforce [HB 71]" and have not shown

---

[4] This conclusion also supports a finding that this case should not be heard under the prudential considerations of ripeness. The absence of any real or imminent threat of criminal enforcement seriously undermines any claim of hardship to the plaintiff under the second *Abbott Laboratories* factor; on the other hand, by being forced to defend HB 71 in a vacuum and in the absence of any particular "victims" of HB 71's effects, Prosecutor Bennetts would suffer hardship were the Court to adjudicate this case now. *Thomas*, 220 F.3d at 1142 (applying the two factors in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967) (abrogated on other grounds).).

MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS– PAGE 9

that her action or conduct has caused, or will cause, the injury they attribute to HB 71. *California*, 141 S. Ct. at 2114 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).[5]

Instead of pointing to actions by Prosecutor Bennetts to identify their threat of harm, Plaintiffs trace their alleged harm to the Legislature's actions and the existence of HB 71—for example:

- "The Idaho State Legislature has taken the extraordinary step of criminalizing the provision of well accepted medical care." (dkt. 1 "Preliminary Statement");

- "[L]awmakers and the Governor ignored the extensive legislative testimony that the Healthcare Ban *harms* children." (dkt. 1 "Preliminary Statement");

- "Lawmakers . . . passed a law that interferes with loving parents' decisions about what is best for their children and criminalizes doctors who provide medically necessary care for their patients." (dkt. 1 "Preliminary Statement");

- "[The Healthcare Ban] violates the right to equal protection of transgender adolescents . . . ." (dkt. 1 "Preliminary Statement");

- "The Healthcare Ban also infringes on a fundamental right—parents' right to make decisions about their children's medical care" (dkt. 1 "Preliminary Statement");

- The complaint chronicled an alleged history and context of HB 71's passage in the Legislature, concluding that "the State Legislature's passage of the Healthcare Ban had nothing to do with protecting children and everything to do with

---

[5] This is particularly true where—like § 5000A(a) was in *California v. Texas*—HB 71 is currently unenforceable. *See California*, 141 S. Ct. at 2114.

- expressing disapproval of, and stigmatizing, transgender people" (dkt. 1, ¶¶ 45–58);

- "The Healthcare Ban therefore discriminates against transgender youth, including the Minor Plaintiffs, based on their transgender status and sex . . ." (dkt. 1, ¶ 99);

- "The Healthcare Ban's prohibition against well-accepted medical treatments for adolescents with gender dysphoria stands directly at odds with parents' fundamental right to make decisions concerning the care of their children." (dkt. 1, ¶ 117).

Having traced their alleged harm to the Idaho Legislature and the existence of HB 71—and not to any action by Prosecutor Bennetts—Plaintiffs lack standing to sue Prosecutor Bennetts.

### 3. A favorable decision against Prosecutor Bennetts will not redress Plaintiffs' alleged injuries because there is no action to enjoin. (Summers element (4).)

Where HB 71 is not enforceable as of the date Plaintiffs' complaint was filed, it is not likely that a favorable judicial decision against Prosecutor Bennetts will prevent or redress any injury Plaintiffs allege. When the challenged law is unenforceable—as is a statute that is not yet in effect—then "[t]here is no one, and nothing, to enjoin." *California*, 141 S. Ct. at 2116. Plaintiffs cannot enjoin Prosecutor Bennetts, because "[she] has no power to enforce [HB 71] against them." *Id.* And without any *action* to enjoin, "injunctive relief could amount to no more than a declaration that the statutory provision they attack is unconstitutional, *i.e.*, a declaratory judgment. But . . . that is the very kind of relief that cannot alone supply jurisdiction otherwise absent." *Id.* (citing *Medtronic, Inc. v. Mirowski Family Ventures*, LLC, 571 U.S. 191, 197 (2014) for the proposition

that "a court looks to 'the nature of the threatened action in the absence of the declaratory judgment suit' to determine whether jurisdiction exists")).

In other words, if there is no *action* of Prosecutor Bennetts to enjoin, then there is no standing to sue her—not for injunctive relief and not to declare HB 71 unconstitutional. This rule is not a mere technicality; it operates to prevent federal courts from issuing advisory opinions in violation of Article III. *Id.*

HB 71 was not enforceable when the complaint was filed, and it is not enforceable as of the date this motion is filed. An injunction that would prevent Prosecutor Bennetts from enforcing HB 71 would therefore have no effect—there is nothing to enjoin. This precludes standing not only to seek an injunction, but also to seek a declaratory judgment.

4. **Plaintiffs have failed to allege standing to sue Prosecutor Bennetts under Summers, and a claim to enjoin enforcement of HB 71 is not yet ripe; therefore, she must be dismissed from this lawsuit.**

Plaintiffs have failed to allege facts to satisfy *Summers* elements (1) and (2), because the balance of the *Unified Data Servs.* factors show that Plaintiffs are under no threat of suffering an "injury in fact" that is concrete and particularized, actual and imminent from Prosecutor Bennetts. They fail to allege facts that satisfy element (3) because they trace any alleged harm to the Idaho Legislature and the existence of HB 71, not to any challenged action of Prosecutor Bennetts. Plaintiffs fail to allege facts to satisfy element (4) because it is not likely that a favorable judicial decision against Prosecutor Bennetts will prevent or redress their alleged injury, where HB 71 is not enforceable, and there is nothing for this Court to enjoin. The fact that HB 71 is not enforceable due to its future effective date also demonstrates that this case is not ripe, both under constitutional ripeness and prudential ripeness considerations. Because Plaintiffs lack standing to sue Prosecutor Bennetts and Ada County, and claims against them are not ripe, the Court lacks jurisdiction under

MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS– PAGE 12

Article III to adjudicate Plaintiffs' claims against them, and they should be dismissed from this lawsuit.

**B. Plaintiffs make no allegation against Prosecutor Bennetts or Ada County and neither has caused their alleged injury.**

Plaintiffs brought their claims against Prosecutor Bennetts under § 1983. (Dkt. 1 ¶¶ 97, 111, 114, 121.) A § 1983 cause of action requires the plaintiff to show that "(1) a person acting under color of State law; (2) subjects or causes to be subjected to deprivation; (3) a U.S. citizen or person in the jurisdiction of the United States; (4) of a right, privilege, or immunity secured by the Constitution and laws." *Chaudhry v. Aragon*, 68 F.4th 1161, 1169 (9th Cir. 2023). To establish the second element, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury; the defendant's action must be both the cause-in-fact and the proximate cause, or else there is no liability. *Id.* at 1169–70 (9th Cir. 2023) (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996)).

The complaint makes no allegation that Prosecutor Bennetts has done anything at all, let alone anything that would subject the Plaintiffs to deprivation of a constitutional right. Instead, the complaint alleges that the actionable cause of their injury is the Legislature passing the not-yet-effective statute Plaintiffs are facially challenging. (Dkt. 1, pp. 2–3, ¶¶ 45–70, 98–110, 117–120).

To take a further step, Plaintiffs fail to make any allegation against Ada County—in whose shoes Plaintiffs have placed Prosecutor Bennetts by suing her in her official capacity. Suing a local government official in her official capacity is equivalent to suing the local government entity itself. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 n.55 (1978); *Olsen v. City of Boise, Idaho*, No. 1:20-CV-00478-DCN, 2022 WL 3042982, at *5 (D. Idaho Aug. 2, 2022);

MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS– PAGE 13

*Berglund v. Canyon Cnty., Idaho by & through Bd. of Cnty. Commissioners*, No. 1:19-CV-00396-CWD, 2020 WL 1066306, at *2 (D. Idaho Mar. 4, 2020). *See also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, *supra*, local government units can be sued directly for damages and injunctive or declaratory relief."); *Hillblom v. Cnty. of Fresno*, 539 F. Supp. 2d 1192, 1202–03 (E.D. Cal. 2008).

To satisfy § 1983's causation element as to Ada County—or Jan M. Bennetts sued in her official capacity as Ada County Prosecutor—a plaintiff must show that the "moving force behind the constitutional violation" is the implementation or execution of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by" Ada County's officers. *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) (quoting *Monell*, 436 U.S. at 690; *Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 960 (9th Cir.2010)).

But instead of alleging that Ada County's ordinances or regulations are the moving force behind the alleged constitutional violation, Plaintiffs allege that the moving force behind the alleged constitutional violations is the not-yet-effective state statute they are facially challenging—for example:

- "[The Healthcare Ban] violates the right to equal protection of transgender adolescents . . . . The Healthcare Ban also infringes on a fundamental right—parents' right to make decision about their children's medical care" (dkt. 1 "Preliminary Statement");

- "The Healthcare Ban therefore discriminates against transgender youth, including the Minor Plaintiffs, based on their transgender status and sex . . ." (dkt. 1, ¶ 99);

- "The Healthcare Ban's prohibition against well-accepted medical treatments for adolescents with gender dysphoria stands directly at odds with parents' fundamental right to make decisions concerning the care of their children." (dkt. 1, ¶ 117).

Whether they are correct or not on the merits of their facial challenge, Plaintiffs were correct in attributing the moving force of their alleged injury to the state statute they are facially challenging. However, Plaintiffs missed the mark by erroneously suing a locally elected County Prosecutor who is independent of the State government that passed the statute, and who serves only one County whose officers did not promulgate HB 71. Nothing Prosecutor Bennetts nor Ada County did led to this lawsuit, and Plaintiffs' allegations of harm caused by the Legislature—and lack of allegations against Prosecutor Bennetts and Ada County—demonstrate just that. Because their actions were not the moving force behind the alleged constitutional violation, Prosecutor Bennetts and Ada County should be dismissed from this lawsuit.

C. **Prosecutor Bennetts is not a necessary party to this case.**

All the relief Plaintiffs seek could be provided even if Prosecutor Bennetts were not a party to this lawsuit. If HB 71 is invalidated or enforcement is enjoined statewide, that order will have statewide effect. Plaintiffs ask the court to "[e]nter a judgment declaring that the Healthcare Ban violates the equal protection clause and the due process clause of the Fourteenth Amendment and is therefore unenforceable." (Dkt. 1, p. 32). This is a request for statewide, facial invalidation. If their request were granted, it would prohibit Prosecutor Bennetts and Ada County—as well as any other State or local official or government entity—from enforcing HB 71. And this facial invalidation could happen without Prosecutor Bennetts being named as a defendant.

**D. It is unfair to require Ada County taxpayers to bear an unfair share of the burden of this litigation.**

Plaintiffs facially challenge a not-yet-effective state statute passed by a state legislature. Ada County has no authority to pass such a law. And yet, Plaintiffs have sued Prosecutor Bennetts, Ada County Prosecutor, in her official capacity and have thereby required Ada County to bear the burden of this litigation along with the State of Idaho—including Plaintiffs' threat of seeking attorney fees under 42 U.S.C. § 1988 (dkt. 1, p. 32).

Ada County taxpayers are therefore required to pay double in a case challenging a state statute: they must fund the State's defense of the constitutionality of the statute along with a potential attorney fees award, and in the same lawsuit they must also fund the Ada County Prosecuting Attorney's Office's defense of Ada County along with a potential attorney fees award—although Plaintiffs have not alleged that Prosecutor Bennetts or Ada County have done anything at all to affect their constitutional rights. Where Prosecutor Bennetts has neither done nor threatened anything to affect Plaintiffs, fairness and judicial economy are served by Prosecutor Bennetts and Ada County being dismissed from this lawsuit.

## IV.   CONCLUSION

For reasons legal and practical, as explained, Plaintiffs' complaint should be dismissed as to Prosecutor Bennetts.

**DATED** this 25th day of August 2023.

> **JAN M. BENNETTS**
> Ada County Prosecuting Attorney
>
> By: /s/ Dayton P. Reed
> Dayton P. Reed
> Deputy Prosecuting Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of August, 2023, I served a true and correct copy of the foregoing *Memorandum in Support of Ada County Prosecuting Attorney Jan M. Bennetts' Motion to Dismiss* electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Alexia D. Korberg<br>Brad S. Karp<br>Dana Kennedy<br>Jackson Cory Yates<br>Jordan E. Orosz<br>Paul, Weiss, Rifkind, Wharton & Garrision<br>akorberg@paulweiss.com<br>bkarp@paulweiss.com<br>dkennedy@paulweiss.com<br>jyates@paulweiss.com<br>jorosz@paulweiss.com | Ariella C. Barel<br>Eric Alan Stone<br>Kyle N. Bersani<br>Philip S. May<br>Groombridge, Wu, Baughman & Stone<br>ariella.barel@groombridgewu.com<br>eric.stone@groombridgewu.com<br>kyle.bersani@groombridgewu.com<br>philip.may@groombridgewu.com |
| Casey Parsons<br>Richard Alan Eppink<br>Wrest Collective<br>casey@wrest.coop<br>ritchie@wrest.coop | Dina M. Flores-Brewer<br>ACLU of Idaho<br>dfloresbrewer@acluidaho.org |
| Leslie Jill Cooper<br>Li Nowlin-Sohl<br>Meredith Taylor Brown<br>American Civil Liberties Union Foundation<br>lcooper@aclu.org<br>lnowlin-sohl@aclu.org<br>tbrown@aclu.org | Joshua N. Turner<br>Lincoln Davis Wilson<br>James E. M. Craig<br>Rafael J. Droz<br>Idaho Attorney General's Office<br>josh.turner@ag.idaho.gov<br>lincoln.wilson@ag.idaho.gov<br>james.craig@ag.idaho.gov<br>rafael.droz@ag.idaho.gov |
| Colleen Rosannah Smith<br>Stris & Maher<br>csmith@stris.com | Cortlin H. Lannin<br>D. Jean Veta<br>William Isasi<br>Covington & Burling, LLP<br>clannin@cov.com<br>jveta@cov.com<br>wisasi@cov.com |

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated as follows:

N/A

By: /s/ Chyvonne Tiedemann
Legal Assistant