Li Nowlin-Sohl*
(admitted only in Washington)
Leslie Cooper*
Taylor Brown*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
Lnowlin-sohl@aclu.org
lcooper@aclu.org
tbrown@aclu.org

Richard Eppink (ISB no. 7503)
Casey Parsons (ISB no. 11323)
David A. DeRoin (ISB no. 10404)
WREST COLLECTIVE
812 W. Franklin St.
Boise, ID 83702
Tel: (208) 742-6789
ritchie@wrest.coop
casey@wrest.coop
david@wrest.coop

Brad S. Karp*
Alexia D. Korberg*
Jackson Yates*
Dana L. Kennedy*
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
bkarp@paulweiss.com
akorberg@paulweiss.com
jyates@paulweiss.com
dkennedy@paulweiss.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

*Additional counsel for Plaintiffs identified
on the following page*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **PAM POE**, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>**RAÚL LABRADOR**, et. al.,<br><br>*Defendants.* | Case No. 1:23-cv-00269-CWD<br><br>**RESPONSE TO THE ADA COUNTY PROSECUTING ATTORNEY'S MOTION TO DISMISS (Dkt. 51)** |

Eric Alan Stone*
Ariella C. Barel*
Kyle N. Bersani*
GROOMBRIDGE, WU, BAUGHMAN AND
STONE LLP
565 5th Avenue, Suite 2900
New York, NY 10017
Tel: (332) 269-0030
eric.stone@groombridgewu.com
ariella.barel@groombridgewu.com
kyle.bersani@groombridgewu.com

Jordan Orosz*
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Tel: (202) 223-7300
jorosz@paulweiss.com

Philip S. May*
GROOMBRIDGE, WU, BAUGHMAN AND
STONE LLP
801 17th St. NW, Suite 1050
Washington, DC 20006
Tel: (202) 505-5830
philip.may@groombridgewu.com

Dina Flores-Brewer (ISB no. 6141)
ACLU OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
dfloresbrewer@acluidaho.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

## **<u>Table of Contents</u>**

I. Background ........................................................................................................ 2

II. Legal Standard ................................................................................................. 3

III. Argument ........................................................................................................ 3

    A.       Plaintiffs Have Standing under All Relevant Doctrines .............................. 5

          1.      No Pre-Enforcement Analysis Is Necessary ........................................ 5

          2.      Plaintiffs Satisfy the Traditional Pre-Enforcement Analysis ............... 6

          3.      Plaintiffs Have Standing Regardless of the Law Proscribing and Targeting the Conduct of Doctors who Provide Treatment ........ 10

          4.      Prudential Ripeness Considerations Further Support Plaintiffs' Standing ............................................................................................... 14

    B.       Plaintiffs State a Claim Against Bennetts Who Is Properly Named As an Official-Capacity Defendant ................................................................ 15

    C.       Non-Party Taxpayers Have No Bearing on This Case ................................ 17

IV. Conclusion ..................................................................................................... 17

**<u>Table of Authorities</u>**

## Cases

*ACLU of Idaho, Inc.* v. *City of Boise*,
   998 F. Supp. 2d 908 (D. Idaho 2014) ...................................................................7

*Babbitt* v. *United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979)..........................................................................................6

*Bennett* v. *Spear*,
   520 U.S. 154 (1997).........................................................................................12

*Blanchette* v. *Conn. Gen. Ins. Corps.*,
   419 U.S. 102 (1974)...........................................................................................7

*Cal. Trucking Ass'n* v. *Bonta*,
   996 F.3d 644 (9th Cir. 2021) .........................................................................8, 10

*Compassion in Dying* v. *Washington*,
   79 F.3d 790 (9th Cir. 1996), *rev'd on other grounds, Washington* v.
   *Glucksberg*, 521 U.S. 702 (1997)........................................................................7

*Denning* v. *Lincoln County Sheriff's Off.*,
   No. 1:18-CV-00473-BLW, 2020 WL 355209 (D. Idaho Jan. 21, 2020)................................16

*Ezell* v. *City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ..............................................................................7

*Hecox* v. *Little*,
   479 F. Supp. 3d 930 (D. Idaho 2020) ..................................................................15

*Hein* v. *Freedom from Religion Found., Inc.*,
   551 U.S. 587 (2007)..........................................................................................17

*Jackson* v. *City & County of San Francisco*,
   746 F.3d 953 (9th Cir. 2014)), *abrogated on other grounds by United States* v.
   *Alaniz*, 69 F.4th 1124 (9th Cir. 2023) ....................................................................5

*Johnson* v. *Canyon County*,
   No. 1:19-CV-364-BLW, 2020 WL 534038 (D. Idaho Feb. 3, 2020) .........................................16

*Knife Rts., Inc.* v. *Vance*,
   802 F.3d 377 (2d Cir. 2015)...................................................................................7

*Koe* v. *Noggle*,
___ F. Supp. 3d ___, No. 1:23-CV-2904-SEG, 2023 WL 5339281 (N.D. Ga.
Aug. 20, 2023) .......................................................................................................... 14

*KVUE, Inc.* v. *Moore*,
709 F.2d 922 (5th Cir. 1983) .................................................................................... 7

*L.A. Police Dep't* v. *United Reporting Publ'g Corp.*,
528 U.S. 32 (1999) ..................................................................................................... 6

*Leite* v. *Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .................................................................................. 3

*Lopez* v. *Candaele*,
630 F.3d 775 (9th Cir. 2010) .................................................................................. 11

*Luke* v. *Abbott*,
954 F. Supp. 202 (C.D. Cal. 1997) ......................................................................... 16

*McCormack* v. *Hiedeman*,
900 F. Supp. 2d 1128 (D. Idaho 2013) .................................................................. 15

*MedImmune, Inc.* v. *Genentech, Inc.*
549 U.S. 118 (2007) ................................................................................................... 7

*Nat'l Audubon Soc'y, Inc.* v. *Davis*,
307 F.3d 835 (9th Cir. 2002), *amended on denial of reh'g*, 312 F.3d 416 (9th
Cir. 2002) ................................................................................................................... 6

*NIFLA* v. *Harris*,
839 F.3d 823 (9th Cir. 2016), *rev'd on other grounds, NIFLA* v. *Becerra*, 138
S. Ct. 2361 (2018) .................................................................................................... 15

*Planned Parenthood of the Great Northwest & the Hawaiian Islands* v. *Wasden*,
350 F. Supp. 3d 925 (D. Idaho 2018) .................................................................... 15

*Planned Parenthood of the Great Northwest & the Hawaiian Islands* v. *Wasden*,
406 F. Supp. 3d 922 (D. Idaho 2019) ............................................................. 15, 17

*Planned Parenthood Greater Nw.* v. *Labrador*,
No. 1:23-CV-00142-BLW, 2023 WL 4864962 (D. Idaho July 31, 2023) ......... 8, 17

*Planned Parenthood of Idaho* v. *Wasden*,
376 F.3d 908 (9th Cir. 2004) .................................................................................. 16

*Rivera* v. *Cnty. of Los Angeles*,
745 F.3d 384 (9th Cir. 2014) .................................................................................. 16

*Safe Air for Everyone* v. *Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...................................................................3

*San Luis & Delta-Mendota Water Auth.* v. *Salazar*,
   638 F.3d 1163 (9th Cir. 2011) ...........................................................10, 13

*State Nat'l Bank of Big Spring* v. *Lew*,
   795 F.3d 48 (D.C. Cir. 2015)....................................................................7

*Stormans, Inc.* v. *Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ...............................................................14

*Summers* v. *Earth Island Inst.*,
   555 U.S. 488 (2009)................................................................................11

*Susan B. Anthony List* v. *Driehaus*,
   573 U.S. 149 (2014)..............................................................................5, 7

*Teter* v. *Lopez*,
   76 F.4th 938 (9th Cir. 2023) ..........................................................5, 6, 8, 9

*California* v. *Texas*,
   141 S. Ct. 2104 (2021)............................................................................8

*Thomas* v. *Anchorage Equal Rts. Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ..............................................................6, 9

*California* v. *Trump*,
   963 F.3d 926 (9th Cir. 2020) ................................................................10

*Unified Data Services, LLC* v. *FTC*,
   39 F.4th 1200 (9th Cir. 2022) .................................................................9

*Valle del Sol Inc.* v. *Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ...........................................................7, 15

*Arizona* v. *Yellen*,
   34 F.4th 841 (9th Cir. 2022) ...................................................................7

**Statutes**

Idaho Code § 18-1506C(5) .................................................................................2

Idaho Code § 31-2227(1)...........................................................................8, 9, 15

2023 Idaho Session Laws Chapter 292 ...............................................................2

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................3

Fed. R. Civ. P. 12(b)(6)................................................................................3

**Other Authorities**

First Amendment .........................................................................................6

Second Amendment.......................................................................................7

House Bill 71 ......................................................................................... *passim*

Plaintiffs live in Ada County and receive healthcare in Ada County. They are challenging the constitutionality of House Bill 71 (the "Healthcare Ban"), and thus have sued, among others, the official responsible for enforcing the Healthcare Ban in Ada County—the Ada County Prosecuting Attorney ("Bennetts"). The Healthcare Ban, which Bennetts has the primary duty to enforce absent an injunction, will deprive Plaintiffs of their ability to continue obtaining vital healthcare—healthcare that they, their parents, and their doctors all agree is medically necessary—in Ada County and throughout the entire state of Idaho. The law, once in effect, would subject *any* doctor who provides Plaintiffs with this healthcare to felony prosecution and up to ten years' incarceration.

Bennetts does not dispute that Idaho vests in her the primary duty of enforcing the Healthcare Ban in Ada County. Nor does Bennetts deny that she will enforce the Healthcare Ban if it goes into effect. And she cannot dispute that the law is slated to take effect imminently, mere weeks after this Court hears her motion. Instead, she argues in her Motion to Dismiss [Dkt. 55] that Plaintiffs are not under imminent threat of injury simply because the law has not yet gone into effect. Of course, enjoining unconstitutional laws *before* they take effect and *before* they deprive citizens of their constitutional rights, thus preserving the status quo and preventing irreparable harm, is a familiar task for the federal courts. Plaintiffs have pled facts demonstrating that: (1) Plaintiffs will be injured by their inability to obtain necessary healthcare in Idaho under the Healthcare Ban; (2) Plaintiffs' injury is directly traceable to conduct Bennetts must undertake in her official role as the Ada County Prosecuting Attorney; and (3) Plaintiffs' injury is redressable by an order enjoining Bennetts from prosecuting and enforcing the Healthcare Ban. Those well pleaded allegations are more

than enough to sustain a claim against Bennetts for relief from that injury. The Motion should be denied.

## I. Background

Over five months ago, the Idaho Legislature passed the Healthcare Ban, HB 71, that Plaintiffs challenge here. The Governor signed it. It is now Idaho law, published as Chapter 292 of the 2023 Idaho Session Laws, and will take effect at midnight on the morning of January 1, 2024.

The new law bans medically necessary healthcare for minors who are transgender, including the minor Plaintiffs here. It not only overrides the careful decisions that these minors, their parents, and their doctors have made together, but carries a draconian penalty: up to ten years imprisonment for any medical professional who provides that care. HB 71 § 1 (to become Idaho Code § 18-1506C(5)). Absent an injunction, when Plaintiffs wake on New Year's Day, they will be cut off from the medical care they have been receiving and will continue to require.

The healthcare that HB 71 would criminalize saved Plaintiff Pam Poe's life, lifting her out of debilitating depression and an inpatient admission for suicidal thoughts related to her gender dysphoria, and into newfound happiness and confidence. (Complaint [Dkt. 1] ¶¶ 71–81.) Jane Doe suffered socially and in school, secluding herself from others until, like for Pam, a gender dysphoria diagnosis and consequent treatment transformed her into a thriving young woman and student. (*Id.* ¶¶ 82–94.) Both rely now and will continue to rely on the treatment that HB 71 bans. (*Id.* ¶¶ 6–7.)

Plaintiffs all live in, and the minors obtain their medical treatment in, Ada County. (*Id.* ¶¶ 4–7, 77–81, 89–94.) Defendant Jan Bennetts is the Ada County Prosecuting Attorney,

vested with primary responsibility to enforce the Healthcare Ban where Plaintiffs live and access their medical care, as soon as the law goes into effect. (*Id.* ¶ 9 (citing Idaho Code § 31-2227).)

## II. Legal Standard

Bennetts raises two grounds for dismissal—a lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and a failure to state a claim pursuant to Rule 12(b)(6). However, the standards are identical for Bennetts' particular arguments.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone* v. *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Bennetts has stated unequivocally that she is making a facial attack on subject-matter jurisdiction. (Motion Brief [Dkt. 51-1] at 4.) "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite* v. *Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride* v. *Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

## III. Argument

Bennetts avers she should be dismissed because Plaintiffs have not alleged "a genuine, credible threat of imminent prosecution" from the Ada County Prosecuting Attorney. (Motion Brief [Dkt. 51-1] at 8.) As a threshold, dispositive issue, the law is clear that no such pre-enforcement threat-of-imminent-prosecution analysis applies because Plaintiffs would suffer medical and constitutional harm from the minute HB 71 took effect. But even if such analysis

were necessary, Plaintiffs would easily satisfy it. Bennetts makes four arguments for why Plaintiffs should be prevented from seeking relief from the official charged with enforcing the law that will imminently strip them of their medical care: (1) Plaintiffs do not plan to violate the law because no doctor has announced plans to provide them care and face criminal prosecution; (2) even if Plaintiffs planned to violate the law, their claim would not be ripe because the law has not yet gone into effect; (3) Bennetts has not explicitly said that she plans to fulfill her obligation to enforce the law when it goes into effect; (4) there is no "history of past prosecution" under this law that has never existed before and has not yet gone into effect. (*Id.* at 7–9.) In this country and in this state, a law's effective date is not some sort of jurisdictional gotcha to deprive citizens of their ability to access the courts; you do not have to wait until you have suffered irreparable constitutional and medical harm to seek relief. And as a matter of both common sense and common law, the fact that the Healthcare Ban cuts Plaintiffs off from their ongoing medical care by coercing doctors to stop providing care (under threat of ten years' imprisonment), rather than by making it illegal for patients to seek care, does not immunize the law from scrutiny.

Bennetts, in her capacity as Ada County's Prosecuting Attorney, is a proper defendant alongside the Idaho Attorney General, as the Ninth Circuit has affirmed in the face of the same kind of arguments that Bennetts retries again in this case. The challenge against her over HB 71 is ripe for review, especially as she notably fails to disavow that she will, in fact, enforce it.

## A.    Plaintiffs Have Standing under All Relevant Doctrines

### 1.    No Pre-Enforcement Analysis Is Necessary

While courts have on occasion considered a short list of factors to determine whether a plaintiff faces a "credible threat" of prosecution in order to confirm standing and ripeness in a pre-enforcement statutory challenge, *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 159 (2014), the Ninth Circuit has recently made plain that requiring a plaintiff to always show some specific warning or threat of prosecution "has no basis in our precedent." *Teter* v. *Lopez*, 76 F.4th 938, 946 (9th Cir. 2023). Concurrently, the Circuit held that the traditional pre-enforcement requirements do not apply at all where plaintiffs face some actual injury beyond hypothetical risk of prosecution. *Id*. at 944 & n.2.

Without engaging in any pre-enforcement analysis, the Ninth Circuit determined that the plaintiffs in *Teter* had standing. *Id*. at 943–44 (tracking the identical approach in *Jackson* v. *City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), *abrogated on other grounds by United States* v. *Alaniz*, 69 F.4th 1124, 1127–28 (9th Cir. 2023)). Plaintiffs there challenged Hawaii's ban on butterfly knives, alleging that they had previously owned butterfly knives but had disposed of them prior to moving to Hawaii because of the law; "[b]ut for Hawaii law," they would purchase and possess butterfly knives; and they would purchase replacement knives "[i]f Hawaii's ban were lifted." *Id*. at 944. Plaintiffs here face a parallel situation (albeit with significantly higher stakes): they are currently accessing this medical care in Idaho but will be forced to either terminate care or leave Idaho if the Ban takes effect; but for the Healthcare Ban they would continue to access the medication and care they need; and they would access care again if Idaho's Ban were lifted. It is the Ban's existence, just like the butterfly knife ban's existence in *Teter* (and the hollow-point ammunition law's existence in *Jackson*), that itself constitutes an injury in fact to the

respective plaintiffs, and thus gives them each standing. *Id*. That is, as the Circuit explained two decades before, the plaintiffs here and in those cases have standing because the core of their injuries is the actual harm from what they cannot do in light of the laws they challenge; the hypothetical risk of prosecution is ancillary to that core harm. *Nat'l Audubon Soc'y, Inc.* v. *Davis*, 307 F.3d 835, 855 (9th Cir. 2002), *amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002); *see also L.A. Police Dep't* v. *United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) ("This is not to say that the threat of criminal prosecution is a necessary condition for the entertainment of a facial challenge.").

Because Plaintiffs' injuries here—cessation of medically necessary treatment and curtailment of parental autonomy—are independent of any possible prosecution, the Court can stop there and confirm that their claims are justiciable.

### 2.     Plaintiffs Satisfy the Traditional Pre-Enforcement Analysis

Even if this Court were to undertake the traditional pre-enforcement analysis, Plaintiffs easily meet the criteria. Although the Ninth Circuit in *Teter* determined that pre-enforcement analysis was unnecessary, the court also observed that the result would be the same under that analysis regardless. *Teter*, 76 F.4th at 945. Courts permit pre-enforcement statutory challenges whenever a plaintiff faces "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt* v. *United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). In these types of cases, standing and ripeness merge. *Thomas* v. *Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). Though sometimes courts will note special favor for standing and ripeness in First Amendment cases in particular, courts apply an equally liberal pre-enforcement justiciability analysis in other constitutional challenges, and even in cases without any constitutional

aspect at all. *See, e.g.*, *Blanchette* v. *Conn. Gen. Ins. Corps.*, 419 U.S. 102, 1423 & n.29 (1974) (Takings Clause); *Arizona* v. *Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) (Spending Clause); *Valle del Sol Inc.* v. *Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013) (Due Process Clause); *Compassion in Dying* v. *Washington*, 79 F.3d 790, 796 (9th Cir. 1996) (Substantive Due Process), *rev'd on other grounds, Washington* v. *Glucksberg*, 521 U.S. 702 (1997); *State Nat'l Bank of Big Spring* v. *Lew*, 795 F.3d 48, 54 (D.C. Cir. 2015) (separation of powers and presidential appointments); *KVUE, Inc.* v. *Moore*, 709 F.2d 922, 930 (5th Cir. 1983) (Supremacy Clause); *MedImmune, Inc.* v. *Genentech, Inc.* 549 U.S. 118, 128–29 (2007) (patent validity with no Constitution-based challenge); *cf. Knife Rts., Inc.* v. *Vance*, 802 F.3d 377, 384 n.4 (2d Cir. 2015) (observing that the Supreme Court "has drawn no distinction between these constitutional interests in pronouncing a credible threat of prosecution sufficient to establish standing"). Bennetts does not need to advertise that she will do her job; the "existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper." *Ezell* v. *City of Chicago*, 651 F.3d 684, 695–96 (7th Cir. 2011)(quoting *Bauer* v. *Shepard*, 620 F.3d 704, 708 (7th Cir. 2010)) (Second Amendment). And as this Court well knows, the fact that Plaintiffs proactively sue to preserve the status quo before a new law takes effect does not diminish standing or ripeness. *See, e.g.*, *ACLU of Idaho, Inc.* v. *City of Boise*, 998 F. Supp. 2d 908, 914 (D. Idaho 2014).

The traditional pre-enforcement ripeness analysis asks whether plaintiffs have alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt*, 442 U.S. at 298). Defendant Bennetts does not dispute that Plaintiffs meet the first part of the test, having plainly alleged

Equal Protection and Due Process challenges to the Healthcare Ban. The traditional analysis factors, then, for evaluating whether there is a credible threat of prosecution ask "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Teter*, 76 F.4th at 946 (quoting *Unified Data Servs., LLC* v. *FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022)). But enforcement history is due little weight when a law is new. *Cal. Trucking Ass'n* v. *Bonta*, 996 F.3d 644, 653 (9th Cir. 2021); *see also Planned Parenthood Greater Nw.* v. *Labrador*, No. 1:23-CV-00142-BLW, 2023 WL 4864962, at *16 (D. Idaho July 31, 2023). And no specific warning or threat of prosecution is required. *Teter*, 76 F.4th at 946.

Rather, most conspicuous here is Defendant Bennetts' failure, anywhere in her motion to dismiss papers, to deny that she will in fact enforce the Healthcare Ban. Her "refusal to disavow enforcement of [the challenged law] . . . during this litigation is strong evidence that [she] intends to enforce the law and that [Plaintiffs] face a credible threat [of enforcement]." *Cal. Trucking*, 996 F.3d at 653; *see also Planned Parenthood Greater Nw.*, 2023 WL 4864962, at *14. The reason why she is named as a defendant, after all, is because she is vested with the "primary duty" of enforcing HB 71 in Ada County, where Plaintiffs live and get their medical treatment. Idaho Code § 31-2227(1); (Complaint [Dkt. 1] ¶¶ 5–7, 9). Plaintiffs thus need only allege that Bennetts is in charge of prosecuting the new statute in their jurisdiction, as Plaintiffs have done. (Complaint [Dkt. 1] ¶ 9.) Bennetts' reliance on *California* v. *Texas*, 141 S. Ct. 2104, 2114 (2021), is misplaced, given that the challenged law in *California* had been stripped of any enforcement mechanism, leaving the government

unable to seek any penalty from anyone. Conversely, the Healthcare Ban and the Idaho Code create an enforcement mechanism wherein Bennetts is charged with bringing such enforcement. *Thomas* also does not support Bennetts. *Thomas* concerned a law that had been on the books for twenty-five years and never enforced, *see Thomas*, 220 F.3d at 1140, as compared to this pre-enforcement challenge of a law for which Bennetts has failed to disavow enforcement.

The only remaining factor in the traditional pre-enforcement analysis, "whether the plaintiffs have articulated a concrete plan to violate the law in question," obviously weighs in Plaintiffs' favor as well. *Teter*, 76 F.4th at 946. Plaintiffs are already receiving ongoing treatment that is intended to treat their gender dysphoria and affirm Plaintiffs' perception of their gender, which is inconsistent with Plaintiffs' sex assigned at birth. (Complaint [Dkt. 1] ¶¶ 6–7, 78–79, 90–91). The Healthcare Ban will prohibit such treatment beginning January 1 by penalizing Plaintiffs' doctors with a felony charge carrying ten years in prison—a charge that Bennetts has the "primary duty" to prosecute. HB 71 § 1; Idaho Code § 31-2227(1). Accepting these facts as true, as the court must on this motion to dismiss, Plaintiffs indisputably have a concrete plan to violate the law in question.

Bennetts' reliance on *Unified Data Services, LLC* v. *FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022), is peculiar, as the complaint "utterly lack[ed]" any allegations that those plaintiffs intended to violate the rule they challenged. The Plaintiffs here, instead, are not just concretely planning to get treatment that HB 71 bans, they are already receiving treatment that HB 71 bans and intend to continue with their course of treatment. Bennetts could have disavowed that she will enforce the Ban, but has so far chosen not to. So, even under the

traditional pre-enforcement analysis that the Ninth Circuit has held does not apply in cases like this, standing and ripeness are clear.

> **3.      Plaintiffs Have Standing Regardless of the Law Proscribing and Targeting the Conduct of Doctors who Provide Treatment**

Plaintiffs have standing to challenge a law if the government's application of it will affect them, even if they are not the direct object of the government action. *Cal. Trucking Ass'n*, 996 F.3d at 652–53. It does not matter that HB 71 will not put Plaintiffs themselves in prison, because it will foreclose their medically necessary care by criminalizing every single Idaho medical professional who could provide it to them—and specifically the medical professionals who provide their current care in Ada County, where they live and are treated.

Bennetts' prosecutorial responsibilities, vested throughout Ada County primarily in her, are more than "fairly traceable" to Plaintiffs' imminent loss of necessary medical care. Plaintiffs need not establish that the bill or the conduct of Bennetts is the "very last step in the chain of causation." *California* v. *Trump*, 963 F.3d 926, 940 (9th Cir. 2020) (quoting *Ass'n of Pub. Agency Customers* v. *Bonneville Power Admin.*, 733 F.3d 939, 953 (9th Cir. 2013)). So long as Plaintiffs can establish a chain of causation, their claim does not fail under the traceability analysis "simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausib[le].'" *Id.* (quoting *Maya* v. *Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)). Plaintiffs can likewise establish injury for standing purposes by showing "determinative or coercive effect upon the actions of someone else." *San Luis & Delta-Mendota Water Auth.* v. *Salazar*, 638 F.3d 1163, 1170 (9th Cir. 2011) (quoting *Bennett* v. *Spear*, 520 U.S. 154, 169 (1997)).

The cases on which Bennetts relies are distinguishable and wholly inapposite here. In *Summers*, plaintiffs were a group of environmental organizations challenging certain U.S.

Forest Service regulations. *Summers*, 555 U.S. at 490. The Court required that plaintiffs show some way in which the regulations they challenged would affect them, given that "[t]he regulations under challenge neither require nor forbid any action on the part of respondents." *Summers*, 555 U.S. at 494. The Court, however, explained that Article III standing is designed to ensure that "the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." *Id.* at 493 (internal quotation marks and citation omitted). There could be nothing more personal for Plaintiffs than the ability to continue medical treatment that goes to their fundamental sense of self (*see* Complaint [Dkt. 1] ¶ 11) that would otherwise be criminalized by the Healthcare Ban and the providers of that treatment prosecuted by Bennetts.

In *Lopez*, the plaintiff challenged a college's sexual harassment policy on the grounds that plaintiff had self-censored in order to avoid running afoul of the policy. *Lopez v. Candaele*, 630 F.3d 775, 784 (9th Cir. 2010). The court mentioned in passing that if a "challenged law is inapplicable to the plaintiffs, either by its terms or as interpreted by the government, [then] [s]uch inapplicability weighs against both the plaintiffs' claims that they intend to violate the law, and also their claims that the government intends to enforce the law against them." *Id.* at 786. The court further explained that this "inapplicability" question dovetailed with the question of the likelihood of enforcement and any potential disavowal of enforcement. *Id.* at 788. The court's opinion concluded that there was such disavowal, as the administration official in charge of enforcement told the plaintiff that "no action will be taken." *Id.* at 792. As discussed in Section III.A.2, *supra*, however, Bennetts has not made any such disavowal.

In other words, *Summers* does not mean a plaintiff lacks standing merely because the law she challenges does not directly restrict her conduct, so long as she can establish that the enforcement of the law will affect her. And *Lopez*'s standing analysis holds that a disavowal of enforcement shows that a law is inapplicable to that individual and cuts against a finding of standing.

Instead, for a standing analysis like this case, *Bennett* v. *Spear* provides closer guidance. 520 U.S. 154 (1997). In *Bennett*, the plaintiffs, two Oregon irrigation districts, challenged a biological opinion from the U.S. Fish and Wildlife Service. *Id.* at 158. The opinion would effectively coerce the Bureau of Reclamation into reducing water flows in order to protect an endangered species of fish from the impact of the Bureau's Klamath Irrigation Project. *Id.* at 157. The Bureau was not itself named as a defendant, and the biological opinion issued by the Fish and Wildlife Service did not directly restrict the conduct of the petitioners. *Id*. at 168. The court confirmed that the plaintiffs had standing, including by finding that their injury was fairly traceable to the challenged opinion despite that the opinion did not directly prohibit plaintiffs' conduct. *Id.* at 169–70. This was precisely because the injury they alleged was a product of the "coercive" and "determinative" effect that the opinion would have on the Bureau's management of water flows, even though there was no threatened or imminent threat of enforcement of the relevant portion of the Endangered Species Act; rather, the mere prospect of enforcement resulted in the Bureau reducing water flows. *Id*. While the Bureau, like Plaintiffs' doctors here, could, in some theoretical imagining, disregard the governing opinion and not reduce water flows, the Supreme Court recognized that it would not do so because of the prospect of being "subject to substantial civil and criminal penalties." *Id*. at 170.

The Ninth Circuit considered a nearly identical situation in *Salazar* and explained the difference between *Bennett* and *Summers*. *Summers*, it pointed out, "applies to circumstances where a regulation can no longer be applied because there is no longer a live dispute in which to apply the regulation." *Salazar*, 638 F.3d at 1172. But where "there is a 'concrete' harm (i.e., the reduction in water flow), and the Service has the 'concrete' power to apply" the challenged provision, plaintiffs have standing, even if a defendant hasn't yet exercised its power. *Id.* The courts in *Bennett* and *Salazar* also confirmed redressability for similar reasons: because disposition could remove the determinative and coercive effect that the defendant's actions could impose, with the practical effect of restoring water flows for the plaintiffs. *Salazar*, 638 F.3d at 1172 (citing *Bennett*, 520 U.S. at 171) ("If the no-take provision in ESA § 9 is invalidated, the Growers' injury will 'likely' be redressed because the Bureau could restore water flows without worrying about whether the flows would result in a taking.").

Here, Bennetts' responsibilities to enforce HB 71's criminal penalties for prescribing or administering gender affirming care are squarely traceable to the injury Plaintiffs plead: their imminent inability to access the necessary medical care they are already getting and will continue to need. Like in *Bennett* and *Salazar*, the Healthcare Ban does not directly criminalize the Plaintiffs' conduct, but instead cuts them off from care by imposing draconian penalties that have a coercive and determinative effect on their medical providers. The Ban and its penalties thus directly affect Plaintiffs' access to necessary healthcare. Plaintiffs' injuries are hardly speculative, are neither past nor procedural injuries, and are the direct result of HB 71 and the felony it codifies. The care Plaintiffs receive and must continue to receive is right in the bullseye of HB 71's scope, as well. Plaintiffs' injuries are injuries-in-

fact, directly traceable to Bennetts and her responsibility to enforce state law felonies in Ada County. And just as invalidating the challenged Endangered Species Act provisions would permit the Bureau to restore water flows and remedy the injuries alleged in *Bennett* and *Salazar*, enjoining the enforcement of HB 71 would remedy Plaintiffs' injuries by permitting their healthcare providers to continue to prescribe and administer their medical care without worrying about whether the provision of such care could result in a criminal penalty.

Plaintiffs, like others challenging similar laws elsewhere, have standing to challenge the law that will stop the healthcare that they have already begun and will continue, regardless that they will not be directly prosecuted under it. *See Koe* v. *Noggle*, ___ F. Supp. 3d ___, No. 1:23-CV-2904-SEG, 2023 WL 5339281, at ** 9–12 (N.D. Ga. Aug. 20, 2023).

### 4. Prudential Ripeness Considerations Further Support Plaintiffs' Standing

Bennetts' cursory prudential ripeness argument is simultaneously oblivious and callous. The considerations that courts examine to determine whether a case is prudentially ripe—fitness for judicial decision and hardship to the parties if court review is withheld—both demand resolution of the Healthcare Ban's constitutionality. *Stormans, Inc.* v. *Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). For the fitness prong, this Court considers "whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Id*. For the hardship prong, the Court evaluates whether the challenged law "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Id*.

Both of these tests describe exactly the reality Bennetts tries to ignore: HB 71, a final state law, will directly affect the Plaintiffs when in less than three months it will immediately

cut them off from the necessary medical treatment *they are currently receiving*. And, as is well-established, "a plaintiff 'does not have to await the consummation of threatened injury to obtain preventive relief.'" *Valle del Sol*, 732 F.3d at 1015 (quoting *Babbitt*, 442 U.S. at 298). Bennetts fails to identify any factual question that precludes consideration of Plaintiffs' challenges, particularly where she "has not stated that she will not enforce the Act." *NIFLA* v. *Harris*, 839 F.3d 823, 833 (9th Cir. 2016), *rev'd on other grounds, NIFLA* v. *Becerra*, 138 S. Ct. 2361, 2370 n.1 (2018); *see Hecox* v. *Little*, 479 F. Supp. 3d 930, 967–68 (D. Idaho 2020).

### B.   Plaintiffs State a Claim Against Bennetts Who Is Properly Named As an Official-Capacity Defendant

Plaintiffs live in Ada County and receive healthcare in Ada County, where Bennetts has the primary duty to prosecute all penal statutes, including the Healthcare Ban. Idaho Code § 31-2227(1); (Complaint [Dkt. 1] ¶¶ 5–7, 9). That is precisely what Plaintiffs allege in their complaint (Dkt. 1 at ¶ 9), and all they need to allege about Bennetts in particular. *See e.g. Planned Parenthood of the Great Northwest & the Hawaiian Islands* v. *Wasden*, 406 F. Supp. 3d 922 (D. Idaho 2019) (litigation proceeding against Bennetts, et al., regarding state statute); *Planned Parenthood of the Great Northwest & the Hawaiian Islands* v. *Wasden*, 350 F. Supp. 3d 925 (D. Idaho 2018) (same); *McCormack* v. *Hiedeman*, 900 F. Supp. 2d 1128, 1133 (D. Idaho 2013) (litigation proceeding against Bannock County Prosecuting Attorney regarding state statute). It is irrelevant that Ada County has not passed some sort of additional "policy statement, ordinance, regulation, or decision officially adopted and promulgated by ordinance" reiterating the Healthcare Ban, and the cases on which Bennetts relies upon do not support dismissal. (Motion Brief [Dkt. 51-1] at 14.) That Plaintiffs' injuries are not *exclusively* traceable to the Ada County Prosecutor does not mean that their injuries are not

traceable to her or that she is not a proper defendant. Bennetts' duty to enforce the Healthcare Ban, thus depriving Plaintiffs' of their constitutional rights, is a "moving force" behind the constitutional violation. *See Rivera* v. *Cnty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) (quoting *Edgerly* v. *City and Cnty. of San Francisco*, 599 F.3d 946, 960 (9th Cir.2010)). Further, as this Court has had to explain before, a county "cannot escape liability by arguing that it was simply complying with state law." *Denning* v. *Lincoln County Sheriff's Off.*, No. 1:18-CV-00473-BLW, 2020 WL 355209, at *12 (D. Idaho Jan. 21, 2020).

This Court has recently said that an official capacity defendant, like Bennetts here, can be substituted instead with the local government entity as a whole—here Ada County. *E.g.*, *Johnson* v. *Canyon County*, No. 1:19-CV-364-BLW, 2020 WL 534038, at *1 (D. Idaho Feb. 3, 2020). That holding, however, is grounded in a paragraph from a 1997 Central District of California case, *Luke* v. *Abbott*, that cites no authority to support the substitution rule it recommends. 954 F. Supp. 202, 204 (C.D. Cal. 1997). That rule does not seem to comport with the Ninth Circuit's permission to name governmental officers in their official capacities in cases like this one. *Planned Parenthood of Idaho* v. *Wasden*, 376 F.3d 908, 920 (9th Cir. 2004). In *Planned Parenthood*, a case about Idaho's judicial bypass procedures for minors seeking abortions, the Ninth Circuit held that both the Idaho Attorney General and the Ada County Prosecutor were proper defendants against a challenge that sought to enjoin a state statute. *Id.* The Ada County prosecutor even tried the same argument there that it recycles here—that he should be dismissed because he had no involvement with the state law. *Id.* at 919. The Circuit held that "both defendants [Attorney General and Ada County prosecutor] are properly named under *Ex parte Young* with regard to the exposure to the risk of

prosecution," as "[a]n injunction against the attorney general could redress plaintiffs' alleged injuries, just as an injunction against the Ada County prosecutor could." *Id.* at 920.

### C. Non-Party Taxpayers Have No Bearing on This Case

Finally, Bennetts' argument regarding taxpayer harm is irrelevant, unsupported, and improper. The Court should be mindful that Bennetts' liability as a proper defendant here serves important constitutional ends. It "create[s] an incentive," the Supreme Court has said, "for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights." *Evers*, 745 F.2d at 1204 (quoting *Owen* v. *City of Independence, Mo.*, 445 U.S. 622, 651–52 (1980)). Bennetts offers zero authority to support her odd argument that Ada County taxpayers should not "pay double" to defend this lawsuit over a statute that Bennetts is in charge of enforcing. More troubling, though, is that she refuses to solve this made-up problem by disavowing enforcement of HB 71. Or, at the very least, she could join her defense with the State's and expend no separate taxpayer money, as she has in other cases. *See Planned Parenthood Greater Nw.*, 2023 WL 4864962; *Planned Parenthood of the Great Nw. & the Hawaiian Islands*, 406 F. Supp. 3d at 922. Generalized harm to "taxpayers" does not defeat a valid claim of standing any more than it creates one. *Cf. Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 599 (2007) (plurality); *id.* at 619–20 (Scalia, J., concurring). Precedent instead instructs this Court to retain Bennetts as a defendant unless and until she affirmatively indicates she will not prosecute this discriminatory new law.

### IV. Conclusion

Plaintiffs have pleaded the necessary facts to demonstrate standing and a claim against Bennetts in her official capacity upon which relief can be granted. Bennetts' arguments to

the contrary are erroneous and inapposite. Accordingly, for the foregoing reasons, the Court should deny Bennetts' motion to dismiss.

**DATED** this September 15, 2023.

By: _____/s/ Casey Parsons_____
Casey Parsons
Attorneys for Plaintiffs

18