RAÚL R. LABRADOR
ATTORNEY GENERAL

LINCOLN DAVIS WILSON, ISB #11860
Chief, Civil Litigation and
Constitutional Defense
RAFAEL J. DROZ, ISB #9934
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID  83720-0010
Telephone: (208) 334-2400
Fax: (208) 854-8073
lincoln.wilson@ag.idaho.gov
rafael.droz@ag.idaho.gov

DAVID THOMPSON (PHV)
Special Deputy Attorney General
BRIAN BARNES (PHV)
Special Deputy Attorney General
JOHN RAMER (PHV)
Special Deputy Attorney General
Cooper & Kirk PLLC
1523 New Hampshire Ave NW
Washington, DC 20036
Tel: (202) 220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Attorneys for Defendants Raúl Labrador
and Individual Members of the Idaho
Code Commission*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAM POE, by and through her parents and next friends, et al.<br><br>*Plaintiffs,*<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et al.<br><br>*Defendants.* | Case No. 1:23-cv-00269-BLW<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS** |

### INTRODUCTION

The Attorney General and members of the Idaho Code Commission (here, "Defendants") submit this reply to address two critical flaws in Plaintiffs' opposition to the motion to dismiss—one as to jurisdiction, and the other on the merits.

First, as to jurisdiction, Plaintiffs devote most of their attention to the Attorney General, who asserts his immunity and Plaintiffs' lack of standing for the reasons argued in *Planned Parenthood v. Labrador* (and which he will not repeat here pending appeal, *see* No. 23-35518 (9th Cir.)).  But Plaintiffs' brief has precious little to say about their claims against the members of the Idaho Code Commission.  They do not identify any enforcement authority the Commission has or any caselaw allowing lawsuits against state officials responsible for publishing statutory law.  So the claims against the Commission fail for sovereign immunity and lack of standing.

Second, Plaintiffs incorrectly assert that Defendants did not move on the merits of their claims just because Defendants cited evidence outside the pleadings.  But the fact that Defendants made some arguments based on the factual record to oppose the preliminary injunction motion does not relieve Plaintiffs of having to respond to the arguments that go entirely to the legal validity of their claims (Point II.A and II.B in Defendants' brief).  And on those points, Plaintiffs offer no rejoinder.  In fact, since Defendants filed their motion, the legal defects in Plaintiffs' claims have grown only more clear, as shown by the Sixth Circuit's decision on the merits in *L.W. v. Skrmetti*, ___ F.4th ___, 2023 WL 6321688 (6th Cir. Sept. 28, 2023).

The Court should therefore dismiss this action as to the Attorney General and the Idaho Code Commission for lack of jurisdiction and failure to state a claim.

ARGUMENT

## I.   The Court lacks jurisdiction.

The members of the Idaho Code Commission have Eleventh Amendment immunity and Plaintiffs lack standing to sue them.  Plaintiffs cite no authority that would allow them to seek an injunction against state officers responsible solely for publishing the law as enacted by the legislature.  The Court should dismiss these claims for lack of jurisdiction.

To lawfully sue members of the Idaho Code Commission under the Eleventh Amendment, *Ex parte Young* requires Plaintiffs to show that the Commission's members "are clothed with some duty in regard to the enforcement of the laws of the state, and … threaten and are about to commence proceedings ... to enforce against parties affected [by] an unconstitutional act[.]"  *Ex parte Young,* 209 U.S. at 155–56. This requires a "special relation" between the official and enforcement of the law that is "fairly direct"—thus, "a generalized duty to enforce state law" is not enough.  *Los Angeles Cnty. Bar Ass'n v. Eu,* 979 F.2d 697, 704 (9th Cir. 1992).  And in the pre-enforcement context, standing turns on the same thing: whether "the prosecuting authorities have communicated a specific warning or threat to initiate proceedings" against the Plaintiffs.  *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1174 (9th Cir. 2022).

Plaintiffs do not meet these standards.  They do not allege the Commission has threatened anything, because they do not allege it has any authority to enforce the Vulnerable Child Protection Act, much less a "special relation" to it.  Instead, they assert only that the Commission "is tasked with keeping the Idaho Code up to date, indicating changes to laws, providing annotations to the Code, and providing

references in the Code to decisions of the federal courts." Dkt. 61 at 5.  In that regard, the Commission has the same relation to all sections of the Idaho Code—the relation of publisher, not enforcer.  So in essence, Plaintiffs wish to prohibit state officials from performing the ministerial function of even publishing the law the legislature enacted.  That is not a suit to enjoin an official's enforcement of an unconstitutional law; it is an unlawful attempt "to enjoin challenged laws themselves."  *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (quotation omitted). Article III courts "do not remove—'erase'—from legislative codes unconstitutional provisions." *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring) (citation omitted).

Plaintiffs' attempt to sue the Commission is foreclosed by the Supreme Court's decision in *Whole Woman's Health*, which rejected a similar attempt to sue state-court clerks performing the ministerial function of docketing claims filed under a state statute.  Those state-court clerks were not proper defendants because they did "not enforce state laws as executive officials might," and they would not "be litigants adverse to the petitioners" in any enforcement proceedings under the statute.  *Whole Woman's Health,* 595 U.S. at 39–40.  The same is true of the Commission: it does not enforce the law and would not be capable of instituting proceedings against Plaintiffs here.  So just as "no case or controversy" exists "between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute," *Pulliam v. Allen*, 466 U.S. 522, 538, n.18 (1984), no case or controversy exists with officials who merely publish that statute.  To hold otherwise would strangely task officials who have only the ministerial duty of publishing the law with the substantive

duty of defending its constitutionality.  *Whole Woman's Health*, 595 U.S. at 41.  It would also open the door to lawsuits against "those who perform other ministerial tasks potentially related" to the legislative process—e.g., members of the legislative services office.  *Id.*  This theory of suing state officials who have no enforcement authority lacks "any meaningful limiting principles."  *Id.* at 40.  The Court should reject it.

Plaintiffs do not cite any authority that has permitted such an exorbitant assertion of federal judicial power over the "machinery" of state government.  *See id.* at 39, 41.  And the authority they do cite is inapposite.  For example, they rely on Fourteenth Amendment vagueness cases.  Dkt. 61 at 8.  But they do not challenge the Vulnerable Child Protection Act on vagueness grounds, and they cite no authority extending vagueness principles to allow lawsuits against official code publishers. Likewise, they cite anecdotes about officials who have enforced laws that were declared unconstitutional, but that is an argument for injunctive suits against those officials—not an argument for injunctive suits against those who merely publish the law.  *See id.*  The Commission's lack of any enforcement authority with respect to the laws it publishes—much less the threat of such enforcement—entitles its members to Eleventh Amendment immunity and precludes Plaintiffs from showing standing to sue them.

## II.    Plaintiffs fail to state a claim for relief.

On the mistaken premise that Defendants did not challenge their claims on the merits, Plaintiffs say nothing further in support of those legal theories.  But Plaintiffs' claims fail as a matter of law for the reasons set forth in Point II.A and II.B

of Defendants' brief.  And the Sixth Circuit's intervening decision in *L.W.* only underscores the flaws in their claims as to several critical issues.

**Standards of constitutional interpretation.**  *L.W.* addresses the fundamental interpretive problem at the heart of Plaintiffs' claims—that they "do not argue that the original fixed meaning of the due process or equal protection guarantees covers these claims."  2023 WL 6321688, at *5.  That "prompts the question whether the people of this country ever agreed to remove debates of this sort" from "the democratic process."  *Id.*  "Life-tenured federal judges should be wary of removing a vexing and novel topic of medical debate from the ebbs and flows of democracy," *id.*, "particularly when 'the States are currently engaged in serious, thoughtful' debates about the issue."  *Id.* at *6 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)).  As the Sixth Circuit observed, "nineteen States have laws" that similarly bar irreversible treatments for gender dysphoria in minors—including Idaho's Vulnerable Child Protection Act.  *Id.* (citing inter alia Idaho Code § 18-1506C).  "Prohibiting citizens and legislatures from offering their perspectives on high-stakes medical policies, in which compassion for the child points in both directions, is not something life-tenured federal judges should do without a clear warrant in the Constitution."  *Id.*  No such warrant exists.

**Substantive due process.**  There is no due process right to specific medical treatments for children because "[t]his country does not have a 'deeply rooted' tradition of preventing governments from regulating the medical profession in general or certain treatments in particular, whether for adults or their children."  *Id.* at *7.  To the contrary, "[s]tate and federal governments have long played a critical

role in regulating health and welfare," and they are entitled to a presumption of validity, especially "in areas of 'medical and scientific uncertainty.'" *Id.* (quoting *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007)). This rule guards against the risk that federal courts will "assume authority over an area of policy that is not theirs to regulate" or "impose a constitutional straightjacket on legislative choices before anyone knows how that 'medical and scientific uncertainty' will play out." *Id.* Thus, the FDA may "permit drugs to be used for some purposes but not others, or to allow some drugs to be used by adults but not by children," and "[n]either doctors, adults, nor their children have a constitutional right to use a drug that the FDA deems unsafe or ineffective." *Id.* at *8 (citing *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 703, 706 (D.C. Cir. 2007) (en banc)). And "[s]o long as a federal statute does not stand in the way and so long as an enumerated constitutional guarantee does not apply, the States may regulate or ban medical technologies they deem unsafe." *Id.* (collecting cases). That is exactly what Idaho has chosen to do here.

**Parental rights.** It is well established that states may "limit[] parental freedom," with respect to medical treatment. *Id.* (quoting *Prince v. Massachusetts*, 321 U.S. 158, 167 (1944)). "'The state's authority over children's activities is broader than over like actions of adults[,]'" and "[a] parent's right to make decisions for a child does not sweep more broadly than an adult's right to make decisions for herself." *Id.* at *9 (quoting *Prince*, 321 U.S. at 168). Thus, if "[t]he government has the power to reasonably limit the use of drugs" for adults, then that is "assuredly true for their children." *Id.* at *9. Likewise, the fact that *Parham* "allowed" states to defer to

parents' health decisions for their children did not establish "a constitutional requirement" to "recognize such decisionmaking." *Id.* at *10.  And while a rational basis allows states to "ban even longstanding and nonexperimental treatments for children[,]" that is even more true for the experimental therapies here, where "some of the same European countries that pioneered these treatments now express caution about them and have pulled back on their use." *Id.* at *10.

Plaintiffs and their amici medical associations say that these treatments are medically necessary and that the Constitution protects their rights to them.  But to draw constitutional boundaries as urged by medical associations "would mean that the state and federal legislatures would lose authority to regulate the healthcare industry whenever the subject of regulation—the medical profession and drug companies—found such regulation unnecessary[.]" *Id.* at *12.  "[E]xpert consensus, whether in the medical profession or elsewhere, is not the North Star of substantive due process, lest judges become spectators rather than referees in construing our Constitution." *Id.*

**Equal protection.**  The Sixth Circuit also explained—as is equally true here—that claims challenging regulations of gender dysphoria treatment did not trigger equal protection class analysis either as to sex or as to gender identity issues. As to purported sex-based classifications, it is well-established that "laws regulating medical procedure[s] that only one sex can undergo ordinarily do not trigger heightened constitutional scrutiny." *Id.* at *14 (quotations omitted).  The same is true of the regulated treatments here as a matter of "biological necessity": "only females can use testosterone as a transition treatment," and "only males can use

estrogen as a transition treatment." *Id.*  And so "[i]f a law restricting a medical procedure that applies only to women does not trigger heightened scrutiny," then "these laws, which restrict medical procedures unique to each sex, do not require such scrutiny either." *Id.*  Nor could Plaintiffs argue that there was discrimination because cross-sex hormones might be used to treat other conditions.  "Using testosterone or estrogen to treat gender dysphoria (to transition from one sex to another) is a different procedure from using testosterone or estrogen to treat, say, Kleinfelter Syndrome or Turner Syndrome (to address a genetic or congenital condition that occurs exclusively in one sex)." *Id.*  "These distinct uses of testosterone and estrogen stem from different diagnoses and seek different results" and entail different "cost-benefit analysis." *Id.*

Thus, the fact that these treatments are necessarily *defined* by sex does not mean that regulating them *discriminates* based on sex.  And "[w]hat is true for the word 'sex'" under Plaintiffs' theory of discrimination "also would be true for the word 'gender.'" *Id.* at *15.  "One simply cannot define, or create, a protected class *solely* by the nature of a denied medical benefit: in this instance childhood treatment for gender dysphoria." *Id.*  And without triggering any equal protection analysis, the laws easily survived rational basis review: "A state may reasonably conclude that a treatment is safe when used for one purpose but risky when used for another, especially when, as here, the treatment is being put to a relatively new use." *Id.* at *13.  So too here.

## Conclusion

The Court should dismiss Plaintiffs' claims for lack of jurisdiction and for failure to state a claim for relief.

DATED: October 5, 2023.

STATE OF IDAHO
Office of the Attorney General

By: /s/ *Lincoln D. Wilson*
        Lincoln Davis Wilson
        Chief, Civil Litigation and
        Constitutional Defense

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Alexia D. Korberg
akorber@paulweiss.com
mao_fednational@paulweiss.com

Heather M. McGarthy
hmccarthy@adacounty.id.gov
telemons@adacounty.id.gov

Ariella C. Barel
ariella.barel@groombridgewu.com

Jackson Cory Yates
jyates@paulweiss.com

Brad S. Karp
bkarp@paulweiss.com

Jordan E. Orosz
jorosz@paulweiss.com

Casey Parsons
casey@wrest.coop

Kyle N. Bersani
kyle.bersani@groombridgewu.com

Colleen Rosannah Smith
csmith@stris.com
6969944420@filings.docketbird.com

Richard Alan Eppink
ritchie@wrest.coop

Cortlin H. Lannin
clannin@cov.com
docketing@cov.com

Li Nowlin-Sohl
lnowlin-sohl@aclu.org

D Jean Veta
jveta@cov.com

Meredith Taylor Brown
tbrown@aclu.org

Dana Kennedy
dkennedy@paulweiss.com

Philip S. May
philip.may@groombridgewu.com

Leslie Jill Cooper
lcooper@aclu.org
ccaicedo@aclu.org
sgarcia@aclu.org

Dayton Patrick Reed
dreed@adacounty.id.gov
civilpafiles@adacounty.id.gov
citedemann@adacounty.id.gov

Dina M. Flores-Brewer
dfloresbrewer@alcu.org

William Isasi
wisasi@cov.com

Paul Martin
paul.martin@mto.com

Robyn K. Bacon
robyn.bacon@mto.com

*Counsel for Plaintiffs*

*Counsel for Plaintiffs*

  /s/ *Lincoln Davis Wilson*
LINCOLN DAVIS WILSON