RAÚL R. LABRADOR
ATTORNEY GENERAL

JOSHUA N. TURNER, ISB #12193
Acting Solicitor General

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense
RAFAEL J. DROZ, ISB #9934
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
josh.turner@ag.idaho.gov
rafael.droz@ag.idaho.gov

*Attorneys for Defendants Raúl Labrador
and Individual Members of the Idaho
Code Commission*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAM POE, by and through her parents and next friends, Penny and Peter Poe, et al.<br><br>*Plaintiffs,*<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et al.<br><br>*Defendants.* | Case No. 1:23-cv-00269-BLW<br><br>**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR STAY OF INJUNCTION PENDING APPEAL** |

**Introduction**

On December 26, 2023, this Court dismissed the individual members of the Idaho Code Commission from this lawsuit. Dkt. 78. The Court denied the Attorney General's Motion to Dismiss, denied Ada County Prosecuting Attorney Jan Bennetts's Motion to Dismiss, and granted the Plaintiffs' Motion for Preliminary Injunction prohibiting the Attorney General and Prosecutor Bennetts from enforcing the provisions of House Bill 71. *See generally id.* Among other reasons, the Attorney General opposed the Motion for Preliminary Injunction, and asked the Court to grant his Motion to Dismiss, because the Eleventh Amendment to the U.S. Constitution grants the Attorney General immunity from suit. Dkt. 56 at 11.

On January 3, 2024, the Attorney General filed a notice of appeal, appealing the Court's decision granting the preliminary injunction and appealing the Court's decision finding that the Attorney General is not immune from suit under the Eleventh Amendment. The appeal of the Court's decision regarding the Eleventh Amendment immunity issue divests this Court of authority to conduct further proceedings. *See Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992); *Christian v. Commonwealth of the N. Mariana Islands*, No. 1:14-CV-00010, 2016 WL 406340, at *2 (D.N. Mar. Is. 2016) (holding that when a state "files its interlocutory appeal" of a decision denying Eleventh Amendment Immunity, "that action 'divests the district court of jurisdiction to proceed with trial.'" (quoting *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992)).

The Attorney General now requests that the Court stay its decision granting the Motion for Preliminary Injunction pending his appeal of the Court's decisions. Even though the appeal of the Eleventh Amendment immunity issue divests the Court of authority to conduct further proceedings, the Court retains the authority to rule on the Attorney General's Motion to Stay the Injunction Pending Appeal.  F.R.C.P. 62(d).

### ARGUMENT

In determining whether to grant a stay to an order granting a preliminary injunction, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  When the government is a party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken*, 556 U.S. at 435).

I. **The Attorney General is Likely to Succeed on the Merits of the Appeal.**

   A. **The Court erred by determining that the *Ex Parte Young* exception to Eleventh Amendment Immunity applies.**

The Attorney General is likely to succeed on the merits of his Eleventh Amendment Immunity argument.  The U.S. Supreme Court has made it clear that, under the Eleventh Amendment, the Attorney General is immune from suit before the federal

courts, which are, of course, courts of limited jurisdiction, unless specific circumstances are present:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

*Ex Parte Young*, 209 U.S. 123, 157 (1908).

Thus, the U.S. Supreme Court warned against exactly what the Plaintiffs are doing in this case—suing the Attorney General "as a representative of the state [of Idaho], and thereby attempting to make the state a party." *Id.* To sue the State of Idaho, the Plaintiffs must sue the State of Idaho in the courts of the State of Idaho, not the federal court. *Cf. Planned Parenthood Great NW v. Idaho*, 171 Idaho 374, 400, 522 P.3d 1132, 1158 (Idaho 2023) ("It is neither procedurally improper nor unusual to name the State of Idaho as a party in a case seeking declaratory relief when a constitutional violation is alleged.").

To successfully defeat the Attorney General's claim of immunity, the Plaintiffs must show that the Attorney General's connection to the enforcement of the statute is "fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citations omitted). In the instant case, the Attorney General's authority to enforce the law is not direct. Rather, the Attorney's General's authority to enforce the law is quite indirect,

being contingent upon decisions made by independently elected government officials and situations over which he has no control, which are not currently present, which have not been pled by Plaintiffs, and which may never come into existence.

The Attorney General only has the authority to enforce Idaho Code § 18-1506C if a county prosecutor or Board of County Commissioners requests the assistance of the Attorney General *and* the Attorney General is appointed by the district court to assist with the prosecution.  *See* Idaho Code §§ 31-2603; 67-1401(7); *see also* Att'y Gen. Op. 23-1.  While the Plaintiffs have pled that House Bill 71 grants the Attorney General authority to enforce the act, Dkt. 1 at ¶ 8, the statute, which the Plaintiffs included as part of their Complaint, does no such thing.  Rather, the statute is silent on enforcement authority, leaving enforcement of the act to the general criminal enforcement authority contained in the Idaho Code.  Thus, unless a prosecuting attorney requests the assistance of the attorney general and unless an Idaho District Court signs an order granting the Attorney General prosecutorial authority, the Attorney General has *no* authority to prosecute violations of Idaho Code § 18-1506C.

Where the Attorney General's prosecutorial authority depends upon facts and decisions made by independent government officials over whom he has no supervisory authority, his authority to enforce the law is indirect and not sufficient to defeat Eleventh Amendment immunity.

For the Plaintiffs to succeed in defeating the Attorney General's claim of immunity, in addition to the direct connection from the Attorney General to the

enforcement of the statute, there must also be a "real likelihood" that the Attorney General will employ his authority "against plaintiffs' interests," otherwise "the Eleventh Amendment bars federal court jurisdiction." *See Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) ("Absent a real likelihood that the state official will employ his supervisory powers against plaintiffs' interests, the Eleventh Amendment bars federal court jurisdiction"). Given the lack of independent authority to prosecute violations of the act, there is no "real likelihood" that the Attorney General will employ his authority against the Plaintiffs' interests, and therefore "the Eleventh Amendment bars federal court jurisdiction." *Id.*

The Court, however, relied on *Planned Parenthood v. Wasden*, 376 F.3d 908 (9th Cir. 2004), in rejecting the Attorney General's claim of immunity. *See* Dkt. 76 at 28. In *Wasden*, the Ninth Circuit held that the direct connection required to meet the *Ex parte Young* exception existed because "the attorney general may in effect deputize himself … to stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have. That power demonstrates the requisite causal connection for standing purposes." *Wasden*, 376 F.3d at 920. However, as made clear by the above discussion, the Attorney General has *no* authority to deputize himself to prosecute violations of Idaho Code § 18-1506C.

The Court also relied on *State v. Summer*, 76 P.3d 963 (Idaho 2003), as authority to show that the Attorney General could deputize himself. However, in *Summer*, the Attorney General had express statutory authority to criminally prosecute the insurance

fraud statutes *and* the prosecuting attorney petitioned the district court for an order appointing the Attorney General as a special deputy prosecutor, which the district court granted. *Id.* at 967-68. Neither of those facts are present in the instant case.

Further, in a case challenging a plaintiff's standing[1] to sue the Attorney General in a challenge to Idaho's criminal abortion laws, the Ada County District Court held that the Attorney General was not a proper defendant because "Attorney General Labrador ha[s] merely secondary enforcement authority, exercisable if county prosecutors fail or refuse to enforce criminal laws or need assistance in doing so." *Adkins v. Idaho*, CV01-23-14744, Mem. Decision and Order on Mot. to Dismiss at 11 (Idaho Fourth Judicial Dist. Dec. 29, 2023). The court further stated that "Plaintiffs don't allege that county prosecutors are expected to either fail or refuse to enforce, or need assistance in enforcing, Idaho's Abortion Laws. Plaintiffs don't make a case that … Attorney General Labrador is likely to get involved in prosecuting violations of those laws." *Id.* Similarly, the Plaintiffs in the instant case fail to allege that any prosecuting attorney is refusing to enforce the law or has requested assistance from the Attorney General in enforcing the law.

---

[1] The Ninth Circuit has held that "The question of whether there is the requisite 'connection' between the sued official and the challenged law" for Eleventh Amendment immunity issues "implicates an analysis that is 'closely related—indeed overlapping'— with the traceability and redressability inquiry" of the standing analysis. *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022).

As discussed above, in order to prosecute violations, the Attorney General must in essence be deputized by the county prosecutor pursuant to an order by an Idaho court. Since there are no allegations that a county prosecutor intends to request the assistance of the Attorney General or that an Idaho court will approve such a request, the Attorney General does not have a direct connection to the enforcement of the law, and the *Ex Parte Young* exception does not apply. As such, the Eleventh Amendment provides immunity to the Attorney General, and he is likely to succeed on the merits of his appeal. For the same reasons, the Plaintiffs have failed to show that they have standing to sue the Attorney General. *See Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) ("The question of whether there is the requisite 'connection' between the sued official and the challenged law" for Eleventh Amendment immunity issues "implicates an analysis that is 'closely related—indeed overlapping'—with the traceability and redressability inquiry" of the standing analysis).

### B. The Court erred in finding that the Plaintiffs are likely to succeed on the merits.

The Court also erred in finding that the Plaintiffs are likely to succeed on the merits of their Equal Protection and Due Process claims. By granting the preliminary injunction, the Court ignored the U.S. Supreme Court's reluctance to constitutionalize areas in which "the States are currently engaged in serious, thoughtful examinations." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). The Court in fact recognized "the conflicting evidence regarding the risks and benefits associated with gender-affirming

medical care." Dkt. 78 at 39. But, instead of taking the step required by caselaw—allowing the legislature to draw the policy line given the "conflicting evidence regarding the risks and benefits"—the Court took it upon itself to declare state policy in this area and erroneously "place[d] the matter outside the arena of public debate and legislative action." *Glucksberg*, 521 U.S. at 720; *see also L.W. v. Skrmetti*, 73 F.4th 408, 420 (6th Cir. 2023) (stating that "[e]ven when accompanied by judicial tiers of scrutiny, the U.S. Constitution does not offer a principled way to judge each of these lines" and holding that placing the matter beyond public debate by having the judiciary draw the lines "is not how a constitutional democracy is supposed to work … when confronting evolving social norms and innovative medical options").

Further, in deciding where to draw the line, the Court credited the opinions of expert witnesses with a direct financial stake in ensuring the continued availability of "gender affirming care," as opposed to those expert witnesses with no direct financial stake in the outcome of the litigation. The Court made it clear that it "gave particular weight to plaintiffs' experts on this issue, as Dr. Brady and Dr. Connelly currently treat adolescents with gender dysphoria, while the defense experts do not." Dkt. 78 at 38 n.5. Since they treat minor patients with gender dysphoria, these experts have a direct financial stake in ensuring the continued availability of "gender affirming care" and in obtaining court rulings supporting their practice, even though they may not practice in Idaho. After all, if this type of treatment is outlawed, these experts would no longer be able to conduct those procedures, and no longer be able to obtain the significant

financial benefits associated with providing such treatment. "Numerous courts have found" that "a direct financial interest in the outcome of the litigation" is at least "unethical" and may be a proper basis of excluding an expert. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F.Supp.3d 14, 47 (D.D.C. 2017) (collecting cases concerning contingency fee experts). Plaintiffs' experts have just such an incentive.

"While experts are almost universally compensated for their opinion, public policy has long made a distinction between paid experts who have an *indirect incentive* to win the approval of their employers (the client and attorneys) on the one hand, and experts who have a *direct financial stake* in the outcome of the litigation on the other." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHX), 2014 WL 10894452, at *4 (C.D. Cal. Oct. 31, 2014) (emphasis in original). While "[p]ublic policy tolerates the former category of expert testimony as a necessary evil," "courts of this country draw a line where the expert's incentive structure crosses the threshold from an *indirect incentive* to reach a certain conclusion to a *direct financial interest* in doing so." *Id.* (emphasis in original); *see also In re Plant Insulation Co.*, 544 Fed.Appx. 669, 671 (9th Cir. 2013) (mem. decision) (noting that financial conflicts belong in category of "evidence of bias go[ing] toward the credibility of a witness," not admissibility) (quoting *United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001). In the instant case, the plaintiffs' expert witnesses, given their practices in providing "gender affirming care," have a direct financial interest in opining that "gender affirming care" is necessary, safe, and effective.

Where an expert has that type of direct financial incentive, "any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded." *Wheatridge Office, LLC v. Auto-Owners Ins. Co.*, 578 F.Supp.3d 1187 at 1210 (D. Colo. 2022) (quoting *id.*). The "financial interest in the outcome of the case that creates the conflict of interest—it is no better or different than a case in which an attorney offered him a contingent fee for his testimony because the financial incentive is the same." *Id.* at 1211 (citing *Perfect 10* at *4). "The trier of fact should be able to discount for so obvious a conflict of interest," but the Court did not do so here. *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988) (case of plaintiff as expert). Thus, the Court erred in relying on the plaintiffs' experts who have a direct financial interest in being able to continue to perform the treatments that Idaho has outlawed.

## II. The Attorney General will be irreparably injured absent a stay of the injunction.

The second factor for the Court to consider in determining whether to grant a stay of the injunction pending appeal is whether the Attorney General will be irreparably injured without a stay of the Court's decision. "The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (quoting *In re Ayers*, 123 U.S. 443, 505 (1887)).

As for the Attorney General, this is exactly what has happened. The Court has abrogated the Attorney General's Eleventh Amendment Immunity in a situation in which the Attorney General himself has said he has no authority to prosecute the statute in question, subjecting the State of Idaho, through the Attorney General, "to the coercive process of judicial tribunals at the instance of private parties." *Id.* Thus, the mere existence of the preliminary injunction against the Attorney General is an irreparable injury that can only be repaired by the Court granting the stay of its injunction pending the appeal.

The Court found in its order that *State v. Summer*, 76 P.3d 963 (Idaho 2003), supports its conclusion that because the Attorney General can *in assisting a county prosecutor* "do every act" that the county prosecutor can, the Attorney General can file an initial charge. Dkt 78 at 28. But, as mentioned above, in *Summer* the Attorney General had direct legislative authority to prosecute the crimes and the state district court, at the request of the prosecuting attorney, subsequently appointed the deputy attorney general as a special prosecuting attorney, curing any potential defect in the presentation of the indictment. *Summer*, 76 P.3d at 967-68. This case does not support the principle that, in the absence of a county prosecutor's involvement, the Attorney General can bring an action.

Further, any "'time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (alterations in original) (quoting *New Motor Vehicle*

*Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). The Court's order prevents an agent of the State of Idaho from enforcing the democratically enacted laws enacted by the legislature and works a second irreparable injury upon the State. Both injuries warrant a stay.

### III. The issuance of the stay will not injure the Plaintiffs, and the public interest lies in granting the stay.

The last two factors for the Court to consider are whether issuance of the stay will substantially injure the other parties interested in the proceeding and where the public interest lies. *Nken*, 556 U.S. at 434 (citation omitted). As stated above, when the government is a party, the last two factors merge. *Drakes Bay,* 747 F.3d at 1092 (citation omitted). In the instant case, the Plaintiffs will not be injured by granting the stay of the injunction pending appeal. Plaintiffs do not have Equal Protection and Due Process rights to medical procedures, including ones of contested efficacy, that are traditionally the province of state regulation, and therefore will suffer no constitutionally cognizable injury. *NAAP v. Calif. Bd. of Psychology*, 228 F.3d 1043, 1050 (9th Cir. 2000); *accord Judge Rotenberg Educ. Ctr., Inc. v. FDA.*, 3 F.4th 390, 400 (D.C. Cir. 2021) (states traditionally regulate practice of medicine including "[c]hoosing what treatments are or are not appropriate for a particular condition"). In this area of traditional state regulation, the only body with line-drawing power to determine whether a treatment is "safe, effective, and medically necessary" for a given condition is the legislature. Plaintiffs will not be harmed because they have no right to a specific treatment.

By contrast, the public interest lies with the State's prerogative in "ensuring the quality of health care within the state." *Mir v. Kirchmeyer*, 2017 WL 4271892 (S.D. Cal. 2017) (citing *Olsen v. Idaho St. Bd. of Medicine*, 363 F.3d 916, 924 (9th Cir. 2004)). Staying the injunction allows the State legislature to exercise its judgment as to what medical treatment is safe and appropriate for minors suffering from gender dysphoria, a core state police power. *See e.g. Pickup v. Brown*, 740 F.3d 1208, 1236 (9th Cir. 2014) (parental right to raise children did not include substantive due process right to choose medical treatments "reasonably . . . deemed harmful by the state.") (abrogated on other grounds by *NIFLA v. Becerra*, 585 U.S. ___, 138 S.Ct. 2361, 2372 (2018)); *see also Tingley v. Ferguson*, 47 F.4th 1055, 1080 (9th Cir. 2022) (collecting cases as to medical licensure). It was the legislature's role to weigh conflicting evidence, see Dkt. 78 at 39, and draw conclusions as to what treatment is appropriate or not appropriate for gender dysphoria, and staying the judgment furthers the public interest in ensuring the safe practice of medicine in Idaho.

## CONCLUSION

The Court should stay its injunction pending conclusion of the appeal in this case.

DATED: January 3, 2024.

          STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By: /s/ *James E. M. Craig*
JAMES E. M. CRAIG
Chief, Civil Litigation and Constitutional Defense
JOSHUA N. TURNER
Acting Solicitor General
RAFAEL DROZ
Deputy Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 3, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which caused the same to be served by electronic service upon all counsel of record.

/s/ *James E. M. Craig*
JAMES E. M. CRAIG
Chief, Civil Litigation and Constitutional Defense