Li Nowlin-Sohl*
(admitted only in Washington)
Leslie Cooper*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
Lnowlin-sohl@aclu.org
lcooper@aclu.org
tbrown@aclu.org


Richard Eppink (ISB no. 7503)
Casey Parsons (ISB no. 11323)
David A. DeRoin (ISB no. 10404)
WREST COLLECTIVE
812 W. Franklin St.
Boise, ID 83702
Tel: (208) 742-6789
ritchie@wrest.coop
casey@wrest.coop
david@wrest.coop

Brad S. Karp*
Alexia D. Korberg*
Jackson Yates*
Dana L. Kennedy*
PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
bkarp@paulweiss.com
akorberg@paulweiss.com
jyates@paulweiss.com
dkennedy@paulweiss.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

*Additional counsel for Plaintiffs identified on the following page*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **PAM POE**, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>**RAÚL LABRADOR**, et. al.,<br><br>*Defendants*. | Case No. 1:23-cv-00269-BLW<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT LABRADOR'S EMERGENCY MOTION FOR STAY OF INJUNCTION PENDING APPEAL [DKT. NO. 80]** |

Eric Alan Stone*
Ariella C. Barel*
Kyle Bersani*
GROOMBRIDGE, WU, BAUGHMAN AND
STONE LLP
565 5th Avenue, Suite 2900
New York, NY 10017
Tel: (332) 269-0030
eric.stone@groombridgewu.com
ariella.barel@groombridgewu.com
kyle.bersani@groombridgewu.com

Philip S. May*
GROOMBRIDGE, WU, BAUGHMAN AND
STONE LLP
801 17th St. NW, Suite 1050
Washington, DC 20006
Tel: (202) 505-5830
philip.may@groombridgewu.com

*Admitted *pro hac vice*

Jordan Orosz*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Tel: (202) 223-7300
jorosz@paulweiss.com

Dina Flores-Brewer (ISB no. 6141)
ACLU OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
dfloresbrewer@acluidaho.org

*Attorneys for Plaintiffs*

**INTRODUCTION**

In a thorough opinion grounded in controlling precedent and reflective of the record evidence, this Court denied Defendants' motions to dismiss, determined that H.B. 71 ("the Ban") likely violates the Constitution, and entered a preliminary injunction to prevent Plaintiffs from experiencing irreparable harm while this litigation is pending. The Idaho Attorney General now asks this Court to stay the preliminary injunction pending appeal, which would strip the minor Plaintiffs and other Idaho teenagers of medical care that they, their parents, and their doctors all agree they need. But the Attorney General has not come remotely close to establishing any of the four factors that would be required for this Court to stay its decision. He asserts a sovereign immunity defense that is squarely foreclosed by Ninth Circuit precedent. He suggests that federal courts cannot declare State statutes unconstitutional, which is foreclosed by decades of Supreme Court precedent. And he insinuates that Plaintiffs' experts have a direct financial interest in the outcome of this case solely because they are doctors that treat transgender youth outside of Idaho. None of that is a basis for the extraordinary relief of a stay pending appeal, and this Court should deny the Attorney General's motion.

**STANDARD OF REVIEW**

In exercising its discretion on whether to grant a stay, the Court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434, (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). But "if the petition has not made a certain threshold showing regarding irreparable harm then a stay may not issue, regardless of the petitioner's proof

regarding the other stay factors." *Doe v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (cleaned up) (internal citation omitted).

The moving party bears the burden of showing that the circumstances justify a stay. *Nken*, 556 U.S. at 433-34. "A stay is not a matter of right" but is instead "an intrusion into the ordinary processes of administration and judicial review" and is "not to be issued 'reflexively,' but rather based on the circumstances of the particular case." *Sierra Club v. Trump*, 929 F.3d 670, 687-88 (9th Cir. 2019) (cleaned up) (quoting *Nken*, 556 U.S. at 427, 433).

<u>**ARGUMENT**</u>

I.   **The Attorney General Is Unlikely to Succeed on the Merits of his Appeal of the Preliminary Injunction**

    1.   **The Court Correctly Held that The Attorney General Is Not Immune from Suit under *Ex Parte Young*.**

As this Court appropriately noted, the Attorney General's argument that he lacks the authority to enforce Idaho criminal law absent a request from a local prosecutor and an order from an Idaho District Court granting prosecutorial authority is inconsistent with the Idaho Code and Idaho case law, and is foreclosed by Ninth Circuit precedent. Dkt. 78 at 26 (citing *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)). The Ninth Circuit has already determined that the Attorney General has a role beyond a general duty to enforce state law or supervisory power over persons enforcing the law; the Attorney General is empowered to "do every act that the county attorney can perform" when assisting county prosecutors. *Wasden*, 376 F.3d at 920 (quoting *Newman v. Lance*, 922 P.2d 395, 399 (Idaho 1996)).

As this Court noted — and the Attorney General does not allege otherwise — nothing has changed since the Ninth Circuit's decision in *Wasden*. Dkt. 78 at 27; *see also Planned Parenthood Greater Northwest v. Labrador*, No. 1:23-CV-00142-BLW, 2023 WL 4864962, at *8 (D. Idaho July 31, 2023) (noting that the relevant language in Idaho Code § 67-1401 is

2

unchanged and changes to other parts of the statute "have no effect on the reasoning in *Wasden*, nor do they call into question its holding."). The Attorney General tries to distinguish *Wasden* by arguing that Idaho Code § 18-1506C (H.B. 71 codified) does not give him authority to prosecute violations of §18-1506C, but such an argument fails to address Idaho Code § 67-1401, which empowers Idaho's attorney general to "assist" county prosecutors and empowers the attorney general to, in effect, "deputize himself … to stand in the role of the county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have." *Wasden* at 920. It is § 67-1401(7) that gives the attorney general authority to enforce § 18-1506C, as it was in *Wasden*, and that authority is sufficient to satisfy the *Ex parte Young* exception.[1] *See also Pocatello Educ. Ass'n v. Heideman*, 123 F. App'x 765, 766 (9th Cir. 2005) (statute making violation a misdemeanor sufficient to render Idaho attorney general subject to *Ex parte Young* exception).

The Attorney General also seeks to distinguish this case from *State v. Summer*, 76 P.3d 963 (Idaho 2003), but the *Wasden* court already considered *Summer* in reaching its conclusion and *Summer* does not change the binding impact of *Wasden* on the case at hand. *See Wasden* at 919 n. 7. The Attorney General is not likely to succeed on the merits of his Eleventh Amendment appeal.

### 2.   The Court Correctly Held that Plaintiffs Are Likely to Succeed on the Merits of Their Claims

The Attorney General makes only two arguments to support his claim that the Court erred in holding that Plaintiffs are likely to succeed on the merits of their constitutional claims. The

---

[1] The Attorney General's reliance on an Idaho trial court opinion is unavailing. *See* Dkt. 80-1 at 7 (citing *Adkins v. Idaho*, CV01-23-14744, Mem. Decision and Order on Mot. to Dismiss 11 (Idaho Fourth Judicial Dist. Dec. 29, 2023)). There, the Attorney General was a redundant defendant because the State of Idaho, "under whose umbrella [his] role[] exist[s]," was also a defendant. *Adkins* at 12 (appended to this brief). No such redundancy exists here.

first appears to argue that the courts should forsake any review of the constitutionality of state statutes Dkt. 80-1 at 8–9, but as this Court acknowledged, this is precisely how a constitutional democracy is supposed to work; the Fourteenth Amendment was meant to "prevent state legislatures from passing laws that denied equal protection of the laws or invaded the fundamental rights of the people." Dkt. 78 at 3. The Attorney General does not engage with the substance of the Court's opinion nor point to specific errors that the Court made, and fails to show that the Court erred in addressing Plaintiffs' constitutional claims.

The second argument – that Plaintiffs' expert witnesses' opinions should not be credited due to alleged financial interests – has no basis in law or fact.[2] The cases cited by the Attorney General all involve experts with a *direct* financial stake in the litigation, for example: working on a contingency fee so that payment for their expert testimony depended on the outcome of the case; an ownership stake in a company considering buying claims in the case at issue (*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 47 (D.D.C. 2017)); and being the sole shareholder of the plaintiff company (*Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHX), 2014 WL 10894452 at *4 (C.D. Cal. Oct. 31, 2014)).  Dkt. 80-1 at 10.

_____

[2] This is an argument the Attorney General makes for the first time despite having ample opportunity to do so during briefing on the preliminary injunction motion. A stay pending appeal requires a likelihood of success on appeal, and the Attorney General cannot win on appeal by presenting an argument he did not present in the trial court and has therefore waived.  *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009). Therefore, this argument is not a basis to support a motion for a stay pending appeal, *see Well Cell Global LLC v. Calvit*, No. 22-cv-3062, 2023 WL 175193, at *11 (S.D. Tex. Jan. 12, 2023) ("A motion to stay is not an opportunity for [a party] to raise arguments that could and should have been made at the preliminary injunction hearing and in the briefs filed for that hearing."), or to ask this court to effectively reconsider its decision on the merits, *see e.g., Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation") (citation omitted); *Nken v. Holder*, 556 U.S. 418, 434 (2009) (the standard for evaluating a motion to stay pending appeal  has "substantial overlap" with the standard for a motion for preliminary injunction).

The "direct" financial stake the Attorney General alleges Plaintiffs' experts have is that because Plaintiff's experts provide *anyone* the medical care at issue in this case, they therefore have a financial stake in the outcome of the case and a conflict of interest. Dkt. 80-1 at 9. This reasoning would prevent medical providers with actual experience in relevant medical treatments from testifying in any number of court cases; in other words, an expert with relevant experience from working in the field would be disqualified due precisely to their relevant experience working in the field. Such reasoning is nonsensical and too attenuated to be considered a financial stake in the litigation, much less a direct financial stake.

In addition to having no basis in law, the Attorney General's argument has no basis in fact. None of Plaintiffs' experts provide care in Idaho and will not lose any business if care is banned in Idaho. Indeed, the opposite is likely true—Dr. Connelly reported patients from Idaho seeking care at her clinic in Oregon as a result of the ban. Connelly Decl. ¶ 66 (Dkt. 32-7). The Attorney General makes no argument for how the provision of gender affirming medical care in Oregon and California would in any way be harmed by this Court's decision in Idaho. And as a psychologist, Dr. Brady does not provide any of the treatments banned by HB 71. Even under the Attorney General's far-fetched theory, she would have no financial stake in whether the treatments are banned or not.

The Attorney General does not allege a plausible conflict of interest and fails to cast doubt on Plaintiffs' experts' credibility. The Court correctly found Plaintiffs' experts credible and gave the appropriate weight to their testimony.

5

II.     **The Attorney General Fails to Satisfy the Remaining Stay Factors**

The Attorney General has failed to show that any of the other factors for granting a stay weigh in his favor. While the Attorney General can show no cognizable harm without a stay, Plaintiffs will suffer imminent, irreparable harm if the Ban takes effect.

A.     **The Attorney General Fails to Show He Will Suffer Irreparable Harm**

The Attorney General's failure to make "a certain threshold showing regarding irreparable harm" means that "a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Doe v. Trump*, 957 F.3d at 1058 (cleaned up) (internal citation omitted).

The primary harm alleged by the Attorney General relies entirely on the misconception that he is immune from suit, which, as discussed above, is incorrect and contrary to Ninth Circuit precedent. And although the Attorney General makes the claim that the preliminary injunction thwarts the will of the Legislature, the State suffers no harm when an unconstitutional law is enjoined. *See Latta v. Otter*, 771 F.3d 496, 500, n.1 (9th Cir. 2014).

The Attorney General cannot establish that he will suffer any real-world harms from the continuation of the status quo preserved by the injunction that would warrant staying the injunction.

B.     **The Balance of Equities and the Public Interest Weigh Strongly Against a Stay**

Because the Defendant Attorney General is a state government official, this Court considers the "balance of the equities" and "public interest" components of the preliminary injunction test together, as one inquiry. *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021). The threat of harm to Plaintiffs far outweighs the Attorney General's interests in immediately enforcing the Ban, and preserving Plaintiffs' constitutional rights is in the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the

public interest to prevent the violation of a party's constitutional rights" (citation omitted)).  As the Court found, "because HB 71 is likely unconstitutional, 'it follows inexorably' that plaintiffs have demonstrated irreparable harm." Dkt. 78 at 49 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)).

The Attorney General's statement that the Plaintiffs will not be injured by granting a stay of the injunction is as incredible as it is false. The minor Plaintiffs and the parent Plaintiffs all submitted testimony regarding how gender-affirming medical care has dramatically improved the minor Plaintiffs' lives and the harms that would result if this care was banned, which the Court credited. Dkt. 78 at 49–50. The Attorney General does not dispute or address these harms.

"[B]y establishing a likelihood that [the government's] policy violates the U.S. Constitution," as Plaintiffs have here, they "have also established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

The harm to Plaintiffs from allowing the Ban to go into effect would be tangible, immediate, and irreparable. The balance of equities and the public interest weigh against a stay of the preliminary injunction here. The court should preserve the status quo until the case can be decided on the merits.

## CONCLUSION

The Court should deny the motion to stay its preliminary injunction pending the appeal.

Date:   January 10, 2024

Respectfully submitted,

/s/ *Li Nowlin-Sohl*
Name

Li Nowlin-Sohl (admitted only in Washington)
Leslie Cooper
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lnowlin-sohl@aclu.org
lcooper@aclu.org

Alexia D. Korberg
Jackson Yates
Dana L. Kennedy
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 6th Avenue
New York, NY 10019
Tel: (212) 373-3000
akorberg@paulweiss.com
jyates@paulweiss.com
dkennedy@paulweiss.com

Richard Eppink (ISB no. 7503)
Casey Parsons (ISB no. 11323)
David A. DeRoin (ISB no. 10404)
WREST COLLECTIVE
812 W. Franklin St.
Boise, ID 83702
Tel: (208) 742-6789
ritchie@wrest.coop
casey@wrest.coop
david@wrest.coop

Eric Alan Stone
Ariella C. Barel
Kyle N. Bersani
GROOMBRIDGE, WU, BAUGHMAN
AND STONE LLP
565 Fifth Avenue, Suite 2900
New York, NY 10017
Tel: (332) 269-0030
eric.stone@groombridgewu.com
ariella.barel@groombridgewu.com
kyle.bersani@groombridgewu.com

Dina M. Flores-Brewer (ISB no. 6141)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF IDAHO
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
dfloresbrewer@acluidaho.org

Philip S. May
GROOMBRIDGE, WU, BAUGHMAN
AND STONE LLP
801 17th St NW Suite 1050
Washington, DC 20006
Tel: (202) 505-5830
philip.may@groombridgewu.com

8

Fourth Judicial District, Ada County
**Trent Tripple, Clerk of the Court**
By: Deputy Clerk - Maxwell, Kari

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| JENNIFER ADKINS; JILLAINE ST.MICHEL; KAYLA SMITH; REBECCA VINCEN-BROWN; EMILY CORRIGAN, M.D., on behalf of herself and her patients; JULIE LYONS, M.D., on behalf of herself and her patients; and IDAHO ACADEMY OF FAMILY PHYSICIANS, on behalf of itself, its members, and its members' patients,<br><br>        Plaintiffs,<br><br>vs.<br><br>STATE OF IDAHO; BRAD LITTLE, in his official capacity as Governor of the State of Idaho; RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho; and IDAHO STATE BOARD OF MEDICINE,<br><br>        Defendants. | Case No. CV01-23-14744<br><br>MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS |

The demise of *Roe v. Wade*, 410 U.S. 113 (1973), gave effect to Idaho statutes that severely restrict abortions.  Plaintiffs are women those statutes harmed during pregnancies, physicians prevented from providing care according to their medical judgment, and a medical association concerned about implications for patient care. They challenge those statutes' constitutionality.  Defendants—the State of Idaho and its governor, attorney general, and board of medicine—move to dismiss.  The motion was argued and taken under advisement on December 14, 2023.  For the reasons that follow, it is granted in part and denied in part.

# I.

## BACKGROUND

A year and a half ago, in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), the United States Supreme Court overruled *Roe* and subsequent opinions recognizing a constitutional right to abortion.

Anticipating *Roe*'s eventual overruling, the 2020 Idaho legislature enacted a statute that broadly criminalizes performing abortions, to take effect shortly after the issuance of a United States Supreme Court opinion like the one in *Dobbs*. 2020 Idaho Sess. Laws ch. 284, § 1. This statute (as amended, "General Abortion Ban") makes performing an abortion a felony punishable by prison time and, if the defendant is a licensed healthcare provider, a mandatory license suspension (for a first offense) or revocation (for a subsequent offense). I.C. § 18-622(1). Some abortions, though, aren't criminalized by the General Abortion Ban. First, an abortion performed by a physician isn't criminalized if "[t]he physician determined . . . that the abortion was <u>necessary to prevent the death of the pregnant woman</u>," so long as the physician "performed or attempted to perform the abortion in the manner that . . . provided the best opportunity for the unborn child to survive, unless . . . termination of the pregnancy in that manner would have posed a greater risk of the death of the pregnant woman." I.C. § 18-622(2)(a) (emphasis added). Second, an abortion isn't criminalized if it was performed by a physician during a pregnancy's first trimester and the pregnant woman had reported to authorities that she was a victim of rape or incest. I.C. § 18-622(2)(b).

Additionally, the 2021 Idaho legislature enacted a statute that broadly criminalizes performing abortions after a fetal heartbeat is present, to take effect shortly after the issuance of an opinion by a federal circuit court finding any similar law constitutional.  2021 Idaho Sess. Laws ch. 289.  This statute (as amended, "Fetal Heartbeat Law") works in much the same way as the General Abortion Ban. *See* I.C. §§ 18-8801 to -8805.  The Fetal Heartbeat Law includes, however, a somewhat broader medical exception than the General Abortion Ban.  Performing an abortion after a fetal heartbeat is present doesn't violate the Fetal Heartbeat Law not only if an "immediate abortion" is necessary to "avert . . . death" but also if "a delay will create serious risk of substantial and irreversible impairment of a major bodily function."  I.C. § 18-8801(5); *see also* I.C. § 18-8804(1).  That said, the General Abortion Ban has primacy over the Fetal Heartbeat Law; the Fetal Heartbeat Law says that "[i]n the event both [laws] are enforceable," it is "supersede[d]" by the General Abortion Ban.  I.C. § 18-8805(4); *see also Planned Parenthood Great Nw. v. State*, 171 Idaho 374, ___, 522 P.3d 1132, 1161 (2023).

The General Abortion Ban and Fetal Heartbeat Law are referenced collectively in this decision as "Idaho's Abortion Laws."  Their constitutionality was at issue in the just-cited *Planned Parenthood* case, which was decided about a year ago.  There, the Idaho Supreme Court rejected an array of constitutional challenges to Idaho's Abortion Laws, holding most notably that the Idaho Constitution doesn't recognize an implicit fundamental right to abortion.  171 Idaho at ___–__, 522 P.3d at 1161–1209.

Plaintiffs Jennifer Adkins, Jillaine St.Michel, Kayla Smith, and Rebecca Vincen-Brown each became pregnant shortly before or shortly after *Roe* was overruled.  (Compl. ¶¶ 5, 21, 23, 40, 42, 57, 60, 78–79.)  They lived in Idaho at the time, and all but Smith continue to live in Idaho.  (*Id.* ¶¶ 5, 21, 40, 57, 76, 78.)  Grave fetal abnormalities, maternal-health concerns, or both complicated their pregnancies.  (*Id.* ¶¶ 21–95.)  Each desired abortion care, but because of the General Abortion Ban, each had to travel out of state to obtain it.  (*Id.*)

Plaintiffs Emily Corrigan and Julie Lyons are licensed physicians who were practicing medicine in Idaho before *Roe* was overruled and have continued to do so.  (*Id.* ¶¶ 96, 123.)  Dr. Corrigan is an obstetrician whose practice includes providing abortion care.  (*Id.* ¶¶ 96, 99.)  Dr. Lyons practices family medicine.  (*Id.* ¶¶ 123.)  They say their practices—and their patients—have been harmed by Idaho's Abortion Laws; they can no longer provide all the care they consider appropriate, they struggle to ascertain whether some of the care they wish to provide would subject them to the risk of criminal prosecution and loss of licensure, some of the specialists to whom their patients could've been referred have left Idaho, and their patients suffer delays and attendant risks and complications that wouldn't have been an issue before *Roe* was overruled.  (*Id.* ¶¶ 96–105, 123–31.)

Finally, Plaintiff Idaho Academy of Family Physicians ("IAFP") is a membership organization whose members are physicians (including Dr. Lyons), medical residents, and medical students.  (*Id.* ¶¶ 106, 123.)  IAFP sees Idaho's restrictive abortion laws as "government overreach" that inappropriately intrudes

into physician-patient relationships.  (*Id.* ¶ 109.)  Its members are concerned about the risk of criminal prosecution and loss of licensure they face under those laws, as well as about the health risks those laws impose on their patients.  (*Id.* ¶ 111–16.)

On September 11, 2023, Plaintiffs banded together to file suit against the State of Idaho, Governor Brad Little, Attorney General Raúl Labrador, and the Idaho State Board of Medicine to seek relief from Idaho's restrictive abortion laws. They assert five claims.  (*Id.* ¶¶ 315–49.)

Claim I seeks a declaratory judgment on two points.  (*Id.* ¶¶ 315–21.)  The first is that, under I.C. § 18-622(2) and § 18-8801(5), a physician may "provide a pregnant person with abortion care when the physician determines, in their good faith judgment and in consultation with the pregnant person, that the pregnant person has an emergent medical condition that poses a risk of death or a risk to their health (including their fertility)."  (*Id.* ¶ 319.)  The second is as follows:

> Idaho's abortion bans do not preclude a physician from providing abortion care where, in the physician's good faith judgment and in consultation with the pregnant person, a pregnant person has:  a medical condition or complication of pregnancy that poses a risk of infection, bleeding, or otherwise makes continuing a pregnancy unsafe for the pregnant person; a medical condition that is exacerbated by pregnancy, cannot be effectively treated during pregnancy, or requires recurrent invasive intervention; and/or a fetal condition where the fetus is unlikely to survive the pregnancy and sustain life after birth.

(*Id.* ¶ 320.)

Claim II—entitled "Ultra Vires" and seemingly asserted against every defendant other than the State of Idaho, (*see id.* at 87 & ¶¶ 322–25)—appears to seek an injunction against  "enforcement of Idaho's abortion bans against any physician who provides an abortion to a pregnant person after determining that, in

the physician's good faith medical judgment, the pregnant person has an emergent medical condition for which abortion would prevent or alleviate a risk of death or risk to their health (including their fertility)." (*Id.* ¶ 324.)

Claim III seeks a declaratory judgment that the Idaho Constitution—by recognizing "enjoying and defending life" and "pursuing happiness and securing safety" as "inalienable rights," Idaho Const. art. I, § 1—entitles pregnant women to abortion care if "an emergent medical condition . . . poses a risk of death or risk to their health (including their fertility), and an abortion would prevent or alleviate such risk." (Compl. ¶¶ 326–32.)  Claim III also seeks an injunction against enforcing Idaho's Abortion Laws in that situation.  (*See id.* ¶ 333.)

Claim IV seeks similar declaratory and injunctive relief under article I, § 2 of the Idaho Constitution on equal-protection grounds.  (*Id.* ¶¶ 334–41.)  Plaintiffs' theory is that Idaho law broadly refuses abortion care to women with a legitimate medical need for it, but people who aren't pregnant are neither "prevent[ed] . . . from accessing critical medical treatment" nor "force[d] . . . to unnecessarily suffer severe illnesses and injuries and undergo mental anguish."  (*Id.* ¶ 336.)

Finally, Claim V—presumably asserted only by Dr. Corrigan, Dr. Lyons, and IAFP—is a substantive due process claim under article I, §§ 1 and 13 of the Idaho Constitution, (*id.* ¶¶ 342–49), contending that licensed physicians have a constitutional right "to practice their profession by providing abortion to treat emergent medical conditions that pose a risk to a pregnant person's life or health (including their fertility)," (*id.* ¶ 344).

On October 31, 2023, Defendants moved to dismiss these claims under Rule 12(b)(6) for failure to state any potentially viable claim for relief.  (Mem. Supp. Defs.' Mot. Dismiss 4–19.)  They also argue that Plaintiffs lack standing to sue Governor Little, Attorney General Labrador, and the Board of Medicine, so the complaint must be dismissed under Rule 12(b)(1) as to them.  (*Id.* at 19–23.)  As already noted, Defendants' motion was argued and taken under advisement on December 14, 2023.  It is ready for decision.

## II.

## LEGAL STANDARD

### A.    Defendants' Rule 12(b)(1) motion

The proper legal standard to apply in deciding a Rule 12(b)(1) motion depends on whether the movant's jurisdictional challenge is facial or factual.  *Owsley v. Idaho Indus. Comm'n*, 141 Idaho 129, 133 n.1, 106 P.3d 455, 459 n.1 (2005) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).  A facial challenge argues that the complaint's factual allegations, taken as true, don't support the exercise of subject-matter jurisdiction, while a factual challenge presents evidence of unpleaded facts and argues that they defeat subject-matter jurisdiction.  *See id.*; *Von Lossberg v. State*, 170 Idaho 15, 19, 506 P.3d 251, 255 (2022); 5B A. Benjamin Spencer, *Federal Practice and Procedure* § 1350 (3d ed.), Westlaw (database updated Apr. 2023).  Here, the jurisdictional challenge is facial; Defendants present no evidence of unpleaded facts.  Consequently, the Rule 12(b)(6) standard governs their jurisdictional challenge.  *See Owsley*, 141 Idaho at 133 n.1, 106 P.3d at 459 n.1.

**B.**    **Defendants' Rule 12(b)(6) motion**

A claim is subject to dismissal under Rule 12(b)(6) if it is unsubstantiated by well-pleaded factual allegations.  *See* I.R.C.P. 12(b)(6).  When dismissal is sought on that basis, the trial court accepts as true all well-pleaded factual allegations—those that aren't "purely conclusory"—and decides whether they state a legally viable claim.  *Orrock v. Appleton*, 147 Idaho 613, 618, 213 P.3d 398, 403 (2009).  If they don't, dismissal is appropriate, but leave to amend must be granted unless the deficiencies are incurable.  *E.g.*, *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1220 (9th Cir. 2023).  In other words, outright dismissal is appropriate only if "it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim that would entitle him to relief."  *Luck v. Rohel*, 171 Idaho 51, 518 P.3d 350, 354 (2022) (quoting *Paslay v. A&B Irrigation Dist.*, 162 Idaho 866, 869, 406 P.3d 878, 881 (2017)).

### III.

### ANALYSIS

"Concepts of justiciability, including standing, identify appropriate or suitable occasions for adjudication by a court."  *Associated Press v. Second Jud. Dist.*, 172 Idaho 113, ___, 529 P.3d 1259, 1264 (2023) (quoting *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015)).  "As a sub-category of justiciability, standing is a threshold determination that must be addressed before reaching the merits."  *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 698, 451 P.3d 25, 33 (2019) (citing *Martin v. Camas Cty. ex rel. Bd. Comm'rs*, 150 Idaho 508, 513, 248 P.3d 1243, 1248 (2011)).  So, the Court begins with the

argument that Plaintiffs lack standing to pursue their claims against Governor Little, Attorney General Labrador, and the Board of Medicine—in other words, against anyone but the State.  (*See* Mem. Supp. Defs.' Mot. Dismiss 19–23.)  This is Defendants' Rule 12(b)(1) challenge.  After deciding it, the Court turns to whether the complaint states any potentially viable claim for relief, as is necessary to survive Defendants' accompanying Rule 12(b)(6) challenge.

## A.   Governor Little, Attorney General Labrador, and the Board of Medicine aren't proper defendants.

"Idaho courts have, again and again, reaffirmed a commitment to the federal standards for Idaho's standing doctrine." *Tidwell v. Blaine Cnty.*, ___ Idaho ___, __, 537 P.3d 1212, 1221 (2023) (collecting cases).  Under federal standards, "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Or, as the Idaho Supreme Court recently put it, "[w]hen an issue of standing is raised, the focus is not on the merits of the issues raised, but upon the party who is seeking the relief," because "a party can have standing to bring an action, but then lose on the merits." *Midtown Ventures, LLC v. Capone*, No. 49679, 2023 WL 8499308, at *5 (Idaho Dec. 8, 2023) (quoting *Bagley v. Thomason*, 149 Idaho 806, 808, 241 P.3d 979, 981 (2010)). Defendants argue, essentially, that Governor Little, Attorney General Labrador, and the Board of Medicine have so little authority to enforce Idaho's Abortion Laws that no one—Plaintiffs included—may sue them on the grounds Plaintiffs have sued them.  (*See* Mem. Supp. Defs.' Mot. Dismiss 19–23.)

In its recent *Planned Parenthood* opinion, the Idaho Supreme Court held that the State is a proper defendant to an action challenging the constitutionality of Idaho's Abortion Laws.  171 Idaho at ___, 522 P.3d at 1158 ("It is neither procedurally improper nor unusual to name the State of Idaho as a party in a case seeking declaratory relief when a constitutional violation is alleged.").  Citing that holding, Defendants recognize that "the State is a proper defendant in this action." (Mem. Supp. Defs.' Mot. Dismiss 19–20.)  Indeed, any declaratory or injunctive relief that Plaintiffs manage to obtain against the State would bind Governor Little, Attorney General Labrador, and the Board of Medicine.  *See Planned Parenthood*, 171 Idaho at ___, 522 P.3d at 1158 ("[W]hen the State of Idaho is named as a respondent, the relief may issue against those persons the State is comprised of (i.e., all its officers, employees, and agents).").  Consequently, it makes sense to leave technical arguments about standing aside at first to ask whether anything is accomplished by suing—along with the State—Governor Little, Attorney General Labrador, and the Board of Medicine.

Plaintiffs say they didn't sue Idaho's forty-four county prosecutors—who have primacy in prosecuting violations of criminal laws (including Idaho's Abortion Laws), I.C. §§ 31-2227, -2604—because "[r]elief against the State itself would . . . bind county prosecutors."  (Pls.' Opp'n Defs.' Mot. Dismiss 25.)  If, as Plaintiffs say, there is no need to sue the county prosecutors because county prosecutors will be bound by the outcome anyway, then surely there is no need to sue Governor Little, Attorney General Labrador, and the Board of Medicine.  Governor Little and

Attorney General Labrador have merely secondary enforcement authority, exercisable if county prosecutors fail or refuse to enforce criminal laws or need assistance in doing so.  *See* I.C. §§ 31-2227(3), 67-802(7), -1401(7).  Plaintiffs don't allege that county prosecutors are expected to either fail or refuse to enforce, or need assistance in enforcing, Idaho's Abortion Laws.  Plaintiffs don't make a case that Governor Little or Attorney General Labrador is likely to get involved in prosecuting violations of those laws.  Further, though the Board of Medicine must suspend or revoke a healthcare provider's license upon a conviction under those laws, I.C. §§ 18-622(1), -8806(3), that duty is ministerial and arises only in the event of a conviction in a criminal prosecution it has no role in pursuing.[1]  So, joining Governor Little, Attorney General Labrador, and the Board of Medicine to this suit against the State accomplishes nothing.

Redundant defendants—those whose inclusion "provides no opportunity for further relief" than would be available in their absence—may be dismissed in the interest of efficiency and judicial economy.  *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1246 (D. Utah 2004); *see also Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the

---

[1] Plaintiffs express doubt that the Board of Medicine must await a conviction to suspend a license based on a violation of Idaho's Abortion Laws.  (Pls.' Mem. Opp'n Defs.' Mot. Dismiss 24.)  If either of those laws is the authority for the suspension, however, a conviction must be awaited.  That's the upshot of statutory language creating a criminal offense and then penalizing the offender with a license suspension "upon [an] offense."  I.C. §§ 18-622(1), -8805(3).

officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) ("Actually there is one defendant—the city—not two; for the complaint names the mayor as a defendant in his official capacity only, which is the equivalent of suing the city. . . . [N]othing was added by suing the mayor in his official capacity."); *Joseph v. Boise State Univ.*, 998 F. Supp.2d 928, 948 (D. Idaho 2014) ("Suing employees in their official capacities is redundant where the entity is sued as well."); *Doe v. Douglas Cnty. Sch. Dist. RE-1*, 775 F. Supp. 1414, 1416 (D. Colo. 1991). This approach is commendable for decluttering litigation without diminishing the relief available to successful plaintiffs.

The Idaho Rules of Civil Procedure "should be construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding." I.R.C.P. 1(b). Those aims are furthered by eliminating redundant defendants. A claim asserted in a pleading may be dismissed for "failure to state a claim upon which relief can be granted." I.R.C.P. 12(b)(6). With Rule 1(b) firmly in mind, the Court construes Rule 12(b)(6) to allow the dismissal of redundant defendants. Indeed, a claim against a redundant defendant isn't one "upon which relief can be granted" because the redundant defendant's inclusion in the litigation doesn't broaden the relief available to the plaintiff.

Having been sued along with the State, under whose umbrella their roles exist, Governor Little, Attorney General Labrador, and the Board of Medicine are redundant defendants. The claims against them are dismissed for failure to state a

claim upon which relief can be granted.  As to the Board of Medicine, the dismissal is without leave to amend, as no new battery of allegations can fix the problem that the Board of Medicine has no authority to institute criminal prosecutions under Idaho's Abortion Laws.  As to Governor Little, the dismissal is also without leave to amend; beyond being a redundant defendant, he is entitled to dismissal on standing grounds.[2]  But as to Attorney General Labrador, the dismissal is with leave to amend.  If Plaintiffs can, consistent with their obligations under I.R.C.P. 11, allege facts showing that Attorney General Labrador is likely to begin exercising his secondary authority to prosecute violations of Idaho's Abortion Laws, they may file an amended complaint within twenty-one days from the entry of this order.

Given these rulings, Claim II—the "Ultra Vires" claim, which isn't asserted against the State, (Compl. ¶¶ 322–25)—must be dismissed in its entirety.  This is no real loss for Plaintiffs.  During the hearing, Plaintiffs' counsel characterized Claims I and II as statutory claims (and Claims III, IV, and V as constitutional

---

[2] Standing to sue doesn't exist without, among other things, "a sufficient causal connection between the injury and the conduct complained of.'" *Tucker v. State*, 162 Idaho 11, 19, 394 P.3d 54, 62 (2017) (quoting *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015)).  In other words, the plaintiff's alleged injuries must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* at 21, 394 P.3d at 64 (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)).  When the causal link between the plaintiff's alleged injuries and the defendant's conduct is "too attenuated," the plaintiff lacks standing to sue.  *Id.*  Governor Little's predecessor was dismissed on standing grounds in *Tucker* because this causal link was too attenuated, *id.* at 21–23, 394 P.3d at 64–66, and though the subject matter there and here are dissimilar, the attenuation between the alleged injuries and the duties of the governorship is much the same.

claims).  Claim II is derivative of Claim I, so it couldn't succeed unless Claim I

succeeds.  And, if Claim I succeeds, the resulting declaratory and injunctive relief

against the State would—as Plaintiffs say—bind Governor Little, Attorney General

Labrador, the Board of Medicine, and all other state officers or agencies just as if

Claim II had succeeded.  Claim II is, in other words, mere surplusage.

Left to consider is whether any of Plaintiffs' claims against the State is

potentially viable.

## B.    Faithful application of precedent compels the dismissal of some, but not all, of Plaintiffs' claims against the State.

Plaintiffs assert four claims against the State.  The Court considers them in

turn, assessing whether any states a potentially viable claim for relief.

### 1.    Claim I:  the claim for a declaratory judgment

Claim I, described more fully above, seeks a declaratory judgment concerning

the circumstances in which I.C. §§ 18-622(2) and 18-8801(5) allow abortions.

(Compl. ¶¶ 315–21.)  Plaintiffs specify, of course, the circumstances in which they

think abortions are allowed.  (*Id.* ¶¶ 319–20.)  The State argues for dismissal on the

theory that Plaintiffs are wrong about the circumstances in which abortions are

allowed.  (Mem. Supp. Defs.' Mot. Dismiss 4–8.)  Plaintiffs might not be entitled to

the particular declaration they seek, but that doesn't mean they aren't entitled to

some declaration.  "Any person . . . whose rights, status or other legal relations are

affected by a statute . . . may have determined any question of construction or

validity arising under the . . . statute . . . and obtain a declaration of rights, status

or other legal relations thereunder."  I.C. § 10-1202.  Plaintiffs—some of them, at

least—are persons whose rights are affected by sections 18-622(2) and 18-8801(5), and they have raised questions about the construction of those statutes.  Hence, Claim I states a claim upon which relief can be granted, even though the declaration Plaintiffs ultimately receive may not be the one they want.

>2.    Claim III:  the claim under article I, § 1

As already mentioned, Claim III seeks declaratory and injunctive relief under article I, § 1 of the Idaho Constitution, (Compl. ¶¶ 326–33), which recognizes "enjoying and defending life" and "pursuing happiness and securing safety" as "inalienable rights," Idaho Const. art. I, § 1.  Plaintiffs claim that, by doing so, article I, § 1 entitles pregnant women to abortion care if "an emergent medical condition . . . poses a risk of death or risk to their health (including their fertility), and an abortion would prevent or alleviate such risk."  (Compl. ¶ 332.)

The State says Claim III is foreclosed by the Idaho Supreme Court's opinion in *Planned Parenthood*.  (Mem. Supp. Defs.' Mot. Dismiss 10–12.)  Plaintiffs counter that the claim under article I, § 1 in *Planned Parenthood* was a facial challenge to Idaho's Abortion Laws, unlike their as-applied challenge.  (Pls.' Mem. Opp'n Defs.' Mot. Dismiss 16–17.)  As the parties agree, *Planned Parenthood* didn't involve an as-applied challenge.  *See* 171 Idaho at ___, 522 P.3d at 1147 ("Apart from their central claim that these laws violate an implicit fundamental right to abortion purportedly contained in the Idaho Constitution, Petitioners also raise various facial challenges . . . .").  That matters not, according to the State, because Plaintiffs don't make a true as-applied challenge.  (Mem. Supp. Defs.' Mot. Dismiss 8–10.)

A facial challenge requires a showing that the challenged law "is unconstitutional in all of its applications." *Planned Parenthood*, 171 Idaho at ___, 522 P.3d at 1201.  But Plaintiffs don't claim that Idaho's Abortion Laws violate article I, § 1 in all their applications.  Instead, they hope to show, as just noted, that Idaho's Abortion Laws violate article I, § 1 by denying abortion care to pregnant women with "an emergent medical condition that poses a risk of death or risk to their health (including their fertility), and an abortion would prevent or alleviate such risk."  (Compl. ¶ 332.)  This is a mere subset of the situations to which Idaho's Abortion Laws apply.  Because Claim III seeks <u>not</u> the wholesale invalidation of Idaho's Abortion Laws but instead a ruling that they violate article I, § 1 in a subset of the situations to which they apply, it is an as-applied claim.[3]

By rejecting a facial challenge to Idaho's Abortion Laws under article I, § 1 in *Planned Parenthood*, the Idaho Supreme Court determined that those laws are constitutional in at least some applications, not that they are constitutional in every application.  In other words, the Idaho Supreme Court, presented with only a facial challenge, didn't take the judicially immodest step of prejudging—and rejecting—every conceivable as-applied challenge that might be made in a future case.

Worthy of particular mention is Plaintiffs' as-applied theory that pregnant women have the constitutional right to abortion under article I, § 1 if the denial of

---

[3] Indeed, as *Planned Parenthood* explains, arguments about "uncertainties at the margin when it comes to the application of [Idaho's Abortion Laws] . . . are only appropriate in as-applied challenges."  171 Idaho at ___, 522 P.3d at 1202 (internal quotation marks omitted).  Plaintiffs make such arguments.

abortion care risks their fertility.  (Compl. ¶ 332.)  *Planned Parenthood* holds that no implicit fundamental right to abortion can be found in article I, § 1.  171 Idaho at \_\_\_–\_\_, 522 P.3d at 1176–1195.  But it notes the settled law that "procreation is a fundamental right," despite being unmentioned in the Idaho Constitution, because "[r]ights which are not directly guaranteed by the state constitution may be considered to be fundamental if they are implicit in our State's concept of ordered liberty."  *Id.* at \_\_\_, 522 P.3d at 1170 (quoting *Idaho Schs. for Equal Educ. Opportunity v. Evans*, 123 Idaho 573, 582, 850 P.2d 724, 733 (1993)).  *Planned Parenthood* doesn't grapple with whether Idaho's Abortion Laws unconstitutionally abridge the fundamental right to procreation implicit in article I, § 1 by making it a crime to provide abortion care to pregnant women who may be sterilized, and thus unable to procreate, without abortion care.  As applied to that narrow context, Idaho's Abortion Laws might be subjected to strict scrutiny, *see, e.g.*, *Reclaim Idaho v. Denney*, 169 Idaho 406, 431, 497 P.3d 160, 185 (2021), rather than rational-basis review, which was the standard the *Planned Parenthood* court applied, 171 Idaho at \_\_\_–\_\_, 522 P.3d at 1195–97.  The Court can't now say whether Idaho's Abortion Laws would survive strict scrutiny in that respect, were they subjected to it.

Accordingly, Claim III survives the State's motion to dismiss.

### 3.    Claim IV:  the claim under article I, § 2

In Claim IV, Plaintiffs assert that Idaho's Abortion Laws violate the guarantee of equal protection in article I, § 2 of the Idaho Constitution by denying pregnant women treatment for "an emergent medical condition that poses a risk of death or risk to their health (including their fertility)" when other people aren't

denied treatment as needed to avert those same risks.  (Compl. ¶ 337.)  In assessing Claim IV's viability, the Court doesn't write on a clean slate.  Instead, the Court must faithfully apply pertinent precedent, most notably the Idaho Supreme Court's *Planned Parenthood* opinion.  Analyzing an equal-protection claim made under the Idaho Constitution "involves three steps:  (1) identifying the classification under attack; (2) identifying the level of scrutiny under which the classification will be examined; and (3) determining whether the applicable standard has been satisfied." *Planned Parenthood*, 171 Idaho at ___, 522 P.3d at 1197.  The Court begins with the first step, where the *Planned Parenthood* opinion looms large.

Plaintiffs attack an alleged statutory classification between pregnant women and people who aren't pregnant.  (Pls.' Mem. Opp'n Defs.' Mot. Dismiss 17–18.) This is subtly different from a classification alleged in *Planned Parenthood*:  that Idaho's Abortion Laws classify based on sex and gender.  171 Idaho ___, 522 P.3d at 1197 ("Petitioners contend that [Idaho's Abortion Laws] violate equal protection because . . . the laws invidiously discriminate on the basis of sexual stereotypes, gender, and against medical providers who provide abortion services.").  According to *Planned Parenthood*, however, "none of [Idaho's Abortion Laws] classifies on the basis of sex . . . because men and women are not similarly situated when it comes pregnancy and abortion."  *Id.* at ___, 522 P.3d at 1198.  Instead, in its view, "[t]he only classification these laws create is between medical providers who perform or assist in abortions and medical providers who do not."  *Id.* at ___, 522 P.3d at 1200. Plaintiffs reject this framing of the classification under attack.  (Pls.' Mem. Opp'n

Defs.' Mot. Dismiss 18.)  But *Planned Parenthood* held that Idaho's Abortion Laws make "only" one classification, and it isn't the classification Plaintiffs say it makes. Plaintiffs don't satisfactorily explain how Claim IV is viable, despite being premised on an alleged classification different from the "only" classification Idaho's Abortion Laws make according to *Planned Parenthood*.

Even if Plaintiffs may challenge the classification they see in Idaho's Abortion Laws, notwithstanding *Planned Parenthood*'s holding that those laws make "only" a different one, *Planned Parenthood* flouts Claim IV in a second way: it throws cold water on the notion that, for purposes of an equal-protection challenge to Idaho's Abortion Laws, pregnant women are similarly situated to people who aren't pregnant.

The Equal Protection Clause of the United States Constitution is "essentially a direction that all persons similarly situated should be treated alike." *In re Doe*, 170 Idaho 901, 906–07, 517 P.3d 830, 835–36 (2022) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Put another way, "[a]t its core, equal protection prohibits the government from treating similarly situated persons differently." *Sound Aircraft Servs., Inc. v. Town of E. Hampton*, 192 F.3d 329, 335 (2d Cir. 1999).  Though these cases apply the federal constitution, whereas Claim IV is made under the Idaho Constitution, the core principle they recognize is germane because the guarantee of equal protection in the Idaho Constitution operates on the same core principle.  Indeed, according to the Idaho Supreme Court, "[t]he principle underlying the equal protection clauses of both the Idaho and United States

Constitutions is that all persons in like circumstances should receive the same benefits and burdens of the law." *Med. Recovery Servs., LLC v. Strawn*, 156 Idaho 153, 159, 321 P.3d 703, 709 (2014) (quoting *Bon Appetit Gourmet Foods, Inc. v. Dep't of Emp.*, 117 Idaho 1002, 1003, 793 P.2d 675, 676 (1989)).

In rejecting an equal-protection challenge to Idaho's Abortion Laws under article I, § 2 of the Idaho Constitution, *Planned Parenthood* held that "men and women are not similarly situated when it comes pregnancy and abortion" because "only women are capable of pregnancy; thus, only women can have an abortion." 171 Idaho at ___, 522 P.3d at 1198.  It follows that pregnant women aren't similarly situated to people who aren't pregnant when it comes to pregnancy and abortion; only pregnant women can have an abortion.  *Planned Parenthood* compels the conclusion pregnant women aren't similarly situated to people who aren't pregnant when it comes to access to abortion care.  For this second reason, then, the Court determines that Claim IV isn't viable.

Claim IV must be dismissed.  The dismissal is without leave to amend because, given *Planned Parenthood*, Plaintiffs aren't capable of alleging some other set of facts that would make it potentially viable.

 4. Claim V:  the claim under article I, §§ 1 and 13

Finally, Claim V seeks a declaratory judgment that Idaho's Abortion Laws violate the substantive due process right of licensed physicians under article I, §§ 1 and 13 of the Idaho Constitution "to practice their profession by providing abortion to treat emergent medical conditions that pose a risk to a pregnant person's life or health (including their fertility)."  (Compl. ¶ 345.)  This claim presumably is made

only by Dr. Corrigan, Dr. Lyons, and IAFP; the others have no evident standing to seek relief based on the alleged constitutional rights of physicians.  In any event, it simply isn't possible to conclude that Claim V is potentially viable.

First, the Idaho Supreme Court's general conclusion in *Planned Parenthood* that women have no constitutional right to abortion care practically compels the conclusion that physicians have no constitutional right to perform abortions; the broad-based outlawing of abortion undeniably harms women who want abortion care but can't get it more gravely than it harms physicians who are denied the opportunity to provide it.

Second, while "the pursuit of an occupation is a liberty and property interest to which . . . due process protections . . . attach and may not be prohibited by the legislature unless necessary to protect the health, safety or welfare of the citizenry," the constitutional right to pursue an occupation "does not impede the power of the legislature to regulate callings that are related to the public health so long as such regulations are not arbitrary or unreasonable." *Jones v. State Bd. of Med.*, 97 Idaho 859, 868, 555 P.2d 399, 408 (1976)).  Though their ability to provide abortion care has been severely curtailed, physicians remain broadly able to practice medicine.  Further, Plaintiffs concede that, in this context, the rational-basis test applies.  (Pls.' Mem. Opp'n Defs.' Mot. Dismiss 21.)  The Idaho Supreme Court has upheld Idaho's Abortion Laws as valid exercises of the legislature's police power, "rationally related to . . . legitimate governmental interests." *Planned Parenthood*, 171 Idaho at ___, 522 P.3d at 1195.  Given that holding, this Court can't conclude that those

laws' limited abridgment of the medical care that licensed physicians may provide amounts to a violation of their substantive due process rights.

Claim V is dismissed.  The dismissal is without leave to amend because Plaintiffs have no way to cure Claim V's legal deficiencies.

Accordingly,

IT IS ORDERED that Defendants' motion to dismiss is granted in part and denied in part.  Claims I and III survive.  Claim II is dismissed with leave to amend as to Attorney General Labrador but without leave to amend as to Governor Little and the Board of Medicine.  Claims IV and V are dismissed without leave to amend.

*Jason D. Scott*      12/29/2023 9:12:01 AM

Jason D. Scott
DISTRICT JUDGE

CERTIFICATE OF SERVICE

I certify that on ___12/29/2023___, I served a copy of this document as follows:

Scott McKay
Valeri Kiesig
NEVIN, BENJAMIN & McKAY LLP
smckay@nbmlaw.com
vkiesig@nbmlaw.com

Gail Deady
Marc Hearron
Kulsoom Ijaz
Samantha D. Rasay
CENTER FOR REPRODUCTIVE RIGHTS
gdeady@reprorights.org
mhearron@reprorights.org
kijaz@reprorights.org
jrasay@reprorights.org

Leah Godesky
Anna T. Pletcher
Hannah Dunham
David Cohen
Sara Pahlavan
O'MELVENY & MYERS, LLP
lgodesky@omm.com
apletcher@omm.com
hdunham@omm.com
dcohen@omm.com
spahlavan@omm.com

James E. M. Craig
OFFICE OF THE ATTORNEY GENERAL
james.craig@ag.idaho.gov

TRENT TRIPPLE
Clerk of the District Court

By: _____
Deputy Court Clerk