UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAM POE, by and through her parents and next friends, Penny and Peter Poe; PENNY POE; PETER POE; JANE DOE, by and through her parents and next friends, Joan and John Doe; JOAN DOE, and JOHN DOE,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho *et al.*<br><br>　　　　Defendants. | Case No. 1:23-cv-00269-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Attorney General Raúl Labrador's Motion for Stay of Injunction Pending Appeal (Dkt. 80). The motion was filed as an emergency motion, with limited time for briefing and consideration.[1] For the reasons explained below, the Court will deny the motion.

---

[1] The motion was filed on January 3, 2024; it ripened on January 12, 2024; and the Attorney General asked for a decision within two weeks of filing the motion, or by January 17, 2024.

## BACKGROUND

On December 26, 2023, the Court denied Attorney General Labrador's and Ada County Prosecuting Attorney Jan Bennetts' motions to dismiss this lawsuit. On the same date, the Court granted plaintiffs' motion for a preliminary injunction. The injunction prevents the Attorney General and the Ada County Prosecutor from enforcing any provision of Idaho's Vulnerable Child Protection Act during the pendency of this lawsuit. Shortly after the Court issued its order, the Attorney General appealed this Court's decision and filed an emergency motion asking the Court to stay its preliminary injunction during the pendency of this appeal.

## DISCUSSION

Granting a stay is "an exercise of judicial discretion" that is "dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433, (2009). In exercising its discretion, the Court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id*. at 434 (*citing Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). But "if the petition has not made a certain threshold showing regarding irreparable harm then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Doe v. Trump*, 957 F.3d

1050, 1058 (9th Cir. 2020) (cleaned up) (internal citation omitted). The moving party bears the burden of showing that the circumstances justify an exercise of the court's discretion. *Nken*, 556 U.S. at 434.

**1.      Claimed Injuries**

The Court will begin with the second and third factors, which deal with the injuries that will be suffered if the Court stays its injunction. The Attorney General says he will suffer irreparable harm in the absence of a stay for two reasons. First, he says the loss of his Eleventh Amendment immunity works an irreparable injury upon him. Second, he argues that the State of Idaho will be irreparably injured by virtue of the fact that a federal court has enjoined the enforcement of a duly enacted state law. The Court is not persuaded by either argument.

**A. The Attorney General's Immunity Argument**

As for the immunity argument, the Attorney General contends that the Court erred when it concluded that *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) forecloses his claim of immunity. Before addressing this asserted error, the Court will reproduce the relevant portion of its earlier decision here, to ground the discussion:

> The starting point for the analysis is Idaho Code § 67-1401, which empowers Idaho's attorney general to "assist" county prosecutors. It provides: "When required by public service, [the attorney general has

> a duty] to repair to any county in the state and assist the prosecuting attorney thereof in the discharge of duties." Idaho Code § 67-1401(7). Idaho caselaw construing this statute has clarified that, while the attorney general may "assist" county prosecutors in a "collaborative effort," he may not assert "dominion and control" over prosecutions against the county prosecutor's wishes. *Newman v. Lance*, 922 P.2d 395, 399–401 (Idaho 1996). Otherwise, unless the county prosecutor objects, the attorney general is empowered to "do every act that the county attorney can perform" in rendering assistance. *Id.* at 399. In *Wasden*, the Ninth Circuit summarized the Idaho attorney general's powers as follows: "the attorney general in effect may deputize himself . . . to stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have." *Id*. Given these "assistance powers," *Wasden* concluded that plaintiffs had demonstrated the "causal connection" and "redressability" elements for purposes of standing and also demonstrated that Idaho's attorney general was a proper defendant under an *Ex Parte Young* theory. *Id*.

*Dec. 26, 2023 Mem. Decision & Order,* Dkt. 78, at 28. In rejecting the Attorney General's claim of immunity, the Court went on to note that nothing has changed

since the Ninth Circuit's 2004 decision in *Wasden. Id.* at 27.

In seeking to stay the injunction, the Attorney General doesn't meaningfully engage with *Wasden*. Instead, he points out that the Idaho legislature did not explicitly provide him with enforcement powers when it enacted the Vulnerable Child Protection Act (HB 71). But that argument ignores the enforcement powers that were already in place, by virtue of Idaho Code § 67-1401. *Wasden* relied on that statutory grant of power in deciding that the Attorney General was suable under an *Ex Parte Young* theory. *See* 376 F.3d at 919-920. Thus, the Court is not persuaded that it erred by relying on *Wasden*.

The Attorney General also points to a recent Idaho state trial court decision, *Adkins v. Idaho*, No. CV01-23-14744, Mem. Decision & Order, at 11 (Idaho Fourth Judicial Dist. Dec. 29, 2023), to support his argument that the Court erred. In *Adkins,* the plaintiffs challenged Idaho's criminal abortion laws, naming four defendants: (1) the State of Idaho; (2) Idaho's governor; (3) Idaho's attorney general; and (4) the Idaho Board of Medicine. The *Adkins* Court granted the Attorney General's motion to dismiss in that case, albeit with leave to amend as to one claim. *Adkins* is not binding. Moreover, as a state tribunal, *Adkins* was not called upon to wrestle with the Eleventh Amendment or the *Ex Parte Young* exception. Rather, that court granted the Attorney General's motion to dismiss after concluding that he was a redundant defendant, given that the State of Idaho

was also a defendant. In reaching its conclusion, *Adkins* noted that Idaho's Attorney General had only "secondary enforcement authority" with respect to the challenged statute. *Id.* at 21. Critically though, and as already noted, *Adkins* did not have to determine whether the Attorney General's enforcement authority satisfied the "modest [connection] requirement" under *Ex Parte Young*. *See Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022). Under *Wasden*, and in light of the Idaho Attorney General's statutory "assistance" powers, he qualifies as a proper defendant.

Finally, the Court has previously observed that the Attorney General's loss of Eleventh Amendment immunity might offer some support for an argument that the *proceedings* should be stayed, but loss of immunity does not amount to the sort of irreparable harm necessary to show an *injunction* should be stayed pending appeal. *See Planned Parenthood v. Labrador,* No. 1:23-cv-142-BLW, 2023 WL 5237613, * 2 (D. Idaho Aug. 15, 2023).

**B. Idaho's Claimed Injury**

The Attorney General next argues that the State of Idaho will be irreparably injured by the preliminary injunction order because the injunction will thwart the will of the Idaho legislature. But, for all the reasons discussed in its previous order, the Court has concluded that Idaho's Vulnerable Child Protection Act is

unconstitutional. The State is not harmed when a federal court enjoins an unconstitutional law. *See Latta v. Otter*, 771 F.3d 496, 500, n.1 (9th Cir. 2014).

### C. Plaintiffs' Claimed Injury

As for plaintiffs' alleged injuries, this Court has already determined they will suffer irreparable harm in the absence of preliminary relief. *See Dec. 26, 2023 Order*, Dkt. 78, at 49-50. Staying that relief would, in turn, place the plaintiffs in the same position they were in before that determination, subjecting them to the same likelihood of harm. The Attorney General does not present any new arguments or facts in his motion that would cause the Court to change its mind.

### 2. Likelihood of Success on the Merits

This Court has also previously decided, after an extensive round of briefing and a hearing, that plaintiffs are likely to succeed on the merits of the equal-protection and due-process claims. In seeking to stay the injunction, the Attorney General says the Court erred in its earlier decision because it "ignored the U.S. Supreme Court's reluctance to constitutionalize areas in which 'the States are currently engaged in serious, thoughtful examinations.'" *Mtn Mem.*, Dkt, 80-1, at 8. In particular, the Attorney General focuses on the fact that in granting the preliminary injunction, the Court acknowledged the "conflicting evidence regarding the risks and benefits associated with gender-affirming medical care."

*Dec. 26, 2023 Order,* Dkt. 78, at 39 (quoted, in part, in the AG's Motion Memo, Dkt. 80-1, at 8, 9).

### A. Conflicting Evidence

The Court is not persuaded by this argument. The Court acknowledged the conflicting evidence in the context of determining whether the challenged law was likely to survive heightened scrutiny—and after having determined that the law discriminated on the basis of sex and transgender status. This was entirely appropriate, as the Ninth Circuit has acknowledged that "[h]eightened scrutiny analysis is an extraordinarily fact-bound test," *Hecox v. Little*, 79 F.4th 1009, 1039 (9th Cir. 2023) and that the state is obligated to come forward with an "an "exceedingly persuasive justification for its differential treatment." *Id.* at 1028 (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996)). Further, after having noted the conflicting evidence regarding gender-affirming medical care, the Court went on to explain that the law would likely fail heightened scrutiny because a total prohibition on gender-affirming medical care does not closely fit the stated goal of protecting children—even accounting for such conflicts:

> The Court acknowledges the conflicting evidence regarding the risks and benefits associated with gender-affirming medical care. As noted above, however, the Court has found that the risks associated with the treatments used in gender-affirming medical care are similar to risks associated with other types of healthcare families may seek for minors. Moreover, even assuming the risks were different in the context of providing gender-affirming medical care, HB 71 still would not satisfy heightened scrutiny because the means (a total prohibition

MEMORANDUM DECISION AND ORDER - 8

on gender-affirming medical care) is not closely fitted with the ends (protecting children). *Cf. Hecox,* 79 F.4th at 1030 (sweeping prohibition on transgender athletes in Idaho too overbroad to satisfy heightened scrutiny).

*Order,* Dkt. 78, at 39. In short, then, the Court disagrees with the Attorney General's suggestion that once the Court acknowledged the existence of conflicting evidence, it was duty-bound to "allow[]the legislature to draw the policy line given the 'conflicting evidence regarding the risks and benefits . . . .'" *Mtn. Mem.*, Dkt. 80-1, at 9.

It's also notable that the Attorney General's line-drawing/policy argument is logically tethered to his argument that the parent plaintiffs are not likely to succeed on the merits of their due-process claim. On this point, the Attorney General has argued that plaintiffs are asking the courts to create a *new* right for parents: the right to access the specific medical treatments at issue in this lawsuit (e.g., puberty blockers, hormone therapy, and other treatments) for their children. As the Court explained, though, it is not persuaded that the fundamental rights at issue here are new rights. Rather, the Supreme Court long ago decided that parents have the right to direct the care and upbringing of their children, and this right logically includes the parents' right to choose a particular medical treatment, in consultation with their healthcare provider, that is generally available and accepted in the medical community. *See Dec. 26, Order,* Dkt. 78, at 42-44 (citing, among other cases, *Parham v. J.R.*, 442 U.S. 584 (1979) and *Troxel v. Granville,* 530 U.S. 57, 65

MEMORANDUM DECISION AND ORDER - 9

(2000) (plurality opinion)). The Attorney General's argument to the contrary relies on the Sixth Circuit's decision in *L.W. ex. rel. Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023). *L.W.*, however, is not binding and, for the reasons explained earlier, the Court does not find its treatment of the substantive due-process issue persuasive. In short, the *L.W.* majority framed the fundamental right at issue far too narrowly and disregarded the Supreme Court's decision in *Parham v. J.R.*, 442 U.S. 584 (1979). This Court finds the various district court opinions (cited in the original order) and dissenting Judge White's opinion far more persuasive on this issue. *See L.W.*, 83 F.4th at 507-12 (White, J., dissenting). Put differently, the Supreme Court has drawn the line around parents' fundamental rights; this Court did not, in accepting and applying those constitutional limits, usurp the legislature's role.

### B. Financial Incentives

The Attorney General next contends that in its earlier decision, the Court went astray by wrongly "credit[ing] the opinions of expert witnesses with a direct financial stake in ensuring the continued availability of 'gender affirming care,' as opposed to those expert witnesses with no direct financial stake in the outcome of the litigation." *Mtn. Mem.*, Dkt. 80-1, at 9. As a point of clarification, the Attorney General is referring to a footnote in the Court's opinion, which explained that the Court gave particular weight to plaintiffs' experts on a specific issue: the risks of

allowing gender dysphoric youth to go untreated, which include increased risks of anxiety, depression, self-harm, and suicidality. *See Order,* Dkt. 78, at 38 n.5. The Court explained that it gave particular weight to plaintiffs' experts on this issue because they currently treat adolescents with gender dysphoria, whereas the defense experts do not. *See id.* It stands to reason that doctors who actually treat gender dysphoric youth will have a better idea as to what happens when these youth go untreated.

More broadly, the Court is not persuaded by the Attorney General's suggestion that the plaintiffs' experts have a direct financial interest in the outcome of this case. As plaintiffs have pointed out: (1) any alleged benefit these doctors would gain is far too attenuated to be considered a financial stake in this litigation; (2) these doctors don't provide care in Idaho and will not, therefore, lose any business if HB 71 goes into effect; and (3) as a psychologist, Dr. Brady does not provide any of the treatments banned by HB 71. For all these reasons, the Court is not persuaded that it erred by crediting opinions offered by plaintiffs' experts.

### 3. The Public Interest

The Court has already determined that the public interest favors an injunction. Nothing in the stay motion persuades the Court to alter that earlier determination.

**ORDER**

**IT IS ORDERED that** Defendant Attorney General Labrador's Emergency Motion for a Stay Pending Appeal (Dkt. 80) is **DENIED**.

DATED: January 16, 2024

_____
B. Lynn Winmill
U.S. District Court Judge