# Exhibit 3

| | |
|---|---|
| **From:** | Lincoln Wilson |
| **To:** | Li Nowlin-Sohl; External- Ritchie Eppink; Heather McCarthy; Josh Turner; dreed@adacounty.id.gov |
| **Cc:** | Eric Stone; "Korberg, Alexia D"; Leslie Cooper |
| **Subject:** | RE: Draft Stipulation and Proposed Order |
| **Date:** | Friday, July 28, 2023 9:00:00 PM |
| **Attachments:** | Poe - WPATH Notice.pdf |
| | image004.png |
| | image005.png |
| | image006.png |
| | image007.png |
| | Poe - WPATH Subpoena.pdf |

Li,



Separately, following our Rule 26(f) conference, we do intend to serve a subpoena on WPATH for the same records it produced in the Alabama litigation and have attached a notice for same. We'll follow up with service.



**Lincoln Davis Wilson | Division Chief**
Civil Litigation and Constitutional Defense
Office of the Attorney General | State of Idaho
M: 208-809-1077 | W: ag.idaho.gov



RAÚL R. LABRADOR
ATTORNEY GENERAL

LINCOLN DAVIS WILSON, ISB #11860
Chief of Civil and Constitutional Defense

JOSHUA N. TURNER, ISB #12193
Deputy Solicitor General
ANDREA H. NIELSEN, ISB #7763
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
lincoln.wilson@ag.idaho.gov
josh.turner@ag.idaho.gov
andrea.nielsen@ag.idaho.gov

*Attorneys for Defendants Labrador and
the Individual Members of the Idaho Code Commission*

## UNITED STATE DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| PAM POE, by and through her parents and next friends, Penny and Peter Poe; PENNY POE; PETER POE; JANE DOE, by and through her parents and next friends, Joan and John Doe; JOAN DOE; JOHN DOE, | Case No. 1:23-cv-00269-CWD |
| Plaintiffs, | **NOTICE OF SUBPOENA** |
| v. | |
| RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho; JAN M. BENNETTS, in her official capacity as County Prosecuting Attorney for Ada, Idaho; and the INDIVIDUAL MEMBERS OF THE IDAHO CODE COMMISSION, in their official capacities, | |
| Defendants. | |

PLEASE TAKE NOTICE, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants intend to serve a Subpoena, in the form attached hereto, upon:

(1) World Professional Association for Transgender Health, Inc. ("WPATH")
2501 Chatham Rd., Suite N
Springfield, IL 62704

The Subpoena requires that the non-parties produce documents by August 14, 2023, at 12 p.m. by electronic means.

DATED:  July 28, 2023.


STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By:  /s/ *Lincoln D. Wilson*
LINCOLN DAVIS WILSON
Chief, Civil Litigation and
Constitutional Defense

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July __, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Li Nowlin-Sohl
lowlin-sohl@aclu.org

Dana L. Kennedy
dkennedy@paulweiss.com

Leslie Cooper
lcooper@aclu.org

Jordan Orosz
jorosz@paulweiss.com

Taylor Brown
tbrown@aclu.org

Richard Eppink
ritchie@wrest.coop

Alexia D Korberg
akorberg@paulweiss.com

Dina M. Flores-Brewer
dfloresbrewer@acluidaho.org

Jackson Yates
jyates@paulweiss.com

Casey Parsons
casey@wrest.coop

Ariella C. Barel
ariella.barel@groombridgewu.com

Eric Alan Stone
eric.stone@groombridgeuw.com

Kyle N. Bersani
kyle.bersani@groombridgewu.com

Phillip S. May
philip.may@groombridgewu.com


  /s/ *Lincoln Davis Wilson*
LINCOLN DAVIS WILSON
Chief, Civil Litigation and
Constitutional Defense

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Idaho   [ ▾ ]

| | |
|---|---|
| PAM POE, et al., | ) |
| *Plaintiff* | ) |
| v. | ) |
| RAUL LABRADOR, et al., | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.  1:23-cv-00269-CWD

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Northwest Registered Agent Service, Inc., World Professional Association for Transgender Health, Inc.
2051 Chatham Rd., Suite N, Springfield, IL 62704

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All documents and information responsive to the request for production attached hereto as "Attachment A"

| Place: Office of the Attorney General - State of Idaho<br>700 W. Jefferson Street, Suite 210<br>Boise, ID 83720 - Electronic Production (email or disc) | Date and Time:<br><br>08/14/2023 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  07/28/2023

| CLERK OF COURT | |
|---|---|
| | OR |
| _____ | /s/ Lincoln Davis Wilson |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Raul Labrador, et al. _____ , who issues or requests this subpoena, are:
Lincoln D. Wilson, Division Chief, Civil Litigation and Constitutional Defense, Office of the Attorney General, State of Idaho, PO Box 83720, Boise, ID 83720-0010, lincoln.wilson@ag.idaho.gov, (208) 334-2400

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:23-cv-00269-CWD

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A) Appearance Not Required.** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) Objections.** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A) When Required.** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) When Permitted.** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) Specifying Conditions as an Alternative.** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A) Documents.** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) Form for Producing Electronically Stored Information Not Specified.** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) Electronically Stored Information Produced in Only One Form.** The person responding need not produce the same electronically stored information in more than one form.
  **(D) Inaccessible Electronically Stored Information.** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A) Information Withheld.** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) Information Produced.** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

**SUBPOENA FOR PRODUCTION OF DOCUMENTS DIRECTED TO WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH & UNITED STATES PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH**

YOU ARE COMMANDED, pursuant to Federal Rule of Civil Procedure 45, to produce to the Office of the Attorney General, State of Idaho, 700 West Jefferson Street, Boise, ID 83720, at the time and place noted on the subpoena to which this document is attached, the following documents, electronically stored information, or objects, and to permit inspection and copying of the same:

## INSTRUCTIONS

Your responses should include all information, knowledge, or belief available not only to You, but also to any attorneys, investigators, consultants, agents, and other representatives acting on Your behalf.   Please respond in accordance with the following instructions:

1.  **Claims of Privilege and Exception to Discovery.**   If any claim of privilege is asserted, in whole or in part, with respect to any Request, or if You refuse to disclose any requested information or Document, in whole or in part, based on any claim of privilege or immunity, please identify the specific privilege or protection claimed and state the basis for the claim, identifying the pertinent circumstances with sufficient specificity to permit Defendants to assess the basis of any such claim for privilege or protection.

2.  **Continuing Nature.**   These Requests are intended to be and shall be answered or responded to fully as of the date of response and shall be deemed to be continuing thereafter until the conclusion of this matter.   If You should subsequently

# ATTACHMENT A

acquire any further responsive information or Documents called for by these Requests, You should promptly furnish such information or Documents to the undersigned counsel.

3.   **Answer to the Fullest Extent Possible.**  If any of the Requests cannot be fulfilled in full, please answer to the fullest extent possible, explaining why you cannot answer the remainder of the Request, stating any information or knowledge which You have concerning the unanswered portion.

4.   **Objection.**  If You have a good-faith objection to any of these Requests, or any part thereof, the specific nature of the objection and whether it applies to the entire Request or to a certain portion thereof shall be clearly stated.  If there is an objection to any part of a Request, then the part or parts objected to should be indicated and information responsive to the remaining unobjectionable parts should be provided.

5.   **Language.**  The use of the singular form of any word includes the plural and vice versa.  Reference to one gender includes the other gender(s).  The word "all" means any and all.  The word "including" means "including without limitation."

## DEFINITIONS

1.   The word **"Communication"** refers to any transmission, receipt, or exchange of information, whether orally, electronically, or in writing, including, without limitation, any conversation or discussion by means of Documents, letters, notes, in-person conversations, memoranda, reports, statements, voicemail, audio or video transmission, telephone calls, telegraph, telex, telecopier, facsimile, email, text

ATTACHMENT A

message, electronic or other instant message, cable, Social Media post or message, Internet post or message, or any other form or medium of transmission or exchange.

2.   The words **"Document"** and **"Documents"** are used in the most comprehensive and inclusive sense permitted by Rule 34 of the Federal Rules of Civil Procedure, as elaborated by the official Comment on the 2006 Amendment.  The terms "Document" and "Documents" also include any drafts or versions thereof, and all copies on which any mark, alteration, writing, attachment, or any other change from the original appears.

3.   The terms **"regarding," "with regards to," "relating," "relating to," "concerning,"** and/or **"related to"** mean recording, summarizing, embodying, constituting, reflecting, digesting, referring to, commenting upon, describing, reporting, listing, analyzing, studying, or otherwise discussing in any way a subject matter identified in the Request, and is defined so as to reach all matters within the scope of discovery under the Federal Rules of Civil Procedure.

4.   The terms **"You"** and **"Your"** refer to the World Professional Association for Transgender Health (WPATH) and the United States Professional Association for Transgender Health (USPATH) as well as the officers, agents, employees, members, representatives, present or formal counsel, and all other persons acting on behalf of WPATH and USPATH.

5.   The connectives **"and"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each of the Requests any and

ATTACHMENT A

all information and Documents that might otherwise be construed to be outside of their scope.

6. **"Idaho Vulnerable Child Protection Act" ("VCPA")** shall mean Idaho Legislature House Bill 71, to be codified at Idaho Code section 18-1506C and signed into law on or about April 4, 2023.

7. **"Sex"** or **"Biological Sex"** means the immutable biological and physiological characteristics, specifically the chromosomes and internal and external reproductive anatomy, genetically determined at conception and generally recognizable at birth, that define an individual as male or female.

8. **"Male"** shall mean the biological state of being male, based on the individual's chromosomes and reproductive organs at birth,

9. **"Female"** shall mean the biological state of being female, based on the individual's chromosomes and reproductive organs at birth.

10. **"Gender Dysphoria"** is the diagnosis of Gender Dysphoria under the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). **"Related Conditions"** include "gender incongruence" as defined by the ICD-11 and any other issues concerning trans (or transgender), gender diverse, and non-binary gender identities.

11. **"Puberty Blockers"** shall mean medication administered to Minors to delay or prevent the onset or continuation of puberty, or otherwise to delay or prevent the formation or maturation of secondary sex characteristics. This includes, but is not limited to, common puberty blockers such as histrelin acetate and leuprolide

ATTACHMENT A

acetate if administered for the purpose of Transitioning.  For purposes of these Requests, "Puberty Blockers" does not include GnRH agonists administered to young children (7 and younger) for the treatment of central precocious puberty or to adult men (19+) for the treatment of prostate cancer.

12. **"Cross-sex Hormones"** shall mean hormones administered to induce the physical characteristics of a sex or gender profile other than the Biological Sex of the patient (including non-cross-sex gender identifies such as "non-binary").  It includes, but is not limited to, administering androgenic hormones such as testosterone, fluoxymesterone, and methyltestosterone to a biological female, and estrogenic hormones such as estrogen and estradiol to a biological male.  It also includes the administration of hormone blockers and anti-androgens such as flutamide, spironolactone, and cyproterone if used as part of Transitioning.

13. **"Desistance"** shall mean the resolution of diagnosed Gender Dysphoria or Related Conditions in a Minor without the continued administration of Puberty Blockers, Cross-Sex Hormones, or surgical interventions.

14. **"Transitioning"** shall mean the administration of medicines such as Puberty Blockers, Cross-Sex Hormones, and surgical interventions to change the physical appearance of a Minor in a way that is not consistent with the patient's Biological Sex.  This includes changing the appearance to appear as a cross-sex identification as well as non-cross-sex identifications such as "non-binary."

15. **"Detransitioning"** shall mean any actions taken to conceal or reverse the effects of Transitioning, including the administration of medicines, surgical

ATTACHMENT A

interventions, and social actions such as changing pronouns, dress, or other forms of gender expression.

16. **"Minor"** shall mean a person under the age of 19.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.   Produce all Communications and Documents relating to the application and selection process for the WPATH Guideline Steering Committee, the Co-Chairs of the Standards of Care 8 (SOC-8) Revision Committee, each of the Chapter Leads for the SOC-8, each of the Chapter Workgroup Members for the SOC-8, each of the Chapter Stakeholder Members for the SOC-8, and each member of the WPATH Standards of Care 8th Version Evidence Review Team. *See generally* SOC-8 at S247-48 (Overview of SOC-8 development process).

2.   Produce all Communications and Documents relating to the decision regarding what chapters to include and not include in SOC-8, including but not limited to the decision not to include a chapter on Detransitioning.

3.   Produce all Communications and Documents relating to the development and approval of chapters 6 (Adolescents), 7 (Children), 8 (Nonbinary), 9 (Eunuchs), 12 (Hormone Therapy), 13 (Surgery and Postoperative Care), 14 (Voice and Communication), 15 (Primary Care), 16 (Reproductive Health), 17 (Sexual Health), and 18 (Mental Health) of SOC-8.

4.   Produce all Communications and Documents relating to the Delphi process for the SOC-8 chapters listed in Request #3, including who participated and voted in the Delphi process. *See, e.g.*, SOC-8 at S247, 250.

6

ATTACHMENT A

5.   Produce all Communications and Documents relating to the systematic review, "evidence tables[,] and other results of the systematic reviews" that the Evidence Review Team presented related to the chapters listed in Request #3.  *See* SOC-8 at S249 ("The Evidence Review Team presented evidence tables and other results of the systematic reviews to the members of the relevant chapter for feedback.").

6.   Produce all Communications and Documents relating to the Evidence Review Team's search criteria, study selection results, and data extraction for the chapters listed in Request #3.  *See* SOC-8 at S249.

7.   Produce all Communications and Documents relating to the evidence grades assigned by the evidence Review team for all studies, research questions, and statements for the chapters listed in Request #3.  *See* SOC-8 at S250 ("The Evidence Review Team assigned evidence grades using the GRADE methodology.").

8.   Produce all Communications and Documents relating to the value factors that were included in the GRADE review process, including "the balance of potential benefits and harms" and "values and preferences of providers and patients."  SOC-8 at S250.

9.   Produce all Communications and Documents comprising comments and survey responses to the draft SOC-8.  *See* SOC-8 at S251 ("A final SOC-8 draft was made available for comments. . . .  A total of 1,279 people made comments on the draft with a total of 2,688 comments.").

7

ATTACHMENT A

10.  Produce all Communications and Documents relating to revisions of SOC-8 as a result of, or in response to, comments received on the draft SOC-8. *See* SOC-8 at S251 ("The Chapters Leads and Guideline Steering Committee considered the feedback and made any necessary revisions….").

11.  Produce all Communications and Documents relating to the minimum age for treatments in SOC-8, including the initial decision to include minimum ages for treatments and the later decision not to include minimum ages for treatments. *See, e.g.,* "New Standards of Transgender Health Care Raises Eyebrows," *The Economist* (Sept. 23, 2022), https://www.economist.com/united-states-2022-09-22/new-standards-of-transgender-health-care-raise-eyebrows ("Known as SOC8, they originally included a list of minimum ages for treatments – 14 for cross-sex hormones, 15 for removal of breasts, 17 for testicles. Hours later, a 'correction' eliminated the age limits.").

12.  Produce all Communications and Documents relating to the role played by, and the identities of, non-professional "stakeholders" in the development and approval of SOC-8 and, in particular, the chapters listed in Request #3. *See, e.g.,* SOC-8 at S248 ("Each chapter also included stakeholders as members who bring perspectives of transgender health advocacy or work in the community….").

13.  Produce all Communications and Documents identifying funding sources for SOC-7 and SOC-8.

ATTACHMENT A

14. Produce all Communications and Documents relating to the development, review and approval of the "Assessment and Treatment of Children and Adolescents with Gender Dysphoria" chapter in SOC-7.

15. Produce all Communications and Documents regarding Dr. Lisa Littman, her article, *Rapid-Onset Gender Dysphoria in Adolescents an Young Adults: A Study of Parental Reports*, and any subsequent revisions to that article.

16. Produce all Communications and Documents relating to the September 2018 WPATH public statement entitled, "WPATH POSITION ON 'Rapid-Onset Gender Dysphoria (ROGD)."

17. Produce all Communications with the journal PLOS One, its officers, agents, employees, or other representatives dated after July 1, 2017.

18. Produce all Communications and Documents relating to the article by Abigail Shrier entitled "Top Trans Doctors Blow the Whistle on 'Sloppy' Care," *available at* https://www.commonsense.news/p/top-trans-doctors-blow-the-whistle.

19. Produce all Communications and Documents relating to the October 2021 "Joint Letter from USPATH and WPATH," *available at* https://www.wpath.org/media/cms/Documents/Public%20Policies/2021/Joint%20WP ATH%20USPATH%20Letter%20Dated%20OCT%2012%202021.pdf.

20. Produce all Communications and Documents regarding the resignation of Dr. Erica Anderson from USPATH.

21. Produce all Communications and Documents related to the article by Dr. Laura Edwards-Leeper and Dr. Erica Anderson entitled, "The Mental Health

ATTACHMENT A

Establishment Is Failing Trans Kids," and published in The Washington Post, *available at* https://www.washingtonpost.com/outlook/2021/11/24/trans-kids-therapy-psychologist/.

22. Produce all Communications and Documents related to the drafting of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), and any subsequent editions or revisions.

23. Produce all Communications and Documents related to the drafting of the ICD-11 coding for gender identity-related health.

24. Produce all Communications and Documents relating to Dr. Kenneth Zucker's participation in the February 2017 USPATH conference, including Communications and Documents relating to any review and acceptance of any papers or presentations by Dr. Zucker and any decision to cancel any part of his planned participation.

25. Produce all Communications and Documents related to the review, scoring, and acceptance of all presentations for the February 2017 USPATH conference.

26. Produce all Communications and Documents relating to the review, scoring, and acceptance of all presentation submissions for the WPATH 27th Scientific Symposium held in September 2022.

27. Produce all Communications and Documents relating to the review, scoring and acceptance of all presentation submissions for the USPAT 2021 Scientific Symposium.

ATTACHMENT A

28. Produce all video recordings of the sessions (including any "town-hall" or informal sessions) of any USPATH or WPATH conference since January 1, 2015.

29. Produce all Communications and Documents distributed to attendees or participants of any USPATH or WPATH conference since January 1, 2017.

30. Produce all Communications between You and other medical organizations, or societies regarding Gender Dysphoria, Related Conditions, and Transitioning for minors.

31. Produce all Communications regarding the drafting of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents,* Pediatrics (Oct. 2018).

32. Produce all Communications regarding the drafting Wylie C. Hembree, *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, J. Clin. Endocrinol. Metab (Nov. 2017).

33. Produce all Communications and Documents relating to any perceived change in the last ten years in the proportion of female minors to male minors who are diagnosed with Gender Dysphoria or Related Conditions.

34. Produce all Communications and Documents relating to the possibility of Desistance among Minors diagnosed with Gender Dysphoria or Related Conditions.

35. Produce all Communications and Documents relating to the possibility of individuals Detransitioning after receiving either puberty blockers or cross-sex hormones.

ATTACHMENT A

36. Produce all Communications and Documents relating to the risks of Transitioning.

37. Produce all Communications and Documents relating to the effects on minors of medications used to effect Transitioning.

38. Produce all Communications and Documents relating to the appropriate age for beginning Transitioning treatments in Minors.

39. Produce all Communications and Documents relating to the informed consent process for minors considering or undergoing Transitioning treatments.

40. Produce all Communications with the Plaintiffs in this lawsuit, including the United States of America and any agencies, departments, or employees thereof.

41. Produce all Communications and Documents dated after February 1, 2019, regarding consideration or evaluation of the following as part of the drafting or evidence review process of SOC-8: Nat'l Inst. For Health and Care Excellence, *Evidence Review: Gender-Affirming Hormones for Children and Adolescents with Gender Dysphoria* (2021); Nat'l Inst. For Health and Care Excellence, *Evidence Review: Gonadotrophin Releasing Hormone Analogues for Children and Adolescents with Gender Dysphoria* (2021); Abigail Shrier, *Irreversible Damage* (2020); William J. Malone et al., *Proper Care of Transgender and Gender-diverse Persons in the Setting of Proposed Discrimination*, 106 J. Clinical Endocrinology & Metabolism e3287 (2021); Diane Chen et al., *Consensus Parameter: Research Methodologies to Evaluate Neurodevelopmental Effects of Pubertal Suppression in Transgender Youth,* Transgender Health, Vol. 5, No. 4 2020, DOI: 10.1089/trgh.2020.0006; The Cass

ATTACHMENT A

Review, *Independent Review of Gender Identity Services for Children and Young People: Interim Report* (Feb. 2022), https://cass.independent-review.uk/publications/interim-report/; Stephen Levine et al., *Reconsidering Informed Consent for Trans-Identified Children, Adolescents, and Young Adults,* J. Sex & Marital Therapy, 7 (Mar. 2022); Socialstyrelsen, *Care of children and adolescents with gender dysphoria* (Feb. 2022); Académie Nationale de Médicine, *Medicine and gender transidentity in children and adolescents* (Feb. 2022); Jack L. Turban et al., *Sex Assigned at Birth Ratio Among Transgender and Gender Diverse Adolescents in the United States*, Pediatrics (Aug. 3, 2022); Jack L. Turban et al., *Pubertal Suppression for Transgender Youth and Risk of Suicidal Ideation,* Pediatrics (2020); Jack L. Turban et al., *Access to Gender-Affirming Hormones During Adolescence and Mental Health Outcomes Among Transgender Adults,* PLoS ONE (Jan. 12, 2022); Diana M. Tordoff et al., *Mental Health Outcomes in Transgender and Nonbinary Youths Receiving Gender-Affirming Care,* JAMA Network Open (Feb. 25, 2022); Division of Florida Medicaid, *Generally Accepted Professional Medical Standard Determination on the Treatment of Gender Dysphoria* (June 2022), https://ahca.myflorida.com/letkidsbekids.

42. Produce all Documents identifying types of participation and WPATH and USPATH meetings and/or committees by members and nonmembers.

43. Produce all Communications and Documents regarding the Society for Evidence Based Gender Medicine ("SEGM"), the American College of Pediatricians, 4th Wave Now, Transgender Trend, Michael Laidlaw, MD, William Malone, MD, Paul

ATTACHMENT A

Hruz, MD, Quentin Van Meter, MD, Julie Mason, MD, Stephen Levine, MD, Andre Van Mol, MD, Michelle Cretella, MD, Deborah Soh, Abigail Schrier, Jesse Singal, and Hilary Cass.

44. Produce all Communications and Documents regarding Transitioning treatments in Idaho.

45. Produce All Communications and Documents regarding advertisements for Transitioning treatments.

46. Produce all Communications and Documents regarding funding for patients seeking Transitioning treatments, funding for research concerning Transitioning treatments, income earned from providing Transitioning treatments, and costs associated with providing Transitioning treatments.

47. Produce all Communications and Documents relating to the Coalition for the Advancement & Application of Psychological Science's Position Statement or Rapid Onset Gender Dysphoria (https://www.caaps.co/rogd-statment) that You signed.

48. To the extent not already included in response to any of the foregoing Requests, produce all documents that were produced in response to Defendants' subpoena dated October 13, 2022, in the litigation *Brianna Boe, et al., v. Steve Marshall*, et al., 2:22-cv-184-LCB (M.D. Ala.), a copy of which is attached hereto as Exhibit 1.

# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

## UNITED STATES DISTRICT COURT
### for the
Middle District of Alabama

|  |  |
|---|---|
| Brianna Boe, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:22-cv-184-LCB |
| Governor of the State of Alabama, et al. | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Veritas Meeting Solutions, Inc., World Professional Association for Transgender Health,
1061 E. Main St., Suite 300, E. Dundee, IL 60118

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Office of the Attorney General, State of Alabama, 501 Washington Avenue, Montgomery, AL, 36130 | Date and Time: 11/12/2022 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/13/2022

CLERK OF COURT

OR

_____    _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Governor of the State of Alabama, et al.                      , who issues or requests this subpoena, are:
Brian Barnes, Cooper & Kirk, PLLC, 1523 New Hampshire Ave. NW, Washington, DC, 20036, bbarnes@cooperkirk.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:22-cv-184-LCB

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 1

**SUBPOENA FOR PRODUCTION OF DOCUMENTS DIRECTED TO
WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH &
UNITED STATES PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH**

YOU ARE COMMANDED, pursuant to Federal Rule of Civil Procedure 45, to produce to the Office of the Attorney General, State of Alabama, 501 Washington Avenue, Montgomery, AL, 36130, at the time and place noted on the subpoena to which this document is attached, the following documents, electronically stored information, or objects, and to permit inspection and copying of the same:

## INSTRUCTIONS

Your responses should include all information, knowledge, or belief available not only to You, but also to any attorneys, investigators, consultants, agents, and other representatives acting on Your behalf. Please respond in accordance with the following instructions:

1. **Claims of Privilege and Exception to Discovery.** If any claim of privilege is asserted, in whole or in part, with respect to any Request, or if You refuse to disclose any requested information or Document, in whole or in part, based on any claim of privilege or immunity, please identify the specific privilege or protection claimed and state the basis for the claim, identifying the pertinent circumstances with sufficient specificity to permit Defendants to assess the basis of any such claim for privilege or protection.

2. **Continuing Nature.** These Requests are intended to be and shall be answered or responded to fully as of the date of response and shall be deemed to be continuing thereafter until the conclusion of this matter. If You should subsequently acquire any further responsive information or Documents called for by these Requests, You should promptly furnish such information or Documents to the undersigned counsel.

1

# EXHIBIT 1

3.   **Answer to the Fullest Extent Possible.** If any of the Requests cannot be fulfilled in full, please answer to the fullest extent possible, explaining why you cannot answer the remainder of the Request, and stating any information or knowledge which You have concerning the unanswered portion.

4.   **Objections.** If You have a good-faith objection to any of these Requests, or any part thereof, the specific nature of the objection and whether it applies to the entire Request or to a certain portion thereof shall be clearly stated. If there is an objection to any part of a Request, then the part or parts objected to should be indicated and information responsive to the remaining unobjectionable parts should be provided.

5.   **Language.** The use of the singular form of any word includes the plural and vice versa. Reference to one gender includes the other gender(s). The word "all" means any and all. The word "including" means "including without limitation."

## DEFINITIONS

1.   The word "**Communication**" refers to any transmission, receipt, or exchange of information, whether orally, electronically, or in writing, including, without limitation, any conversation or discussion by means of Documents, letters, notes, in-person conversations, memoranda, reports, statements, voicemail, audio or video transmission, telephone calls, telegraph, telex, telecopier, facsimile, email, text message, electronic or other instant message, cable, Social Media post or message, Internet post or message, or any other form or medium of transmission or exchange.

2.   The words "**Document**" and "**Documents**" are used in the most comprehensive and inclusive sense permitted by Rule 34 of the Federal Rules of Civil Procedure, as elaborated by the official Comment on the 2006 Amendment. The terms "Document" and "Documents" also

2

# EXHIBIT 1

include any drafts or versions thereof, and all copies on which any mark, alteration, writing, attachment, or any other change from the original appears.

3.    The terms **"regarding," "with regards to," "relate," "relating," "relating to,"** **"concerning,"** and/or **"related to"** mean recording, summarizing, embodying, constituting, reflecting, digesting, referring to, commenting upon, describing, reporting, listing, analyzing, studying, or otherwise discussing in any way a subject matter identified in the Request, and is defined so as to reach all matters within the scope of discovery under the Federal Rules of Civil Procedure.

4.    The terms **"You"** and **"Your"** refer to the World Professional Association for Transgender Health (WPATH) and the United States Professional Association for Transgender Health (USPATH) as well as the officers, agents, employees, members, representatives, present or former counsel, and all other persons acting on behalf of WPATH and USPATH.

5.    The connectives **"and"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each of the Requests any and all information and Documents that might otherwise be construed to be outside of their scope.

6.    **"Alabama Vulnerable Child Compassion and Protection Act"** (or **"Act"**) shall mean Alabama Act No. 2022-289, introduced in the Alabama Legislature as Senate Bill 184 and signed into law on or around April 8, 2022.

7.    **"Sex"** or **"Biological Sex"** shall mean the biological state of being male or female, based on the individual's chromosomes and reproductive organs at birth.

8.    **"Male"** shall mean the biological state of being male, based on the individual's chromosomes and reproductive organs at birth.

3

# EXHIBIT 1

9. "**Female**" shall mean the biological state of being female, based on the individual's chromosomes and reproductive organs at birth.

10. "**Gender Dysphoria**" is the diagnosis of Gender Dysphoria under the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). "**Related Conditions**" include "gender incongruence" as defined by the ICD-11 and any other issues concerning trans (or transgender), gender diverse, and non-binary gender identities.

11. "**Puberty Blockers**" shall mean medication administered to Minors to delay or prevent the onset or continuation of puberty, or otherwise to delay or prevent the formation or maturation of secondary sex characteristics. This includes, but is not limited to, common puberty blockers such as histrelin acetate and leuprolide acetate if administered for the purpose of Transitioning. For purposes of these Requests, "Puberty Blockers" does not include GnRH agonists administered to young children (7 and younger) for the treatment of central precocious puberty or to adult men (19+) for the treatment of prostate cancer.

12. "**Cross-sex Hormones**" shall mean hormones administered to induce the physical characteristics of a sex or gender profile other than the Biological Sex of the patient (including non-cross-sex gender identities such as "non-binary"). It includes, but is not limited to, administering androgenic hormones such as testosterone, fluoxymesterone, and methyltestosterone to a biological female, and estrogenic hormones such as estrogen and estradiol to a biological male. It also includes the administration of hormone blockers and anti-androgens such as flutamide, spironolactone, and cyproterone if used as part of Transitioning.

13. "**Desistance**" shall mean the resolution of diagnosed Gender Dysphoria or Related Conditions in a Minor without the continued administration of Puberty Blockers, Cross-Sex Hormones, or surgical interventions.

4

# EXHIBIT 1

14.    "**Transitioning**" shall mean the administration of medicines such as Puberty Blockers, Cross-Sex Hormones, and surgical interventions to change the physical appearance of a Minor in a way that is not consistent with the patient's Biological Sex. This includes changing the appearance to appear as a cross-sex identification as well as non-cross-sex identifications such as "non-binary."

15.    "**Detransitioning**" shall mean any actions taken to conceal or reverse the effects of Transitioning, including the administration of medicines, surgical interventions, and social actions such as changing pronouns, dress, or other forms of gender expression.

16.    "**Minor**" shall mean a person under the age of 19.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Produce all Communications and Documents relating to the application and selection process for the WPATH Guideline Steering Committee, the Co-Chairs of the Standards of Care 8 (SOC-8) Revision Committee, each of the Chapter Leads for the SOC-8, each of the Chapter Workgroup Members for the SOC-8, each of the Chapter Stakeholder Members for the SOC-8, and each member of the WPATH Standards of Care 8th Version Evidence Review Team. *See generally* SOC-8 at S247-48 (Overview of SOC-8 development process).

2.    Produce all Communications and Documents relating to the decision regarding what chapters to include and not include in SOC-8, including but not limited to the decision not to include a chapter on Detransitioning.

3.    Produce all Communications and Documents relating to the development and approval of chapters 6 (Adolescents), 7 (Children), 8 (Nonbinary), 9 (Eunuchs), 12 (Hormone Therapy), 13 (Surgery and Postoperative Care), 14 (Voice and Communication), 15 (Primary Care), 16 (Reproductive Health), 17 (Sexual Health), and 18 (Mental Health) of SOC-8.

# EXHIBIT 1

4.      Produce all Communications and Documents relating to the Delphi process for the SOC-8 chapters listed in Request #3, including who participated and voted in the Delphi process. *See, e.g.,* SOC-8 at S247, 250.

5.      Produce all Communications and Documents relating to the systematic review, "evidence tables[,] and other results of the systematic reviews" that the Evidence Review Team presented related to the chapters listed in Request #3. *See* SOC-8 at S249 ("The Evidence Review Team presented evidence tables and other results of the systematic reviews to the members of the relevant chapter for feedback.")

6.      Produce all Communications and Documents relating to the Evidence Review Team's search criteria, study selection results, and data extraction for the chapters listed in Request #3. *See* SOC-8 at S249.

7.      Produce all Communications and Documents relating to the evidence grades assigned by the Evidence Review Team for all studies, research questions, and statements for the chapters listed in Request #3. *See* SOC-8 at S250 ("The Evidence Review Team assigned evidence grades using the GRADE methodology.").

8.      Produce all Communications and Documents relating to the value factors that were included in the GRADE review process, including "the balance of potential benefits and harms" and "values and preferences of providers and patients." SOC-8 at S250.

9.      Produce all Communications and Documents comprising comments and survey responses to the draft SOC-8. *See* SOC-8 at S251 ("A final SOC-8 draft was made available for comments.... A total of 1,279 people made comments on the draft with a total of 2,688 comments.").

6

# EXHIBIT 1

10.     Produce all Communications and Documents relating to revisions of SOC-8 as a result of, or in response to, comments received on the draft SOC-8. *See* SOC-8 at S251 ("The Chapters Leads and Guideline Steering Committee considered the feedback and made any necessary revisions....").

11.     Produce all Communications and Documents relating to the minimum age for treatments in SOC-8, including the initial decision to include minimum ages for treatments and the later decision not to include minimum ages for treatments. *See, e.g.*, "New Standards of Transgender Health Care Raises Eyebrows," *The Economist* (Sept. 23, 2022), https://www.economist.com/united-states/2022/09/22/new-standards-of-transgender-health-care-raise-eyebrows ("Known as SOC8, they originally included a list of minimum ages for treatments—14 for cross-sex hormones, 15 for removal of breasts, 17 for testicles. Hours later, a 'correction' eliminated the age limits.").

12.     Produce all Communications and Documents relating to the role played by, and the identities of, non-professional "stakeholders" in the development and approval of SOC-8 and, in particular, the chapters listed in Request #3. *See, e.g.*, SOC-8 at S248 ("Each chapter also included stakeholders as members who bring perspectives of transgender health advocacy or work in the community....").

13.     Produce all Communications and Documents identifying funding sources for SOC-7 and SOC-8.

14.     Produce all Communications and Documents relating to the development, review, and approval of the "Assessment and Treatment of Children and Adolescents with Gender Dysphoria" chapter in SOC-7.

# EXHIBIT 1

15.     Produce all Communications and Documents regarding Dr. Lisa Littman, her article, *Rapid-Onset Gender Dysphoria in Adolescents an Young Adults: A Study of Parental Reports*, and any subsequent revisions to that article.

16.     Produce all Communications and Documents relating to the September 2018 WPATH public statement entitled, "WPATH POSITION ON 'Rapid-Onset Gender Dysphoria (ROGD)."

17.     Produce all Communications with the journal PLOS One, its officers, agents, employees, or other representatives dated after July 1, 2017.

18.     Produce all Communications and Documents relating to the article by Abigail Shrier entitled "Top Trans Doctors Blow the Whistle on 'Sloppy' Care," *available at* https://www.commonsense.news/p/top-trans-doctors-blow-the-whistle.

19.     Produce all Communications and Documents relating to the October 2021 "Joint Letter from USPATH and WPATH," *available at* https://www.wpath.org/media/cms/Documents/Public%20Policies/2021/Joint%20WPATH%20USPATH%20Letter%20Dated%20Oct%2012%202021.pdf.

20.     Produce all Communications and Documents regarding the resignation of Dr. Erica Anderson from USPATH.

21.     Produce all Communications and Documents related to the article by Dr. Laura Edwards-Leeper and Dr. Erica Anderson entitled, "The Mental Health Establishment Is Failing Trans Kids," and published in The Washington Post, *available at* https://www.washingtonpost.com/outlook/2021/11/24/trans-kids-therapy-psychologist/.

8

# EXHIBIT 1

22. Produce all Communications and Documents related to the drafting of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), and any subsequent editions or revisions.

23. Produce all Communications and Documents related to the drafting of the ICD-11 coding for gender identity-related health.

24. Produce all Communications and Documents relating to Dr. Kenneth Zucker's participation in the February 2017 USPATH conference, including Communications and Documents relating to any review and acceptance of any papers or presentations by Dr. Zucker and any decision to cancel any part of his planned participation.

25. Produce all Communications and Documents related to the review, scoring, and acceptance of all presentations for the February 2017 USPATH conference.

26. Produce all Communications and Documents relating to the review, scoring, and acceptance of all presentation submissions for the WPATH 27th Scientific Symposium held in September 2022.

27. Produce all Communications and Documents relating to the review, scoring, and acceptance of all presentation submissions for the USPATH 2021 Scientific Symposium.

28. Produce all video recordings of the sessions (including any "town-hall" or informal sessions) of any USPATH or WPATH conference since January 1, 2015.

29. Produce all Communications and Documents distributed to attendees or participants of any USPATH or WPATH conference since January 1, 2017.

30. Produce all Communications between You and other medical organizations, associations, or societies regarding Gender Dysphoria, Related Conditions, and Transitioning for minors.

9

# EXHIBIT 1

31.　　Produce all Communications regarding the drafting of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, Pediatrics (Oct. 2018).

32.　　Produce all Communications regarding the drafting of Wylie C. Hembree, *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, J. Clin. Endocrinol. Metab (Nov. 2017).

33.　　Produce all Communications and Documents relating to any perceived change in the last ten years in the proportion of female minors to male minors who are diagnosed with Gender Dysphoria or Related Conditions.

34.　　Produce all Communications and Documents relating to the possibility of Desistance among Minors diagnosed with Gender Dysphoria or Related Conditions.

35.　　Produce all Communications and Documents relating to the possibility of individuals Detransitioning after receiving either puberty blockers or cross-sex hormones.

36.　　Produce all Communications and Documents relating to the risks of Transitioning.

37.　　Produce all Communications and Documents relating to the effects on minors of medications used to effect Transitioning.

38.　　Produce all Communications and Documents relating to the appropriate age for beginning Transitioning treatments in Minors.

39.　　Produce all Communications and Documents relating to the informed consent process for minors considering or undergoing Transitioning treatments.

40.　　Produce all Communications with the Plaintiffs in this lawsuit, including the United States of America and any agencies, departments, or employees thereof.

10

# EXHIBIT 1

41.     Produce all Communications and Documents dated after February 1, 2019[1], regarding consideration or evaluation of the following as part of the drafting or evidence review process of SOC-8: Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gender-Affirming Hormones for Children and Adolescents with Gender Dysphoria* (2021); Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gonadotrophin Releasing Hormone Analogues for Children and Adolescents with Gender Dysphoria* (2021); Abigail Shrier, *Irreversible Damage* (2020); William J. Malone et al., *Proper Care of Transgender and Gender-diverse Persons in the Setting of Proposed Discrimination*, 106 J. Clinical Endocrinology & Metabolism e3287 (2021); Diane Chen *et al.*, *Consensus Parameter: Research Methodologies to Evaluate Neurodevelopmental Effects of Pubertal Suppression in Transgender Youth*, Transgender Health, Vol. 5, No. 4, 2020, DOI: 10.1089/trgh.2020.0006; The Cass Review, *Independent Review of Gender Identity Services for Children and Young People: Interim Report* (Feb. 2022), https://cass.independent-review.uk/publications/interim-report/; Stephen Levine et al., *Reconsidering Informed Consent for Trans-Identified Children, Adolescents, and Young Adults*, J. Sex & Marital Therapy, 7 (Mar. 2022); Socialstyrelsen, *Care of children and adolescents with gender dysphoria* (Feb. 2022); Académie Nationale de Médecine, *Medicine and gender transidentity in children and adolescents* (Feb. 2022); Jack L. Turban et al., *Sex Assigned at Birth Ratio Among Transgender and Gender Diverse Adolescents in the United States*, Pediatrics (Aug. 3, 2022); Jack L. Turban et al., *Pubertal Suppression for Transgender Youth and Risk of Suicidal Ideation*, Pediatrics (2020); Jack L. Turban et al., *Access to Gender-Affirming Hormones During Adolescence and Mental Health Outcomes Among Transgender Adults*, PLoS ONE (Jan. 12, 2022); Diana M. Tordoff et al., *Mental Health*

---

[1] *See* SOC-8 at S247 (noting that the Evidence Review Team started conducting systematic reviews in March 2019).

# EXHIBIT 1

*Outcomes in Transgender and Nonbinary Youths Receiving Gender-Affirming Care*, JAMA Network Open (Feb. 25, 2022); Division of Florida Medicaid, *Generally Accepted Professional Medical Standard Determination on the Treatment of Gender Dysphoria* (June 2022), https://ahca.myflorida.com/letkidsbekids.

42.     Produce all Documents identifying types of participation in WPATH and USPATH meetings and/or committees by members and nonmembers.

43.     Produce all Communications and Documents regarding the Society for Evidence Based Gender Medicine ("SEGM"), the American College of Pediatricians, 4th Wave Now, Transgender Trend, Michael Laidlaw, MD, William Malone, MD, Paul Hruz, MD, Quentin Van Meter, MD, Julie Mason, MD, Stephen Levine, MD, Andre Van Mol, MD, Michelle Cretella, MD, Deborah Soh, Abigail Schrier, Jesse Singal, and Hilary Cass.

44.     Produce all Communications and Documents regarding Transitioning treatments in Alabama.

45.     Produce all Communications and Documents regarding advertisements for Transitioning treatments.

46.     Produce all Communications and Documents regarding funding for patients seeking Transitioning treatments, funding for research concerning Transitioning treatments, income earned from providing Transitioning treatments, and costs associated with providing Transitioning treatments.

47.     Produce all Communications and Documents related to the Coalition for the Advancement & Application of Psychological Science's Position Statement on Rapid Onset Gender Dysphoria (https://www.caaps.co/rogd-statement) that You signed.

12