RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

Rafael J. Droz, ISB #9934
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
rafael.droz@ag.idaho.gov

*Attorneys for Defendant Raúl Labrador*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| PAM POE, by and through her parents and next friends, Penny and Peter Poe, et al.<br><br>*Plaintiffs,*<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et al.<br><br>*Defendants.* | Case No. 1:23-cv-00269-BLW<br><br>**REPLY IN SUPPORT OF ATTORNEY GENERAL'S MOTION FOR ENTRY OF PREVIOUSLY AGREED UPON PROTECTIVE ORDER [Dkt. 95]** |

On March 29, 2024, the Attorney General filed a motion asking this Court to enter a protective order, which had been agreed upon by all parties months before the motion was filed. *See* Dkt. 95. The motion is simply requesting ministerial relief from the Court to formalize an agreement that Plaintiffs had already agreed to. In response, Plaintiffs do not dispute that they agreed to the substance of the protective order, do not argue the merits of whether a protective order should be issued, and do not argue that the Court lacks the authority to issue the protective order at this time. Rather, they

spend the bulk of their brief arguing against the merits of a motion that has not been filed and is not currently pending before this Court, ruminating over the Attorney General's motives and speculating as to the evidence that will be filed to support this as-yet unfiled motion. The rest of the brief simply focuses on other non-binding discretionary reasons why the Plaintiffs believe the Court should deny the motion.

When the Court looks at the motion that has actually been filed and which is actually pending before this Court—a simple, routine request for a protective order—it becomes clear that the Court has the authority to issue the protective order and that the motion for protective order should be granted, notwithstanding the pending appeal and notwithstanding the Court's entry of a stay of proceedings pending that appeal.

## ARGUMENT

On December 26, 2023, this Court issued a preliminary injunction prohibiting Idaho from enforcing Idaho's Vulnerable Child Protection Act, Idaho Code § 18-1506C ("VCPA"). Dkt. 78 at 53. The Attorney General appealed that decision, and that appeal is currently pending before the U.S. Court of Appeals for the Ninth Circuit. On January 31, 2024, this Court ordered that the matter be stayed "pending the Ninth Circuit's resolution of the Attorney General's pending appeal, provided, however, that this Court's December 26, 2023 preliminary injunction shall remain in effect during the stay." Dkt. 94. On March 29, 2024, the Attorney General filed a motion asking this Court to issue a previously agreed upon protective order in order to allow the Attorney General to provide copies of documents it received in response to a subpoena to the other parties. Dkt. 95. In that motion, the Attorney General indicated its intent to file a "motion with this Court under Fed. R. Civ. P. 62(d) to dissolve the preliminary injunction based upon, in part, certain of those documents, along with other recently released public information that goes to the reliability of the evidence the Plaintiffs used to support their motion for a preliminary injunction." *Id.* at 3.

On April 15, 2024, the U.S. Supreme Court issued an order granting the Attorney General's request for a stay of this Court's preliminary injunction, "except as to the provision to the plaintiffs of the treatments they sought below." *Labrador v. Poe*, 144 S.Ct. 921 (Apr. 15, 2024). While this order from the U.S. Supreme Court is welcome relief to the State of Idaho, lessening the urgency of the State's motion by allowing the State to again protect its most vulnerable citizens from the harmful procedures banned by the VCPA, it is only temporary relief. The Court granted the stay "pending the disposition of the appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for writ of certiorari, if such a writ is timely sought. Should certiorari be denied, this stay shall terminate automatically." *Id.*

As a result, the State is still prohibited from enforcing the VCPA as it relates to the plaintiffs, and the State may be prohibited from enforcing the VCPA again per this Court's preliminary injunction, should the stay from the U.S. Supreme Court terminate. But, it is important for this Court to be aware of substantial new evidence that undermines the reliability of the Plaintiffs' expert testimony, which was the Court's basis for the entry of the preliminary injunction. The Attorney General intends to present this evidence to the Court through a motion under Rule 62(d) to dissolve the preliminary injunction.[1]

While the evidence the Attorney General received from WPATH in response to the subpoena will be included in the Rule 62(d) motion the Attorney General intends to file, that evidence, as noted in the motion for protective order, is simply part of the evidence that will be relied upon, and the

---

[1] The Plaintiffs chide the Attorney General for referring to its planned motion as a motion to dissolve the preliminary injunction, stating that "a motion to dissolve the preliminary injunction is not permitted under Rule 62(d) while that preliminary injunction is on appeal." Dkt. 99 at 5. This argument is premature, since the Attorney General has not yet filed a motion under Rule 62(d), and the only issue currently before the Court is the motion for entry of the protective order. Regardless, Rule 62(d) under its plain terms gives the Court the authority to suspend and modify the injunction, regardless of the terms used to title the Rule 62(d) motion.

Attorney General intends to submit other recently released public information in support of its anticipated Rule 62(d) motion. *See* Dkt. 95 at 3 (noting that the Attorney General intends to rely upon the WPATH documents "*along with* other recently released public information"). But, a Rule 62(d) motion is not the motion currently pending before the Court. While the Attorney General's intention to file the Rule 62(d) motion was provided to the Court as background information to inform the Court as to the necessity for bringing the motion for entry of the protective order at this time, the Court need not, and cannot, rule on the merits of an as yet unfiled motion. Indeed, the Plaintiffs' arguments regarding the merits of the anticipated Rule 62(d) motion puts the cart before the horse in that they are arguing the merits of the motion before it has been filed. Rather, the Court should simply focus on motion for entry of the protective order, and wait to address the merits of the Rule 62(d) motion after it has been filed.

## I. Issuing the Agreed Upon Protective Order will result in no hardship, but substantially increases efficiencies for the Court and all parties.

The Plaintiffs argue that the Court should deny the motion for entry of protective order because the Court issued a stay of proceedings and there are no changed circumstances which justify lifting the stay. Dkt. 99 at 6. The Attorney General is not requesting a wholesale lifting of the Court's stay. To the extent the lifting of the stay is necessary, it is for the singular, and limited, purpose of entering a previously agreed upon protective order under F.R.C.P. 26(c). Entering this agreed upon protective order will simplify the presentation of evidence in support of the Rule 62(d)[2] motion by allowing the Attorney General to provide the subpoenaed WPATH documents to all parties.

The purpose of a stay of proceedings pending appeal is to allow the "court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for

---

[2] Plaintiffs agree that a motion under Rule 62(d) is not affected by the stay, writing that "Rule 62(d) presents an exception to the general rule divesting the district court of jurisdiction over matters on appeal," albeit again prematurely arguing the merits of the anticipated Rule 62(d) motion and whether this exception would apply even before the Attorney General has filed the motion. Dkt. 99 at 8.

litigants." *Tugaw Ranches, LLC v. U.S. Dep't of the Interior*, No. 4:18-cv-00159-DCN, 2020 WL 61282 (D.Idaho 2020) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). "The same court that imposes a stay of litigation has the inherent power and discretion to lift the stay." *Id.* (quoting *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002)). "In imposing or lifting a stay, courts weigh the 'hardship or inequity' to the parties and 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Id.* (quoting *CMAX Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

In the instant case, given the Attorney General's singular and limited request to issue a protective order, there is no hardship to the Court or to any party for what should have been the perfunctory issuance of a routine order. Further, issuance of the protective order will ensure proper handling of documents which have already been received pursuant to an anticipated protective order which had previously been agreed upon by all parties.

**II. There need not be changed circumstances for the Court to issue the agreed upon protective order, but, nevertheless, there have been substantial changed circumstances.**

There is no requirement that there be changed circumstances for the Court to grant the motion for protective order. The case cited by the Plaintiffs, *Johnson v. Inos*, *see* Dkt. 99 at 4, does not require changed circumstances, but merely stated that a district court did not abuse its discretion in requiring a party to show changed circumstances, along with other factors the court considered, to lift a stay to allow proposed intervenors to pursue their motion to intervene. *Johnson v. Inos*, 619 Fed.Appx. 651 (9th Cir. 2015). This is substantially different than the current situation, in which the parties had previously agreed upon the entry of a protective order, which the Attorney General has now requested in order to more efficiently pursue a Rule 62(d) motion.

Even if changed circumstances are required, changed circumstances are present. While the Attorney General does not believe the Court should consider the merits of the Attorney General's

anticipated Rule 62(d) motion as part of its consideration of this motion, it is important to note that a "district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002). There are significant new facts which represent a change in circumstances and which the Court will need to consider as part of the anticipated Rule 62(d) motion. While this evidence will be discussed in much more detail in the Rule 62(d) motion, the following brief overview is presented here simply to rebut Plaintiffs' argument that there is no change of circumstances to support the Attorney General's motion.

On March 4, 2024, a significant set of documents, containing full conversations of an internal WPATH message board, and leaked commentary from a May 2022 WPATH panel discussion, was exposed by whistleblowers. There is information in those documents, which will be presented in the Rule 62(d) motion, which goes directly to the heart of the Court's decision granting the motion for preliminary injunction, and which eviscerates the reliability of the WPATH guidelines relied upon by the Plaintiffs' experts and the Court.

Additionally, there have been two significant new studies released, one of which was released after the Attorney General filed the instant motion, both of which substantially undermine the reasons supporting the issuance of the preliminary injunction. The British Medical Journal published a study on February 17, 2024,[3] that examined the mortality of adolescents and young adults who accessed two gender-identity clinics in Finland between 1996 and 2019. The study found, quite simply, that the evidence, when appropriately accounting for psychiatric treatment needs, sex, and birth year, "*does not support the claims that [gender reassignment] is necessary in order to prevent suicide.*" (emphasis added). This is in stark contrast to the Court's finding that the exact opposite was true, that such treatment was necessary

---

[3] Sami-Matti Ruuska, et al, *All-cause and suicide mortalities among adolescents and young adults who contacted specialised gender identity services in Finland in 1996-2019: a register study*, 27 BMJ Ment Health (2024), https://mentalhealth.bmj.com/content/27/1/e300940

to combat harms including suicidal ideation. Dkt. 78 at 12. There is more to the study which will be presented in the Rule 62(d) motion, but suffice to say it calls into question the reliability of Plaintiffs' evidence presented in support of its request for the preliminary injunction.

Further, on April 10, 2024, Dr. Hillary Cass, who was commissioned by the National Health Service in England to conduct an independent review of gender identity services for children and young people, issued a final report on her review.[4] Significantly, Dr. Cass's review concluded, among other things: that "there is not a reliable evidence base upon which to make clinical decisions, or for children and their families to make informed choices;" that the "rationale for early puberty suppression remains unclear, with weak evidence regarding the impact on gender dysphoria, mental or psychosocial health;" and that "[f]or most young people, a medical pathway will not be the best way to manage their gender-related distress." *See* Cass Report Overview of Key Findings, *available at* https://cass.independent-review.uk/home/publications/final-report/ (last visited May 1, 2024). Again, there is significantly more to this report, which will be presented in more detail in the Rule 62(d) motion, but this small snippet of key findings from the report shows that the Plaintiffs' evidence presented in support of their motion for preliminary injunction is not reliable, and that there has been a significant change of circumstances since the Court ruled on the motion for preliminary injunction.

Finally, with respect to the documents provided by WPATH in response to the subpoena issued by the Attorney General (which documents are the reason why the Attorney General is requesting the entry of the protective order), WPATH produced 101,726 pages of documents to the Attorney General on October 3, 2023.[5] The Motion for Preliminary Injunction was filed on July 21,

---

[4] Dr. Hilary Cass, Independent review of gender identity services for children and young people, (April 2024), *available at* https://tinyurl.com/3pfpk2ne.

[5] Plaintiffs have been aware since August 15, 2023, that WPATH "commit[ted] to producing documents" responsive to the Attorney General's subpoena "subject to the entry of a protective order" Dkt. 99 at 2, but they now complain that the Attorney General refuses to produce to them the

2023 (Dkt. 32), Defendant's initial Combined Opposition and Motion to Dismiss was filed September 5, 2023 (Dkt. 56), and by Parties' stipulation this was refiled October 2, 2023 (Dkt. 65). Plaintiffs' reply was filed October 13, 2023 (Dkt. 70). Defendant filed a stipulated sur reply on October 27, 2023 (Dkt. 71). The Court held oral argument on the preliminary injunction on November 6, 2023 (Dkt. 75) and granted a preliminary injunction on December 26, 2023 (Dkt. 78). Plaintiffs' expert witnesses were deposed on August 31, 2023 (Dr. Christine Brady), August 28, 2023 (Dr. Kara Connelly), and October 16, 2023 (Dr. Jack Turban). There is important evidence in the subpoenaed WPATH documents going directly to the reliability of the testimony presented by Plaintiffs' experts, and thus going to the heart of the Court's decision on the preliminary injunction. The Attorney General intends to present this evidence in support of its Rule 62(d) motion. While the Attorney General received these documents prior to the Court's hearing on the Plaintiffs' Motion for Preliminary Injunction (but after the depositions of two of Plaintiffs experts, and after its initial brief was filed), Plaintiffs' assertion that the Attorney General should have been able to review over 100,000 pages of documents in a matter of a few weeks in order to present relevant documents to the Court before the November 6, 2023 hearing is not realistic. Dkt. 99 at 6.

Therefore, while there is no requirement that there be a showing of changed circumstances before the Court enters the agreed upon protective order, it is clear that there have been significant changed circumstances justifying the Court's entry of the order, notwithstanding the stay of proceedings that the Court has entered.

---

documents received from WPATH in the absence of a protective order. Dkt. 99 at 3. The Attorney General has advised Plaintiffs that he is "happy to provide the documents to [Plaintiffs] as soon as" a protective order is entered in this case. Dkt. 99-3. The Attorney General does not want to risk violating the protective order in a different case in which the same documents were produced (*Roe v. Critchfield*, No. 23-cv-315-DCN, D.I. 46-1, ¶ 1 (D. Idaho Aug. 22, 2023), or breach his commitment to WPATH. The Attorney General stands ready to produce the documents upon entry of the previously agreed upon protective order.

## CONCLUSION

Based on the above, the Attorney General respectfully requests that the Court issue the previously agreed upon protective order.

DATED:  May 3, 2024.

                                           STATE OF IDAHO
                                           OFFICE OF THE ATTORNEY GENERAL

                                            /s/ *James E. M. Craig*
                                           JAMES E. M. CRAIG
                                           Chief of Civil Litigation and
                                           Constitutional Defense

## CERTIFICATE OF SERVICE

I Hereby Certify that on May 3, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Li Nowlin-Sohl* <br> lnowlin-sohl@aclu.org | Brad S. Karp* <br> bkarp@paulweiss.com |
| Leslie Cooper* <br> lcooper@aclu.org | Alexia D. Korberg* <br> akorberg@paulweiss.com |
| Richard Eppink <br> ritchie@wrest.coop | Jackson Yates* <br> jyates@paulweiss.com |
| Casey Parsons <br> casey@wrest.coop | Dana L. Kennedy* <br> dkennedy@paulweiss.com |
| David A. DeRoin <br> david@wrest.coop | Eric Alan Stone* <br> eric.stone@groombridgwu.com |
| Ariella C. Barel* <br> Ariella.bare@groombridgwu.com | Jordan Orosz* <br> jorosz@paulweiss.com |
| Kyle Bersani* <br> Kyle.bersani@groombridgwu.com | Paul Carlos Southwick <br> psouthwick@acluidaho.org |
| Philip S. May* <br> Philip.may@groombridgwu.com | Emily Myrei Croston <br> ecroston@acluidaho.org |

\* Admitted *pro hac vice*

*Attorneys for Plaintiffs*

                                                  /s/ *James E. M. Craig* <br>
                                                      James E. M. Craig